**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPFOLIO, INC., a California corporation, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR:** <br> 1) **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS** <br> 2) **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** <br> 3) **VIOLATION OF THE LANHAM ACT § 43(a), FALSE ADVERTISING** <br> 4) **VIOLATIONS OF CAL. BUS. & PROF. CODE § 17500, FALSE ADVERTISING** <br> 5) **VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200, UNFAIR COMPETITION** <br> 6) **VIOLATION OF SHERMAN ACT § 2, MONOPOLIZATION** <br> 7) **DEFAMATION AND TRADE LIBEL** <br> 8) **UNJUST ENRICHMENT** <br> 9) **DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

1

ACTIVE 717335512v5

Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. ("Beagle" or "Beagle Entities") file this Complaint against Defendant AppFolio, Inc. ("AppFolio" or "Defendant"), and allege as follows:

## INTRODUCTION

1.      AppFolio is the incumbent in the residential real-estate management software market.  It is engaged in a systematic campaign to destroy Beagle's business through interference with Beagle customer contracts.  AppFolio is doing this so that it can maintain and increase its market share while blocking Beagle from accessing data with consent and authorization that Beagle's customers own (not AppFolio) and to interfere with those customers' contracts with Beagle.  Unless enjoined, AppFolio plans to fully block Beagle's access to its platform on December 16, 2025, two days from this filing—eviscerating Beagle's business in a brazen act of tortious interference and unfair competition.

2.      Beagle provides a beloved solution for building managers involving insurance-related compliance services, including insurance verification and waiver programs.  Without Beagle, property managers bear significant risks of catastrophic events such as fires.  Beagle also facilitates resident services critical to day-to-day living, such as air quality filter delivery, utility, Internet, and cable set-up, and protection against identity theft.

3.      The way Beagle works is that customers add a vendor account for Beagle in their AppFolio or other building management software.  Beagle then can access the customer's data and provide its services to the building.  AppFolio is set up to allow this explicitly—AppFolio advertises that building managers can add accounts for vendors and makes this easy to do.  Beagle does not circumvent any technical measures or access anything without authorization.  Indeed, it is the customers who add the Beagle account using Beagle's email.

4.      More than eighty percent (80%) of Beagle's business, implicating at least hundreds of millions of dollars in enterprise value, is with customers who use AppFolio.

5.      AppFolio has known about Beagle and how it works for over a year.  Beagle engaged in discussions with AppFolio's senior executives on or around November 2024 regarding a potential partnership between the companies.  At the time AppFolio was not interested.

///

2

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

6.  Now, though, that Beagle has grown exponentially and is driving enormous value for its customers who use AppFolio, AppFolio is interested in Beagle.  Unfortunately, AppFolio is not interested in lawful competition.  It is instead committed to pursuing multiple unlawful avenues to destroy Beagle's business and maintain its unfair hold on the market for building residential management software.

7.  First, AppFolio is defaming Beagle by intentionally making false statements about the company and its services.  AppFolio has told Beagle customers that Beagle creates a cybersecurity risk for them.  This is false, which AppFolio knows, given that it has full visibility into how Beagle uses the platform.  Its interaction with AppFolio's platform uses the very same functionality AppFolio developed to support third-party vendor access to building AppFolio accounts.  Beagle's customers are the ones who provision its accounts.  Beagle does not access anything without authorization or consent.  Indeed, its customers contract with it to access the customer data at issue.  Not only is AppFolio's claim about cybersecurity totally fabricated, but it is particularly egregious given one of the services Beagle provides for renters is identity theft protection.

8.  AppFolio is leveraging its false statements to interfere with Beagle's existing customer contracts and prospective relationships with new customers and partners.

9.  AppFolio has also threatened to fully block Beagle's domains from accessing its platform across the board in a matter of days, on **December 16, 2025**.  This would eviscerate Beagle's business overnight, destroy its reputation, and cause a slew of other irreparable harms.

10.  AppFolio's conduct is that of a classic monopolist and is precisely the sort of blocking and tying that the Sherman Act exists to stop.  When Beagle began to gain traction earlier this year, AppFolio decided to put forth its own in-house insurance verification solution and partnered with another vendor, Second Nature, that integrates in the same way as Beagle.  Now AppFolio threatens to block Beagle based on a pretextual and unlawful justification.  This intentional conduct violates federal antitrust law and California's Unfair Competition Law.

