**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC., a California corporation,<br><br>        Defendant. | CASE NO.  2:25-cv-12248-JFW-SSC<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION APPLICATION** |

1

## I.    <u>INTRODUCTION AND BACKGROUND</u>

Unless enjoined, AppFolio plans to ban Beagle from its platform.[1]  It will do so by prohibiting Beagle from logging into any customer-supplied account to the customers' AppFolio account with any domain name AppFolio can find that Beagle uses.  Customers have for over a year contracted with Beagle to provide vital services including insurance verification for events like fires, move-in help for tens of thousands of rental doors, utility set up, and other vital services that impact day-to-day life for tens of thousands of residents and many building managers.  AppFolio's deplatforming will destroy over 80% of Beagle's business and impact at least $10 million in annual revenue.  Beagle has been valued in the hundreds of millions of dollars in enterprise value, much of which is based on the high velocity of its sales engine which AppFolio has already bogged down through its tortious interference and unfair competition.

Why does AppFolio want to do this now?  Because Beagle has seen incredible growth in 2025.  It is threatening AppFolio's in-house products and a competitor, Second Nature, in whom AppFolio invested $75 million earlier this year.[2]

AppFolio's deplatforming strategy is designed to drive Beagle out of the market by making it impossible for Beagle to work with its own customers in ways that they have contracted with Beagle for over a year.  AppFolio is attempting to justify its approach through false pretexts about Beagle's security, even though Second Nature (AppFolio's corporate venture capital portfolio company) and many others use the same approach as Beagle.  This is tortious interference and violates California's Unfair Competition Law. The situation is similar to others where preliminary injunctions to stop platform blocks have been granted.  The Ninth Circuit stopped LinkedIn from a similar type of platform block in

---

[1] Plaintiffs collectively refer to themselves in this brief and litigation as "Beagle."

[2] https://ir.appfolioinc.com/static-files/9c6db62e-cde3-47b3-aa5d-695d3fb2fd13 ("In connection with entering into the Strategic Partnership, on April 11, 2025, AppFolio purchased a minority, non-controlling equity interest in Second Nature Holdings, L.P., the indirect parent of Second Nature, for $75 million, paid with cash on hand.")

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

the *HiQ* case, because it would destroy HiQ's business.  There were serious questions on the merits of whether LinkedIn's purported justifications were real or whether LinkedIn was selectively attempting to block access to promote its own internal services in a way that would not be "within the realm of fair competition."  HiQ, like Beagle, had strong commercial interests in fulfilling its contractual obligations to clients who benefited from its services.[3]

AppFolio's opposition attempts to relitigate arguments it already lost twice in Santa Barbara Superior Court.  AppFolio advanced its false advertising claims against Beagle there and sought a TRO twice.  That court denied it twice, the second time as recently as December 17, 2025.  AppFolio also argued in that proceeding that its false advertising claims against Beagle (that are unsubstantiated) were distinct and unrelated to Beagle's request for its own TRO, because Beagle's TRO is based on tortious interference and unfair competition.

AppFolio is presently under an order from the transferor court to preserve the status quo, meaning not to deplatform Beagle as it wishes to do.  AppFolio first consented to not deplatform Beagle during a December 15, 2025 hearing from that date through December 22, 2025.  Although AppFolio did not deplatform Beagle, it did continue to tell customers it was going to do so on December 16.  Then after December 16, AppFolio kept a banner up inside its software telling customers that Beagle was already banned earlier on December 16.  This caused Beagle to lose more than $500,000 in revenue in a matter of days.[4]  Beagle's customers believed it had already been banned based on AppFolio's continued messaging, despite AppFolio's commitment to the court in the Northern District of California not to do

---

[3] AppFolio attempts to distinguish *HiQ* because the data was public in that case.  But that is not why the injunction issued there – the reason was that LinkedIn's desired ban would destroy HiQ's business.  Also, here the situation is even worse.  AppFolio is attempting to ban Beagle while explicitly stating in its Terms that its customers control their own data and have rights to it.  Those customers want Beagle to have access using regular methods and AppFolio is selectively attempting to stop it.

