**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39**

*[Notice of Motion for Reconsideration, Declaration of Anthony D'Angelo, and Declaration of Ayanga Okpokowuruk filed concurrently herewith]*

Date: February 23, 2026
Time: 1:30 p.m.
Location: Courtroom 7A, 7th Floor
Judge: Hon. John F. Walter

# I. INTRODUCTION

Beagle respectfully requests the Court reconsider whether to hold an evidentiary hearing on Beagle's preliminary injunction motion, based on new facts arising after the Court's January 7, 2026 Order.[1]

Since the Order, despite AppFolio's representations that Beagle could work through alternative methods to service its customers, AppFolio has communicated to customers that it does not intend to permit Beagle to work with its platform. Beagle has directly requested AppFolio provide an explanation for how Beagle can work with the API or alternative methods, but has received no response or path forward. (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

Also since the Order, Beagle has further investigated AppFolio's claim that Scheduled Reports, the API, and other means can permit Beagle to service its customers' contracts. Beagle had only two days to review and respond to AppFolio's Opposition to the TRO and PI. AppFolio filed its papers on December 29, and Beagle responded in the afternoon on December 31. AppFolio asserted that these alternative routes could work, and Beagle was not able to sufficiently review in that time. Beagle now understands that AppFolio's API is not available to customers who do not have an enterprise account and does not permit the specific form of access that Beagle requires to service its customer contracts, and neither do the Scheduled Reports. (Okpokowuruk Decl., ¶¶ 2-5.)

Beagle respectfully submits that given the factual disputes, an evidentiary hearing on its preliminary injunction request is appropriate to permit Beagle an opportunity cross-examine AppFolio's witnesses on their representations about alternative methods, given the new facts. The irreparable harm to Beagle is ongoing, as AppFolio after the Order has taken new action to mar Beagle's reputation through its conduct and customer messaging—

[1] On January 7, 2026 the Court issued an Order denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [ECF. No. 39] (the "Order"). Beagle's deadline to appeal the Order on legal grounds has not yet expired, but Beagle understands the local rule and this Court's precedent with respect to motions to reconsider limiting the nature of the permissible reconsideration requests.

grounds which support a preliminary injunction. The extinction of Beagle's business is also still at risk, as AppFolio appears to be gradually implementing its blocking measures.

This motion for reconsideration is intentionally narrow and focused on the need for an evidentiary hearing to explore fairly whether or not 1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle. If the Court does not reconsider its Order and the additional relevant facts and grant Plaintiffs' Motion for Temporary Restraining Order outright—which the Court is empowered to do—Plaintiffs seek at least the narrow relief of a short evidentiary hearing focused on substitutability and operational feasibility of AppFolio's suggested alternative solutions, along with further scrutiny into the irreparable reputational harms at issue here.

## II. LEGAL STANDARD

Local Rule 7-18 provides for reconsideration "on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

Similarly, Fed. R. Civ. P. 59(e) provides four grounds for reconsideration: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *IV Sols. Inc. v. TakeCare Ins. Co.*, No. CV 13-4592-JFW MANX, 2014 WL 8515781, at *2 (C.D. Cal. Feb. 28, 2014) (Walter, J.) (*citing Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.2011)). *See also White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." (citation

modified)); *Banister v. Davis*, 590 U.S. 504, 507 (2020) (The Rule enables a party to request that a district court reconsider a just-issued judgment.").

In addition, Fed. R. Civ. P. 54(b) provides: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) (granting motion for reconsideration due to intervening change in controlling law).

Beagle's request meets these standards.