11.  Beagle files this action as a last resort to seek relief from the Court to stop AppFolio from weaponizing its market dominance to unlawfully spread false information, block, and interfere with Beagle's important work for buildings and renters across the country.

///

3

ACTIVE 717335512v5

## THE PARTIES

12.     Plaintiff Beagle Labs, Inc. is a Delaware corporation with principal places of business in Chicago and Dallas.

13.     Plaintiff Beagle Technologies, Inc. is a Delaware corporation.

14.     Plaintiff Big Beagle, Inc. is a Delaware corporation with a principal place of business in South Salt Lake.

15.     Plaintiff Rental Property Managers Association LLC is an Alabama limited liability company in Alabama.

16.     Plaintiff YRIG Risk Retention Group, Inc. is an Alabama corporation with a principal place of business in Alabama.

17.     Defendant AppFolio, Inc. is a California corporation with a principal place of business in Goleta, California.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 for claims arising under the Lanham Act, 15 U.S.C. § 1125(a), and the Sherman Act, 15 U.S.C. § 2.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States, Delaware, California, and Alabama, and the amount in controversy exceeds $75,000. The Court also has supplemental jurisdiction over the Beagle Entities' state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

19.     The Court has personal jurisdiction over Defendant because Defendant is a citizen of California and has directed its activities to California residents, including to residents of this District.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant is a resident of the State of California and is subject to this Court's jurisdiction with respect to the civil action in question.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims occurred in this District.  Material negotiations, communications, and misrepresentations were carried out and received by persons located in this District.  AppFolio's implementation of the complained-of conduct,

4

customer effects, and injury was also felt by Plaintiffs in this District. Beagle has many customers in the San Francisco Bay Area, including its largest customer, who is an AppFolio user and whose access to Beagle would be cut off by AppFolio's intended blocking.

## FACTUAL BACKGROUND

**A. Beagle is a fast-growing innovator in the residential building services market.**

22.     Beagle is a fast-growing emerging technology company offering AI-driven services for building managers. Beagle's offering includes insurance-related compliance services to property managers nationwide as well as residential living services. The compliance services include rent and pet insurance verification, tenant liability waiver programs, and deposit alternative services, among others. Beagle also enables buildings to provide core services to renters, including move-in services, such as utility and Internet set up, air filter delivery, and identity theft protection.

23.     Beagle's services help property managers satisfy lease requirements, manage risk, and provide cost-effective protection to renters. They also enable day-to-day living and thousands of renters to move into their rentals seamlessly. Without Beagle, a building that suffers a fire may not have properly insured renters. Renters might not be able to get clean air filters. Utilities would not be properly set up. Nor would pets be properly insured. Property managers throughout the country work with Beagle because they prefer Beagle's products and service model over competing offerings.

24.     To administer these programs, Beagle's customers provide it with access to limited categories of the property managers' operational data, including tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status. They do so by creating a new account for Beagle in the software that the building uses to manage the property. Customers use AppFolio's built-in user-management features in a manner that is safe, controlled, and secure. Indeed, this industry-standard

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

ACTIVE 717335512v5

workflow is used by AppFolio's customers to grant access to many other third-party vendors. AppFolio's website even touts third-party vendor integration as an advantage of using their platform:[1]

> **Online Portal for Vendors**
> Give vendors access to view work order details, upload invoices, add notes and photos, and mark their work as complete all within the fully mobile Vendor Portal in AppFolio.

25. Beagle's workflow is so transparent that it goes as far as publishing "Beagle Reports" of accounts with Beagle email domains. AppFolio has full visibility into this through its own administration of the AppFolio platform. Beagle does not circumvent technical measures and does not use any kind of automated access without authorization. All Beagle does is use the accounts its customers provide for it.

**B. AppFolio is the Dominant Market Leader for Building Management Software.**

26. AppFolio is the most dominant software for building management, and acknowledges this when it describes itself as the market leader. It is a public company valued at over 8 billion dollars.

27. AppFolio's market dominance is reflected in Beagle's customer base, as more than eighty percent (80%) of Beagle's business is with customers who use AppFolio.

28. Property managers and their residents store and use rental data in AppFolio's platform. But AppFolio does not own or create this data. AppFolio merely hosts the data, which belongs to the building owners and property managers. In fact, AppFolio's terms and conditions specifically provide: "You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. You will retain all right, title and interest in and to your data." (2025 T&C, section 1.)