[4] The evidence for this is laid out in Beagle's submission on December 19, 2025, Dkt. 22.

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

the ban.  Then when Judge Martínez-Olguín transferred the case, it was with an order requiring AppFolio maintain the status quo.  The transfer order stated as to the alleged violation of the status quo consent:

> *"To the extent Beagle contends that Defendant has failed to maintain status quo through December 22, 2025, as it agreed on the record during the status conference held December 15, 2025, it may raise that issue to the transferee court."* (Dkt. No. 24, p. 7.)

Now the issues are before this Court.  Beagle satisfies each *Winter* factor and a TRO is appropriate given the situation while the Court considers a preliminary injunction.

## I.     Likelihood of Success on the Merits

First, AppFolio's Opposition does not effectively rebut Beagle's tortious interference and unfair competition claims.

**Tortious interference.**  AppFolio is well aware of Beagle's contracts with its customers.  A sample is attached to the accompanying declaration of Michael Brown from Beagle.  (Brown Decl. ¶ 1.)  It is not credible that AppFolio is not aware that Beagle's customers have contracts with Beagle for Beagle to provide its services to those customers. AppFolio is on notice and has been of these contractual obligations through the litigation as well.

AppFolio's goal is to stop Beagle from working with its customers.  This is clear based on AppFolio attempting to pitch those customers to stop working with Beagle and switch to Second Nature and AppFolio's in-house products.  An example of this as recent as yesterday, December 30, 2025, is enclosed in the Brown Declaration.  (Brown Decl. ¶ 2.)

AppFolio's conduct is independently wrongful for multiple reasons.  It undertakes its interference through false statements about Beagle being insecure.  These statements are reckless and in disregard to the truth—Beagle does not have a single login as AppFolio claims in its papers.  Beagle uses sophisticated enterprise security password management

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

software and multi-factor authentication so that those that work with its customers through AppFolio have permissions that can be revoked. Beagle limits access to only those customer success personnel who need the access. When a person leaves Beagle, their access is revoked. (*See* Declaration of Anthony D'Angelo ¶ 7.) There is zero basis for any of AppFolio's security claims.

AppFolio cannot hide behind its Terms of Use with its own customers. It does not respond to the point that its own Terms say that its customers own their data. It also does not respond to the point made in Beagle's opening brief that AppFolio updated its Terms to create a pretext to target Beagle. LinkedIn tried the same Terms of Use argument and the Ninth Circuit still enjoined LinkedIn from deplatforming HiQ. Even under AppFolio's own Terms, its customers are permitted to allow their own contractors and service providers to create accounts. Indeed, this is happening *en masse* across the AppFolio platform with other vendors, including with Second Nature. AppFolio is selectively attempting to interpret its Terms to only exclude Beagle. This does not provide a defense to tortious interference.

AppFolio has already disrupted over $500,000 in customer contracts. Its threats to deplatform have also slowed down pipeline velocity and cost Beagle numerous deals, amounting to millions of dollars in lost opportunity just in December 2025.

All of AppFolio's tortious interference arguments fall apart under scrutiny.

**Unfair competition.** AppFolio spends much of its brief discussing antitrust law, but Beagle did not move for a TRO or PI based on its antitrust claims. If AppFolio wishes to make a Rule 12 motion, Beagle will respond to it. At this stage, Beagle is only moving for a TRO and PI on tortious interference and Unfair Competition. All Beagle needs to show for its injunction request here is that AppFolio's conduct "significantly threatens or harms competition." *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F. Supp. 3d 1070, 1080 (S.D. Cal. 2024). It does. *HiQ* is instructive here as well. Without analyzing antitrust law, the Ninth Circuit observed that where someone "knew about" the "reliance" on its platform and then planned to create a new product, selective bans of competitors could well be unfair competition under California law. That's what is happening here.