## III. <u>ARGUMENT</u>

### A. Accelerated Briefing Limited Beagle's Opportunity to Test AppFolio's Proffered Substitutes

Certainly, given the existential threat to its business caused by AppFolio's abrupt severance of its platform access, Beagle worked to implement AppFolio's suggested alternatives, and to find other potential solutions, as swiftly as possible. As this Court recognized, "as soon as Beagle became aware that AppFolio intended to [sever its existing access], Beagle began working on developing or engineering such integrations." (Order at 6.) Nevertheless, during the accelerated briefing schedule, while also managing a business crisis and a flood of customer inquiries, Beagle was not provided and did not learn all the relevant facts about Scheduled Reports and Database API it has discovered since this Court's Order. The statement from Mr. Brown was made on December 9, 2025, when AppFolio first began sabre rattling. That hopeful statement, made during desperate times in an effort to reassure Beagle's customers, turned out to be incorrect. But, AppFolio cited that statement, which, in a disappointing turn, has turned out to be factually untrue, in asking this Court to accept the fact as true that Scheduled Reports could solve Beagle's harm.

Beagle had only two days to investigate AppFolio's claims after AppFolio filed its opposition on December 29, 2025. Since the Order on January 7, 2026, Beagle has confirmed that these mechanisms do not work. (Okpokowuruk Decl. ¶¶ 2-5.) They do not have the write access necessary for Beagle to service its customer contracts.

This demonstrates both "a material difference in fact . . . from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered" and "new material facts . . . occurring after the Order was entered." LR. 7-18.

**B. Beagle's Attempt to Implement AppFolio's Proffered Solutions Post-Order has Revealed they are Operationally Insufficient**

In the time since the Court's Order, Beagle has attempted to implement the Scheduled Reports and Database API solutions upon which the Court rested its conclusion that Beagle had not shown irreparable harm. Beagle's effort to use these alternatives has revealed a material limitation that was not apparent from the briefing record: Scheduled Reports and Database API do not permit the write operations that Beagle requires. They permit passive receipt of static data snapshots but do not allow Plaintiffs to take action (*i.e.*, write-in) within AppFolio's system, remediate compliance issues, validate or correct records, execute workflows, or perform other active functions required by Plaintiffs' customer contracts. In other words: these tools only allow Beagle to access frozen copies of data. If Beagle's access is limited to these read-only functions, Beagle cannot service its customers because it cannot make changes, fix problems, confirm accuracy, run processes, or actually do the work Beagle's customers expect and have contracted with Beagle to do through the AppFolio platform.

As set forth in the accompanying declarations, while Beagle made a good faith effort to investigate AppFolio's suggested solutions, the limitations inherent in read-only access make it impossible for Plaintiffs to perform the services their customers contracted for. *Id.*

AppFolio's API offerings are similarly limited, and do not qualify as a substitute. First, the API apparently is not available to most of the relevant customer cohort because it

is limited to enterprise customers. *Id.* Second, even for customers who have access to AppFolio's API, the available endpoints do not furnish the operations needed to sustain Plaintiffs' workflows or contractual obligations. *Id.* Beagle cannot accomplish its goals via API access unilaterally. AppFolio would itself have to work with Beagle on a new custom integration. Despite Beagle's requests (*see* D'Angelo Decl. Exh. A), AppFolio is not helping and instead is telling customers that it will not work with Beagle.

These facts, understood through Beagle's exploration of and attempts to implement the proposed substitute methods after the Order, demonstrate that AppFolio's assertions were incorrect, and that the actual facts involved in using Scheduled Reports and Database API cannot preserve the status quo for Beagle and do not prevent AppFolio's blocking of Beagle's access from causing irreparable and existential harm. This mismatch between AppFolio's representations to the Court and the realities on the ground support reconsideration under Rule 59(e) and the Local Rule 7-18.

An evidentiary hearing would permit cross-examination and submission of evidence to assist the Court in determining a resolution to the factual disputes on these questions.

### C. Post-Order Evidence of AppFolio's Communications to Beagle Customers Reveals Irreparable Reputational Harms to Beagle

In the time since the entry of the Order, Beagle has learned that it faces an additional, independent form of irreparable harm from AppFolio's post-order disparaging communications to Beagle's customers. On January 9, 2026, AppFolio emailed a Beagle customer and told them that "the method by which Beagle has chosen to operate their business places you at risk," claiming Beagle could "access the personally identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