**C. AppFolio is Targeting Beagle through Pretextual Means and Unlawful Competition.**

29. As early as November 2024, AppFolio was aware that customers granted Beagle access through additional user roles. Beagle operated openly, with full disclosure to customers, in reliance on AppFolio's longstanding acceptance of this access method. AppFolio never raised any objection, did not

---

[1] https://www.appfolio.com/property-manager/communication-service

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

ACTIVE 717335512v5

warn customers, and did not suggest any security concern. In fact, in 2024, AppFolio even discussed potential partnership with Beagle.

30. But AppFolio recently began selling its own insurance products that compete with Beagle, called FolioGuard and Smart Ensure. Because these in-house products are inferior to Beagle's offerings, AppFolio has struggled to convince customers to adopt them. Once Beagle's growth accelerated, with customers selecting Beagle over AppFolio's competing offerings, AppFolio began unlawfully competing with Beagle.

31. First, AppFolio has engaged in a concerted campaign to spread intentional false statements about Beagle to stop customers from using Beagle. For instance, AppFolio sent a mass-email to Beagle customers on December 9, 2025, containing a multitude of falsehoods. AppFolio stated that "the method by which Beagle has chosen to operate their business places you at risk." It also claims that Beagle causes "serious security risks" and works through a "noncompliant access" process that "create[s] security risk" and undermine "integrity of [customer] data." AppFolio also claims in this message that Beagle can "issue payments through the AppFolio payments platform."

32. These statements are all false and pretextual. Beagle does not introduce any security risks to AppFolio's platform or Beagle's customers. AppFolio does not own any of the data at issue. Its customers are free to contract with Beagle and provide it with access to AppFolio's platform through a vendor account. There is no evidence of any data security incident or any data privacy issue. It is also false that Beagle can "issue payments through the AppFolio payments platform." Beagle does not do that.

33. AppFolio knows that the falsehoods it is spreading about Beagle are false. It knows this because it has full visibility into how Beagle is accessing AppFolio—through regular accounts. AppFolio knows that many others, including its own preferred partner Second Nature, use the exact same method of authorized access. AppFolio also knows that it has no basis to assert any privacy or security risk from using Beagle's platform. To the contrary, Beagle provides vital security services to renters in the form of identity theft protection.

34. Beyond false statements, AppFolio is doing other conduct to unlawfully compete with Beagle. It partnered with Second Nature, and distorts the market by permitting Second Nature to access it through the regular access method, while claiming that Beagle cannot. AppFolio also has stated its

7

ACTIVE 717335512v5

intention to completely shut off Beagle's domain access to AppFolio on December 16, 2025. This will end Beagle's business overnight, as over eighty percent (80%) of Beagle's business is based on working with customers who use AppFolio.

**D. AppFolio is Bent on Destroying Beagle and Is Already Causing Irreparable Harm.**

35.     AppFolio, given its market dominance, comprises over eighty percent (80%) of Beagle's business. If AppFolio weaponizes this market dominance to target Beagle based on its false and pretextual security and payment processing claims, then its blocking of Beagle's domains will destroy Beagle's business overnight.

36.     AppFolio's campaign of falsehoods has already irreparably damaged Beagle's ability to perform its customer contracts and its prospective economic relationships. Many customers have contacted Beagle accusing it of being "scumbags," and a "scam" based on AppFolio's false statements. Beagle has lost significant customers already and its sales pipeline has been impacted by AppFolio's defamatory campaign.

37.     Absent injunctive relief, Beagle faces immediate and irreparable harm: service disruption for mutual customers; loss of market access to AppFolio-dependent portfolios; collapse of goodwill built on consistent performance; reputational harms from false statements; and network effects that are difficult to unwind once AppFolio's in-house products supplant Beagle during the block. Monetary damages cannot restore lost customer trust or reverse system-level exclusion once implemented.

38.     Not only will Beagle be harmed, but so will countless building properties and renters nationwide. Building fires and damage will be unrecoverable absent proper insurance verification and damage waivers. Daily move-ins will be disrupted when properties that leverage Beagle cannot facilitate utility and Internet set up, air filter delivery, and other services. Renters without proper identity theft protection may suffer cyberattacks—the very thing AppFolio claims it cares about.

39.     Federal and California law against unfair competition, tortious interference, defamation, and unlawful monopolization exists to prevent precisely the sort of market-dominant tying and blocking that AppFolio is engaging in. While Beagle would have liked to avoid bringing this dispute to the Court (and indeed has attempted multiple times to reach a commercial resolution with AppFolio), AppFolio is

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

ACTIVE 717335512v5

committed to using its market dominance to kill Beagle and take over its business. Beagle consequently has no choice but to enforce its rights against AppFolio's unlawful behavior.