5

The Fourth Circuit's *Real Time* case is helpful too. (Mot. at 16-17.) AppFolio tries to make that case out to be just about the Cures Act, but there is a separate analysis that the Fourth Circuit looked at as to whether there was unfair competition. There was because the software platform cited security concerns that were actually just a cover for its true motivations of hurting a competitor. AppFolio's attempts to distinguish the Wordpress case also fail. The issue there was an out-of-the-blue ban that reversed course of allowing the plugin at issue to work. That is what AppFolio is attempting to do here.

AppFolio also fails to address the arguments Beagle made that its conduct is fraudulent under the UCL because it is making knowingly false statements about Beagle to justify its threats and ban.

## II.    **Irreparable Harm**

AppFolio's Opposition brief does not dispute that 80% of Beagle's business is on AppFolio. A platform ban would cost Beagle over $10,000,000 in revenue out of the gate and destroy over one hundred million in enterprise value. AppFolio's opposition is also silent on the $500,000+ in lost revenue Beagle has already suffered in the days after AppFolio departed from its consent, on the record, not to alter the status quo. Since AppFolio began making threats, it has impacted over $5,000,000 in lost sales pipeline as well. (Brown Decl. ¶ 4.)

AppFolio attempts to argue that Beagle will not be harmed because it claims there are alternative integration methods. These alternative integration methods are a red herring.

**Scheduled Reports,** AppFolio's primary alternative proposal, will not work and will still result in the destruction of Beagle's business. The whole point of Beagle's value proposition to customers is that they don't have to go through the onerous process of setting up Scheduled Reports in AppFolio. All they have to do is create an account for Beagle and then Beagle handles the rest. The Scheduled Reports also do not provide the necessary information that Beagle needs. This approach makes it so Beagle cannot view the existing insurance policies that relate to specific tenants. Beagle can only see whether coverage

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

exists in a binary (yes or no) manner, but cannot see and verify coverage amounts, expiration dates, or whether an interested party is listed. It also makes it so Beagle cannot add or remove charges. Beagle would be stuck with a blind binary and cannot actually inspect the underlying policies. It precludes Beagle from fundamental and basic operations that its customers contract with Beagle to manage. The Scheduled Reports approach shifts the labor from Beagle to property managers who are Beagle's customers, inverting the entire Beagle value proposition. AppFolio's emphasis on scheduled reports is disingenuous. (D'Angelo Decl. ¶ 2-3.); (Brown Decl. ¶ 5.)

AppFolio makes much of an email that Beagle sent to customers about Scheduled Reports. This email is obviously, on its face, damage control. It was sent to try to stop customers from panicking—and it didn't even work as Beagle still lost over $500,000 in revenue as well as thousands of doors of lost opportunity. Beagle's sales team has observed over $5,000,000 in deal pipeline leads that either expressed concerns about AppFolio's threats or slowed down deals starting at the time that AppFolio began making its threats. (Brown Decl. ¶ 4.) Beagle has submitted example such messages from existing and potential customers in briefing so far. Of course Beagle would try to send a message telling customers not to worry, but this does not mean that Beagle will not suffer irreparable harm if AppFolio is permitted to actually ban Beagle from its platform.

**API Access.** AppFolio API access does not solve the issue either. AppFolio designed its API so that it would not expose all the data fields that Beagle customers contract with Beagle to manage. AppFolio will simply ban Beagle from use of the API, just as it wishes to ban Beagle from use of its platform. API access is not universally granted by AppFolio and it is likely to throttle and restrict Beagle's access. Implementing a new API would require AppFolio itself to engineer new API endpoints and Beagle to spend months engineering new integrations. (D'Angelo Decl. ¶ 4.) Beagle's customers already contract with Beagle to use a method that is seamless, that works, and that AppFolio supports for many others. (Brown Decl. ¶ 2.)

**AppFolio Marketplace.** Similar issues here. AppFolio will not allow Beagle into

7

its marketplace.  (D'Angelo Decl. ¶ 4.)  It already sends customers mass-messages about how they should not use Beagle and making false statements about how Beagle is  purportedly insecure.  It is not a real or functional solution.