These post-Order statements, made directly to Beagle's customers, go beyond competitive positioning; they accuse Plaintiffs of dishonesty, noncompliance, and security risk, striking at core attributes that underpin Plaintiffs' reputation in the property

management field. The resulting harms are immediate and non-quantifiable: they chill existing customer relationships, impede renewals and expansion opportunities, and deter prospective customers who receive or hear of these accusations through AppFolio's channels. The January 9 communication was disseminated to at least one active customer evaluating whether to "unlock" Plaintiffs' user account, and, after AppFolio's message, that customer declined. *Id.* Continued repetition of these assertions to other customers will compound the reputational injury, erode goodwill, and destabilize customer confidence in ways that cannot be remedied by *post hoc* damages. This fallout from the Order provides new facts demonstrating that the premises behind the Order's irreparable harm holding—having to do with business extinction rather than reputational harm—merit reconsideration.

**D. These New Facts Warrant Reconsideration in this Jurisdiction**

Local Rule 7-18 permits reconsideration of a decision where new facts emerge that could not have been demonstrated prior to the Order. In *Rubin v. Grill Concepts Servs., Inc.*, the Ninth Circuit held that "[i]t was not an abuse of discretion for the district court to reconsider its earlier decision to deny injunctive relief" where the defendant refused to negotiate in good faith and an administrative law judge issued a decision that the district court regarded as "a useful benchmark against which the Director's prospects of success may be weighed." *Rubin v. Grill Concepts Servs., Inc.*, No. 22-55620, 2023 WL 334017, at *2 (9th Cir. Jan. 20, 2023) (affirming grant of TRO after initial denial and reconsideration, *citing City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) for the principle that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.").

Here, pursuant to LR 7-18, the Court could review and evaluate the new and developing facts around AppFolio beginning to implement its blocking of Beagle from the AppFolio platform without functioning alternative access, as well as the growing harms caused by AppFolio's disparagement, and determine that the new facts satisfy the standards for a TRO to preserve the status quo for Beagle pending further proceedings. *See also Van Derheydt v. Cnty. of Placer,* 32 F. Appx. 221, 223 (9th Cir. 2002) (reversing E.D. Cal.'s

denial of motion for reconsideration where counsel for movant had failed to research and present a crucial defense, distinguishing its decision from "routinely giv[ing] litigants a second bite at the apple").

**E. An Evidentiary Hearing is Appropriate under the Circumstances**

Under these circumstances, Beagle requests the opportunity to test AppFolio's technical theories, which were proffered without factual development on a compressed schedule. AppFolio first advanced the Scheduled Reports as a functional substitute for direct access in its Opposition, filed on December 29, 2025. Plaintiffs' reply was due two days later, on December 31. At that point, Plaintiffs had no meaningful opportunity to conduct technical validation or testing of AppFolio's representation. Accordingly, the record before the Court reflected only generalized descriptions of Scheduled Reports' availability, not their functional limitations in practice, and Beagle had no opportunity to test the processes or to question their advocates.

Plaintiffs submit that an evidentiary hearing would allow the Court to resolve these factual disputes reliably. On the paper record, with competing positions without an opportunity for live testimony and cross-examination, AppFolio's representations are untested.

The Ninth Circuit has recognized that a hearing is appropriate when the parties submit "opposing declarations" on a material fact to avoid irreparable harm. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) (finding fault in district court's having decided injunction without evidentiary to resolve factual disputes found in dueling declarations); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) ("Where sharply disputed facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate."). Other circuits have noted that "where factual disputes *are* presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted" or denied. *Com. Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984); *see, also,*

*e.g.*, *Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) (differences on the facts "must be resolved by oral testimony" before deciding preliminary injunction); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) ("Where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held."); *cf. also, e.g., Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[I]t may be improper to resolve a preliminary injunction motion on a paper record alone.").

Where, as here, the parties assert diametrically opposed facts related to complex technologies, an evidentiary hearing is essential to test those claims and ensure the Court's ruling rests on accurate facts.

## IV. CONCLUSION

For the foregoing reasons, Beagle respectfully requests reconsideration of the Court's Order. A narrow evidentiary hearing would clarify the dueling technical assertions presented in the parties' preliminary injunction briefing.

DATED: January 21, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*