## CLAIM 1
### (Tortious Interference with Contractual Relations)

40.    Beagle realleges and incorporates by reference the prior paragraphs in the Complaint.

41.    Beagle maintains valid, binding, and enforceable contracts with property-manager customers nationwide, pursuant to which Beagle provides liability-waiver and resident-protection products and services.

42.    AppFolio, while not a party to the contracts between Beagle and its customers, possesses actual knowledge of these contracts because Beagle and AppFolio share a large customer base. AppFolio's platform is expressly designed to enable customers to grant account access to third-party vendors and contractors, including Beagle, via designated user accounts. Beagle's email domain is routinely used for this purpose, and AppFolio is aware of such usage. Numerous other vendors utilize identical access protocols.

43.    AppFolio is further aware of contracts with Beagle because in its own filings against Beagle in Santa Barbara County Superior Court, AppFolio admitted that it was losing customers to Beagle.[2]

44.    AppFolio's conduct has intentionally and unjustifiably impeded Beagle's ability to perform its contractual obligations and deliver contracted services to its customers.

45.    AppFolio has knowingly, willfully, and intentionally interfered with Beagle's contractual relations by: (i) disseminating false and disparaging communications to customers, including statements that Beagle is a "security risk," "sounds like a potential scam," "concerning," and is not "compliant" with AppFolio's Terms of Use; (ii) threatening Beagle's customers who continue to utilize Beagle's products, based on pretextual and unfounded assertions; and (iii) threatening to block Beagle's domain from the

---

[2] AppFolio sought a TRO in Santa Barbara last week, which the Superior Court denied. (Santa Barbara Superior Court, Case No. 25CV07670.) Notably, AppFolio's TRO was limited to speech-related restrictions trying to stop Beagle from communicating with AppFolio customers. AppFolio did not ask the Court to block Beagle's access to AppFolio's platform. It did not assert any hacking or unauthorized access claims. Perhaps knowing that it had no legal basis to restrict Beagle's access, that is why AppFolio intends to take "self-help" to block Beagle's access to its platform in a pretextual and targeted way.

ACTIVE 717335512v5

AppFolio platform, thereby preventing Beagle from accessing customer accounts and fulfilling its obligations.

46.     AppFolio's intentional actions were calculated to harm Beagle's lawfully conducted business activities, namely the liability-waiver and resident-protection products it provides.  As a direct and proximate result of AppFolio's actions, multiple Beagle customers have terminated, suspended, or otherwise curtailed their contractual relationships with Beagle.

47.     Should AppFolio block Beagle's access to its platform on December 16, 2025, as it has stated it intends to do, this will cause an immediate interference with 80% of Beagle's business and make it impossible for Beagle to perform its contractual obligations to its customers.

48.     Beagle has suffered, and continues to suffer, substantial harm, including loss of business relationships, lost profits, reputational injury, and other economic damages, as a direct and proximate result of AppFolio's tortious interference with Beagle's contractual relations.

49.     Beagle seeks compensatory damages in an amount to be proven at trial, as well as injunctive relief enjoining further interference.

50.     Because AppFolio's conduct was committed with malice and oppression, Beagle also seeks punitive damages.

### CLAIM 2
**(Tortious Interference with Prospective Economic Relations)**

51.     Beagle incorporates by reference all preceding paragraphs.

52.     At all relevant times, Beagle maintained and continues to maintain numerous prospective and ongoing economic relationships with property-manager customers, which presented a reasonable probability of future economic benefit to Beagle.

53.     AppFolio is, and at all relevant times was, aware of these prospective economic relationships and the attendant economic advantage to Beagle.  As previously alleged, Beagle and AppFolio share over seventy percent (70%) of their customer base.  AppFolio's platform is specifically structured to permit customers to grant account access to third-party vendors (including Beagle) using designated user accounts associated with Beagle's email domain, of which AppFolio is fully aware.

///

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

ACTIVE 717335512v5

54. AppFolio has knowingly, willfully, and intentionally interfered with Beagle's prospective business relations by (i) disseminating false and disparaging statements to Beagle's current and prospective customers that were, and continue to be, injurious to Beagle's reputation;     (ii) engaging in conduct designed to disrupt Beagle's access to the AppFolio platform, and to steer Beagle's current and prospective customers toward AppFolio's own products and services; and     (iii) threatening to block Beagle's domain from the AppFolio platform, thereby precluding Beagle from servicing its existing and potential customers.

55. AppFolio is taking intentional actions designed to disrupt the prospective economic relationships between Beagle and its customers.  Beagle has already lost multiple business opportunities, including onboarding and expansion deals with customers who withdrew from or declined to enter into business with Beagle.

56. Should AppFolio block Beagle's access to its platform on December 16, 2025, as it has stated it intends to do, this will cause an immediate interference with 80% of Beagle's business and make it impossible for Beagle to generate new business.  Beagle's sales pipeline will collapse, as will its reputation and ability to generate business in the future.

57. AppFolio has no privilege, justification, or lawful excuse for disseminating false disparagements concerning Beagle's safety and compliance.  The actions taken to interfere with Beagle's relationships are being undertaken with the specific intent to harm Beagle's prospective economic advantage.

58. Beagle has sustained harm and economic injury as a direct and proximate result of AppFolio's tortious interference with prospective economic relations.  Accordingly, Beagle seeks compensatory damages in an amount to be proven at trial, as well as injunctive relief barring further interference.

59. Because AppFolio's conduct was committed with malice and oppression, Beagle also seeks punitive damages.

### CLAIM 3
**(Violation of Lanham Act § 43(a) – False Advertising)**

60. Beagle incorporates by reference all preceding paragraphs.

61. By engaging in the above-described activities, AppFolio has made, and continues to make,

11

ACTIVE 717335512v5

false and misleading representations of fact regarding the nature, characteristics, and quality of Beagle's products and services, including by misrepresenting the functionality of Beagle's products, stating that Beagle performs "risky financial transactions," makes customers non-compliant, and is generally not effective. AppFolio has stated to Beagle's customers that Beagle poses security and privacy risks. Simultaneously, AppFolio has misrepresented the functionality, safety, and compliance of its own in-house product by claiming it is safer and more compliant than Beagle's offerings.

62. AppFolio made its false and misleading representations of fact in interstate commerce, including through mass email communications, written correspondence, and in-product banners directed to Beagle's current and prospective customers.

63. AppFolio knows that its statements are false, because it knows how Beagle's software works through its administration of the AppFolio platform. Beagle has put AppFolio on notice of its false statements, but AppFolio has refused to correct them or stop making them.

64. AppFolio's conduct is likely to cause, and has caused, actual confusion, deception, and mistake among customers regarding the functionality, safety, and compliance of Beagle's products, as well as the relative quality of AppFolio's own product. Such conduct materially influences purchasing decisions and improperly diverts business from Beagle to AppFolio.

65. AppFolio's actions constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66. Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and significant harm to its goodwill and reputation. Accordingly, Beagle seeks monetary damages in an amount to be proven at trial, as well as disgorgement of AppFolio's ill-gotten gains, and injunctive relief barring further injury. Beagle seeks damages, disgorgement, attorney's fees, and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 15 U.S.C. § 1117. Beagle will prove the full extent of monetary damages it has suffered by reason of AppFolio's acts through this action.

67. On information and belief, AppFolio's actions are willful and done with the intention of causing confusion, mistake, or deception. This is accordingly an exceptional case entitling Beagle to recover the costs of this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

ACTIVE 717335512v5

**CLAIM 4**
**(Violations of Cal. Bus. & Prof. Code § 17500, *et. seq.* – False Advertising)**

68.     Beagle incorporates by reference all preceding paragraphs.

69.     Pursuant to California's False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500, et. seq., it is unlawful for any person "to make or disseminate or cause to be made or disseminated before the public… in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

70.     AppFolio is violating § 17500 by making and disseminating, both directly and indirectly, false, deceptive, untrue, and misleading statements regarding Beagle's products and services to its current and prospective customers. These statements include, but are not limited to, false representations that Beagle engages in "risky financial transactions," that customers using Beagle's products are rendered non-compliant, and that Beagle's offerings are otherwise deficient or ineffective. AppFolio has stated to Beagle's customers that Beagle poses security and privacy risks. Simultaneously, AppFolio has misrepresented the functionality, safety, and compliance of its own in-house product by claiming it is safer and more compliant than Beagle's offerings.

71.     AppFolio's statements were specifically designed with the intent to disparage Beagle and to induce reasonable property-manager customers to purchase AppFolio's competing products and services instead. For example, AppFolio told Beagle's customers that its in-house "Smart Ensure" product is required or uniquely compliant, as compared to Beagle's.

72.     Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and harm to goodwill and reputation. Accordingly, Beagle seeks all remedies available under § 17500, including compensatory damages, restitution, disgorgement of profits, and injunctive relief barring further injury.

///

13

ACTIVE 717335512v5

## CLAIM 5
### (Violations of Cal. Bus. & Prof. Code § 17200, *et. seq.* – Unfair Competition)

73. Beagle incorporates by reference all preceding paragraphs.

74. Pursuant to California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200, et. seq., unfair competition includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

75. AppFolio has engaged in unlawful, unfair, and fraudulent business acts and practices, and has disseminated deceptive, untrue, and misleading advertising in violation of § 17200. Specifically, AppFolio's conduct violates public policy and constitutes actionable misconduct under the Lanham Act § 43(a), California False Advertising Law § 17500, the Sherman Act § 2, common-law defamation/trade libel, and the interference torts set forth herein, among other laws.

76. AppFolio's unfair actions have damaged and jeopardized Beagle's business by threatening to block Beagle's domain from its platform on December 16, 2025, which would interfere with Beagle's ability to perform contractual obligations to its customers. AppFolio's conduct is pretextual and designed to promote its own competing service rather than to accomplish any of its stated goals around security or otherwise.

77. AppFolio's conduct is fraudulent within the meaning of § 17200 because it includes making and disseminating false, deceptive, untrue, and misleading statements regarding Beagle's products and services to customers, with the intent to deceive and mislead reasonable consumers.

78. AppFolio's actions and statements were specifically designed with the intent to disparage Beagle, and induce reasonable consumers, like Beagle's property-management customers, to purchase AppFolio's competing products and services instead. For example, AppFolio told Beagle's customers that its in-house "Smart Ensure" product is required or uniquely compliant, as compared to Beagle's. AppFolio's Terms of Use changes and domain blocks are not grounded in security or privacy, rather in eliminating Beagle, a growing rival.

79. Upon information and belief, AppFolio's business practices, alleged herein, were committed in bad faith and with unlawful intent. Further, their actions are continuing in nature and are widespread.

ACTIVE 717335512v5

80. Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and harm to goodwill and reputation. Accordingly, Beagle seeks all remedies available under § 17200, including compensatory damages, as well as restitution, disgorgement of profits, and injunctive relief barring further injury.

### CLAIM 6
**(Violation of Sherman Act § 2 – Monopolization / Attempted Monopolization)**

81. Beagle incorporates by reference all preceding paragraphs.

82. AppFolio possesses monopoly power in the Property Management Software Platform Market for residential property managers in the United States. On information and belief, AppFolio claims to be an industry leader with a platform that is the system of record for more than 20,000 property managers and over eight million units. AppFolio holds a dominant position, exerting substantial barriers to entry, including data lock-in, gating workflow integration via its AppFolio Stack, and network effects. This is because buildings must use AppFolio's platform to manage a broad array of services, and are unable to switch even if they think the platform is stagnant and inferior to competing products. That 80% of Beagle's business is with customers who use AppFolio underscores the dominant market power AppFolio holds over buildings and property managers.

83. AppFolio controls access to its platform and the associated distribution channel to AppFolio-using property managers, making it an unavoidable gatekeeper for third-party insurance compliance services in its ecosystem. Access to this platform and the associated distribution channel is indispensable for companies, such as Beagle, seeking to provide insurance compliance services to AppFolio's customer base.

84. AppFolio is the dominant player in the relevant market for property management software, as admitted by AppFolio itself. Competitors are, by comparison, smaller firms lacking the scale and resources to constrain AppFolio's pricing power. As a result, on information and belief, AppFolio maintains monopoly power and can increase rates by 5% or more without losing customers.

85. New entrants face high barriers to entry due to AppFolio's entrenched position. Switching costs and contractual lock-in prevent customers from migrating to alternative, and better, solutions.

///

15

86.    From AppFolio's own filings in state court, AppFolio admits Beagle is a "direct competitor." AppFolio admits, through automated AI services and customer service representatives, that it "partner[s] with Second Nature for a resident benefit package" and that AppFolio has its "own internal insurance solution through FolioGuard Smart Ensure and the coinciding Liability to Landlord Insurance policy." AppFolio further admits that "[o]ne of [its] most important services is called Smart Ensure," and that renters obtain insurance "through AppFolio Insurance Services" or another provider. AppFolio further admits that it subjects and enforces auto-enrolling and monetizes this workflow.

87.    AppFolio, in public filings, admits that "Beagle does not and will not integrate with AppFolio—not now, and not ever." This admission alone proves that any rationale used by AppFolio to block Beagle is pretextual.

88.    AppFolio, in public filings, has filed exhibits showing AppFolio representatives stating that "Under our Terms of Service and in order to protect the integrity of customer and user data and our systems, direct competitors such as Beagle are not permitted to access any portion of our services or application programming interface." AppFolio's conduct is an admission to raising barriers to interoperability and competitor access.

89.    Through its exclusionary conduct, AppFolio has willfully maintained its monopoly power by anticompetitive and unnecessarily exclusionary means, rather than by competition on the merits. AppFolio's exclusionary conduct to maintain and enhance its power includes, at least:

a.    manipulating and weaponizing its Terms of Use;

b.    blocking and/or threatening to block Beagle's domain and logins;

c.    spreading false and disparaging communications regarding Beagle's services as "cybersecurity risk" to foreclose Beagle and steer demand to AppFolio's in-house products;

d.    discriminatorily denying access to its vendor/point-solution functionality while enabling preferred or favored integrations (e.g., Second Nature), and threatening to exclude Beagle wholesale, despite Beagle's customer-authorized access via the same vendor pathway;

e.    tying and self-preferencing of access to AppFolio's platform for the adoption of AppFolio's own Smart Ensure insurance product or favored preferential vendors, while obstructing rivals such as Beagle, via platform dominance leveraging.

16

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

f.      interfering with Beagle's contracts by instructing AppFolio customers to revoke Beagle's vendor access under pretextual claims, while continuing to allow comparable, or substantially the same, type of services to favored vendors.

90.      AppFolio's conduct raises and maintains barriers to entry by retarding interoperability, creating artificial barriers where none existed, denying customer-authorized access to data, spreading false risk claims, and self-preferencing its own insurance products and integrations.  These are textbook harms to competition, not merely to a competitor, outside the realm of lawful competition.

91.      Alternatively, AppFolio has engaged in anticompetitive conduct with specific intent to monopolize, and with a dangerous probability of achieving monopoly power, in the relevant market by engaging in unlawful, fraudulent, and other anticompetitive business practices.  As a result of its exclusionary conduct, AppFolio has been able to obstruct rival products and services (like Beagle's) from competing in the market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

92.      As a proximate result of AppFolio's wrongful acts alleged herein, Beagle has sustained, and will continue to sustain, injuries of the type the antitrust laws are designed to prevent, including exclusion from access otherwise authorized by customers, lost sales, increased costs, and reputational harm resulting from AppFolio's disparagement.

93.      AppFolio's intentional conduct to maintain monopoly power, in violation of § 2, enables AppFolio to charge supra-competitive prices, and coerces adoption of Smart Ensure and related services. AppFolio's conduct thus degrades customer choice and suppresses innovation.

94.      Competition in the relevant market has been, and will continue to be, substantially harmed by AppFolio's anticompetitive conduct, regardless of whether monopoly power is ultimately attained. Through its exclusionary practices, AppFolio threatens to, and has the ability to, unilaterally exclude Beagle and other competitors from the market. Indeed, AppFolio's specific intent to monopolize the market carries a dangerous probability of success where Beagle's services can be eradicated overnight.

95.      Beagle seeks all available remedies under the Sherman Act, including treble damages in an amount to be proven at trial, attorneys fees, as well as injunctive relief enjoining AppFolio from further anticompetitive practices.

///

17

## CLAIM 7
### (Defamation and Trade Libel)

96.    Beagle incorporates by reference all preceding paragraphs.

97.    By the acts described herein, AppFolio published false and defamatory statements to Beagle's clients regarding Beagle's business methods and the reliability, efficiency, and security of Beagle's products.

98.    AppFolio's statements were of the character that would tend to degrade Beagle's public standing, impugn its business methods, integrity and competence, and cast aspersions on Beagle's services and products.

99.    AppFolio has made and disseminated false statements misrepresenting Beagle's services as a "scam" or "security risk."  AppFolio has made repeated insinuations of illegitimacy via AppFolio's customer service AI and responses.  AppFolio's customer service AI further states Beagle is not listed as an official partner and immediately frames Beagle outreach as "concerning" and "a potential scam," directing customers not to provide any information and to "verify" Beagle's identity—falsely implying Beagle is untrustworthy or impersonating a partner, despite customers expressly authorizing Beagle access and AppFolio's long-standing awareness of that workflow.

100.    AppFolio's representatives have gone as far as stating that "Under our Terms of Service and in order to protect the integrity of customer and user data and our systems, direct competitors such as Beagle are not permitted to access any portion of our services or application programming interface."

101.    These statements were carried out in reckless disregard for the truth.  AppFolio knows its statements are wrong because it has the ability to see how Beagle's software works in its system.  It also could have spoken with Beagle about any concerns, but chose not to and instead to ambush Beagle in state court several days before this filing.  AppFolio did not properly investigate its claims, or if it did, chose to make false statements knowing that they were unsubstantiated.  AppFolio acted with intent to harm Beagle, or with conscious indifference to the consequences of its actions.

102.    AppFolio's statements are false or misleading statements of fact made in commercial advertising or promotion setting, meant to divert customers away from Beagle and into AppFolio and its competing products and services. AppFolio's statements falsely implied Beagle's industry standard,

18

ACTIVE 717335512v5

customer-authorized access was illegitimate or unsafe, despite the absence of any identified security incident, breach, or misuse.

103. Customers have relied on these statements, further diverting business from Beagle to AppFolio and resulting in losses to Beagle's reputation.

104. AppFolio's statements are defamatory per se as they injure Beagle in its business, and they disparage the quality of Beagle's services with malice (knowledge of falsity or reckless disregard), causing special damages, including lost customers, lost deals, and identifiable economic harm, beyond reputational and goodwill harm.

105. As a direct result of AppFolio's actions, Beagle has been, and will continue to be, substantially injured, in the form of economic loss and harm to Beagle's goodwill and reputation.

106. Beagle seeks punitive damages and injunctive relief prohibiting further defamatory publications.

## CLAIM 8
### (Unjust Enrichment)

107. Beagle incorporates by reference all preceding paragraphs.

108. AppFolio unjustly retained benefits when it blocked Beagle's domain to further frustrate Beagle's services and relationships with its customers. Upon information and belief, AppFolio received benefits in the form of increased revenue and margins from its competing product, Smart Ensure, and related insurance products.

109. Upon information and belief, AppFolio acted in order to gain a competitive advantage over the services and products Beagle provides. Further, AppFolio acted on Beagle's expense as Beagle suffered harm as a result.

110. Equity requires restitution to Beagle of the benefits AppFolio obtained through exclusionary and deceptive acts.

111. As a result of AppFolio's unjust enrichment, Beagle has suffered damages in an amount to be proven at trial, plus interest from and after the time of unjust enrichment.

112. Equity allows for the restitution of the benefits AppFolio obtained.

///

19

## CLAIM 9
### (Declaratory Judgment)

113.    Beagle incorporates by reference all preceding paragraphs.

114.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists regarding AppFolio's right to block or remove Beagle's access and to disseminate false statements about Beagle and its services.

115.    Pursuant to 28 U.S.C. 2201(a), this Court is authorized to issue a declaratory judgment.

116.    Beagle seeks a declaration that AppFolio's conduct is unlawful and an injunction prohibiting AppFolio from:

       a.    blocking or removing Beagle's domain names and users created by joint customers;

       a.    making false and misleading statements about Beagle;

       b.    otherwise engaging in the unlawful and anticompetitive conduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Beagle respectfully requests that the Court enter judgment in its favor and against AppFolio as follows:

    A.    Preliminary and permanent injunctive relief enjoining AppFolio from blocking Beagle's access and domain and from making or disseminating false and misleading statements regarding Beagle and its services;

    B.    Disgorgement of profits and restitution of benefits unjustly obtained under California's Unfair Competition laws;

    C.    Compensatory, consequential, and special damages in amounts to be proven at trial, including for lost customers, lost profits, and diminution of goodwill;

    D.    Treble damages and attorneys' fees as permitted by law, pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15(a);

    E.    Injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26;

    F.    Punitive damages for defamation/trade libel and intentional torts as permitted by law;

    G.    Pre- and post-judgment interest;

    H.    Declaratory relief that AppFolio's conduct is unlawful; and

BEAGLE ENTITIES COMPLAINT AGAINST APPFOLIO, INC.

ACTIVE 717335512v5

I.      Such other and further relief as the Court deems just and proper under the circumstances.

DATED:  December 15, 2025                Respectfully submitted,


                                By  */s/ Michael Burshteyn*
                                Michael Burshteyn
                                Marcelo Barros

                                **GREENBERG TRAURIG, LLP**
                                *Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

21

ACTIVE 717335512v5