Even if these alternatives could work, and they cannot come close to working, AppFolio should not be permitted to selectively ban Beagle from logging into its platform on behalf of AppFolio's own customers while allowing Second Nature and others to keep using that integration, after allowing Beagle to use the integration for over a year and only starting to make a fuss once Beagle grew in the market.

**Other Domains.**  AppFolio also argues that Beagle used other domains and that can be a workaround.  This does not make sense, because AppFolio has shown it can detect those domains and will block them too. (D'Angelo Decl. ¶ 6.)  AppFolio also tries to argue that using these domains somehow shows Beagle does not deserve injunctive relief against AppFolio's unlawful conduct.  But Beagle was justified in using new domains given that AppFolio has been threatening to ban it and that AppFolio actually told customers Beagle was banned after representing to a federal court that it would not ban Beagle.  Beagle did not trust AppFolio would hold up its consent, so it had to prepare for the worst.  These alternative domains would force Beagle to play a game of whack-a-mole where AppFolio would constantly be disrupting Beagle's contracts and ability to work with its customers.  Only a Court injunction that stops AppFolio from deplatforming Beagle, regardless of what domain Beagle uses, would be effective.

### III.   <u>Balance of Equities and Public Interest</u>

A TRO and later a PI is merited because AppFolio has allowed Beagle to do what it is doing for over a year.  There is no harm to AppFolio from this.  It just facilitates lawful competition and AppFolio does not like the fact that customers choose Beagle instead of Second Nature and AppFolio's competing in-house offerings.

AppFolio's attempts to relitigate its false advertising claims that it already lost in an early injunctive relief context in Santa Barbara Superior Court do not justify permitting

8

AppFolio to deplatform Beagle.  Beagle does not claim to be an official partner of AppFolio—it obviously would not make sense to do that given the companies are engaged in a high-profile public litigation.  The issue of the domain names is addressed above.  It does not change the equities balance, as Beagle had no choice, its customers permitted it to use any domain it wished, and AppFolio allows any domain a customer would want to be used to log into the customers' AppFolio account by its nature.

AppFolio's security concerns are unsupported.  Beagle actually has strong enterprise security on its end, using multi-factor authentication, password management tools, and minimizing access to credentials to only those who need it.  Beagle regularly rotates its credentials and also disables access for departing employees.  AppFolio allows the same type of access that Beagle has to Second Nature and many others and has not raised any security issues.  AppFolio can point to no security incident and does not even attempt to do so.  (D'Angelo Decl. ¶ 6.)

The Ninth Circuit and other courts that have stopped platform bans while litigation is pending do so because there is a public interest in allowing software companies to service their customers.  It is not in the public's interest and it is not equitable to allow a software platform to selectively target competitors who contract with customers that desire the provided services, make up false narratives about those competitors, all to promote their own competing products.  The services Beagle provides are not abstract services.  They impact thousands of people's lives.  Verifying renter's insurance is critical so that if there is a fire, for instance, the building actually is able to cover that damage.  Helping a renter set up their utilities and Internet when they move in has a major impact on their day-to-day life.

## II. <u>CONCLUSION</u>

AppFolio, if not enjoined, will upend tens of thousands of renters and a multitude of buildings that rely on Beagle.  It will stop at nothing to destroy Beagle's business and unlawfully funnel its customers towards Second Nature and AppFolio's in-house products.  AppFolio has already shown its cavalier approach when it told a federal court it would

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

preserve the status quo and then two days later ran a banner in its software telling customers that Beagle had already been banned.  A TRO is supported under *Winter* in this case and is a reasonable measure to continue preserving the status quo until a preliminary injunction determination can be made.

DATED:  December 31, 2025            Respectfully Submitted,


                                By  */s/ Michael Burshteyn*

                                **GREENBERG TRAURIG, LLP**

                                *Attorneys for Plaintiffs Beagle Labs, Inc., Beagle*
                                *Technologies, Inc., Big Beagle, Inc., Rental*
                                *Property*
                                *Managers Association LLC, and YRIG Risk*
                                *Retention Group, Inc.*

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER