**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jake.Evans@gtlaw.com
Jordana R. Sternberg (*pro hac vice*)
Jordana.Sternberg@gtlaw.com
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPFOLIO, INC. a California corporation, | CASE NO. 2:25-cv-12248-JFW-SSC <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39** |

Defendant.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

# **PRELIMINARY STATEMENT**

Beagle seeks limited relief: an evidentiary hearing to determine whether a preliminary injunction should issue.  There are a slew of new facts and evidence not presented or available when the Court initially denied injunctive relief.

AppFolio represented to the Court that Beagle could access alternative paths to service Beagle customers through AppFolio's platform, even if AppFolio carried out its threat to block Beagle from its existing access to those customers.  The Court's January 7 Order reflects reliance on AppFolio's representations, finding that Beagle had alternative access and did not establish irreparable harm based on existential risk.  The Court did not make findings about other grounds for irreparable harm, such as reputational harm to Beagle or otherwise.  Despite AppFolio's representations, the alternative paths it outlined are all dead ends.  AppFolio knows this now and knew this when it represented to the Court otherwise.  Outside of the Court's view, weeks after the ruling gave AppFolio a license to block Beagle, AppFolio told Beagle that its "dishonest and unethical conduct, as detailed in our filings, undermines that trust" that is "part of any partnership decision."[1]

AppFolio's opposition brief boils down to a gotcha: that the representations it made to the market, to Beagle, and to this Court about how Beagle could have alternative access methods—were never true.  AppFolio argues that because its representations were untrue when AppFolio made those representations, now the Court should not permit an evidentiary

---

[1] Declaration of Marcelo Barros ("Barros Decl."), Exhibit 1.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO
AND OSC PRELIMINARY INJUNCTION RE DKT. 39

hearing to determine the true nature of the facts because there is nothing "new" justifying reconsideration. This is a tortured reading of the reconsideration standard and would essentially reward AppFolio for hiding the ball and, from the get-go, never intending to work with Beagle.

The Court's current ruling is based on an incomplete factual record and factual findings that relied on misrepresentations and omissions by AppFolio. An evidentiary hearing could remedy this by permitting Beagle to cross examine AppFolio's witnesses (and AppFolio could do the same) and both parties could present evidence on what Beagle's customers contract with Beagle to do and how that can be done—or not—after AppFolio blocks Beagle. Indeed, even in AppFolio's Opposition Brief, it includes new declarations with new factual attestations and statements about API access and Scheduled Reports. In a highly technical and fact-intensive dispute, such as this one, an evidentiary hearing is a common prelude to a decision on a preliminary injunction request and can be helpful to the fact-finder.

By way of example of the facts that merit scrutiny: AppFolio claims that Scheduled Reports can provide Beagle's customers what they need, despite the fact that Scheduled Reports are onerous to set up and not equivalent to Beagle's customers' prior method of access through Beagle, as well as being read-only. AppFolio claims that Beagle can use its API, while omitting to the Court that AppFolio's API does not work for the majority of AppFolio customers who do not have the higher level of API access needed enabled.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

AppFolio also touted its Stack program, but has blocked Beagle from joining it since the Court's ruling (and omitted that it never intended to allow Beagle to join prior to the ruling either).

Apart from the substance, AppFolio spends a long portion of its brief on procedural gotchas as well. With respect to timing, good cause merits reconsideration. Beagle is being irreparably harmed daily based on conduct—selective targeting and Terms enforcement—that the Ninth Circuit has proscribed in the *HiQ* case. Beagle's refiling of the reconsideration motion did not prejudice AppFolio. The delay has only harmed Beagle. The appeal also does not divest this Court of its jurisdiction to reconsider whether to hold a hearing on a preliminary injunction motion. The pending appeal has to do with the Court's application of the legal standard, while the reconsideration motion focuses on whether new facts merit an evidentiary hearing.[2]

Reconsideration is appropriate in light of new facts, and an evidentiary hearing would provide clarity as to the complex technical issues behind how AppFolio claims Beagle can work with it. AppFolio should not be rewarded for claiming that it is willing to work with Beagle to this Court, and then after the Court ruling, proclaiming to customers that it has no intention of working with Beagle.

---

[2] AppFolio's opposition references an argument Beagle made previously in support of its claim for TRO and asserts that Beagle's current motion "abandons the theory altogether." (Dkt. 68 at 5.) Beagle's argument choice simply reflects its compliance with L.R. 7-18 and does not represent abandonment of its prior claims.

## ARGUMENT

## I.   New Facts Warrant An Evidentiary Hearing

### A.   AppFolio's Proffered Solutions Do Not Provide Beagle Effective Access

In its TRO opposition, AppFolio represented to this Court that Beagle had multiple "secure methods," including AppFolio Stack, Database API, and Scheduled Reports.  (Dkt. 33 at 9-11.)[3]  The Court relied on this representation in denying the TRO, finding Beagle had no basis to fear being locked out.  In finding a lack of irreparable harm, the Court found that "that data is available through alternative authorized means, such as through the use of Scheduled Reports" and that "customers can share that data with Beagle through other authorized means, including by using AppFolio's Database API." (Dkt. 39 at 5, 6.)

But AppFolio's own public filings confirm that "Beagle does not and will not integrate with AppFolio—not now, and not ever." (Dkt. 57 ¶ 87 (Answer, admitting the statement was made).)  These positions are incompatible. AppFolio cannot simultaneously represent to the Court that "compliant paths" exist for Beagle to use its platform while telling its customers Beagle "will not" ever integrate.

After the TRO was denied, Beagle formally asked AppFolio to actually provide access to those alternatives.  AppFolio refused.  The reason, it turns out, is that AppFolio does not trust Beagle enough to allow it to use the API; the same API AppFolio told the

---

[3] AppFolio's brief more precisely states that "customers" have multiple secure methods: "customers can work with Point Solutions in the AppFolio Stack Marketplace"; "customers can use AppFolio's Database API"; "customers can use scheduled reports."  (Dkt. 33 at 9.)

Court "may" provide a viable path. AppFolio acknowledges it did not provide any technical documentation about Database API capabilities until January 30, 2026, *after* Beagle sent a formal request on January 14, 2026, and *well after* the TRO briefing had concluded. See Barros Decl. Exh. 1. In the same communication, AppFolio all but admitted that it would not permit Beagle to join its Stack Marketplace as a partner because AppFolio did not "trust" Beagle.

Apart from the issues with the API, AppFolio knew Beagle required "write" access – not just "read-only" – which is why Scheduled Reports would not work. Yet in its representations to the Court, it framed Scheduled Reports as sufficient for Beagle's purposes. AppFolio now backtracks, stating that it "[n]ever claimed any of its features would allow Beagle to service its customers' contracts" and that it "never claimed [in prior briefs that the] scheduled reports or database API have write capability." (Opp. at 13.)

This stands at odds with AppFolio's claim, in a footnote, that Beagle sued because Beagle needed more than "just accessing data." (Opp. at 14 n.3). That is, AppFolio understood from the outset that "Beagle wanted write capability" (*id*) and yet it apparently took no position on this in its prior TRO briefs, which arguably misled the Court. To the contrary, AppFolio represented at the time of its opposition that all Beagle needed stemmed from the Scheduled Reports, but now admits it understood from the outset that Beagle sought "write capability." (Opp. at 14 n.3). This alone warrants reconsideration.

AppFolio claims these are not new facts, and that Beagle already knew that Scheduled

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO
AND OSC PRELIMINARY INJUNCTION RE DKT. 39

Reports are read-only. In fact, AppFolio claims that it "fully explained and demonstrated scheduled reports read-only functionality in its Opposition." This is false and highlights why a hearing is important to test these statements (on both sides). (Opp. at 18.) In support of the claim that it "fully explained," AppFolio cites "Dkt. 33 at 5." (*Id.*) But no such explanation appears at that page, which is the introduction to AppFolio's opposition and merely quotes a statement from Beagle's CEO to its customers about the possibility of using Scheduled Reports. Beagle has already shown by Declaration that its CEO's statement was "meant to be damage control to stop customer panic." (Brown Decl., Dkt. 36-1 at ¶5.) Moreover, the term "read-only" does not appear anywhere in AppFolio's Opposition.

Finally, while AppFolio represented to the Court that Stack was a viable path for Beagle's access, AppFolio did not disclose that AppFolio had already rejected Beagle's attempt to join the Stack Marketplace as of December 2024. This omission independently supports reconsideration. See L.R. 7-18. (Dkt. 64-2, Ex. A at 2; Ex. C.)

Because Beagle has determined since the denial of the TRO that AppFolio's representations about effective alternative access were not accurate, Beagle seeks the opportunity to present evidence that AppFolio's blocking is causing Beagle irreparable harm, and that AppFolio's proffered solutions do not work.

**B.      Diametrically Opposed Technical Declarations Cannot Be Resolved on the Cold Record**

The technical declarations at issue here, concerning the factual dispute over whether

the solutions AppFolio proffered actually work, are irreconcilable and should only be resolved via an evidentiary hearing.  The case of *Thomas v. County of Los Angeles* counsels against resolution of factual disputes where there are dueling declarations.  *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992).  There, the court held that "[t]he parties to this action submitted diametrically opposing declarations and counter-declarations disputing the frequency and seriousness of" the conduct at issue, and that the district court had improperly entered its order "without resolving any of the disputed matters." *Id.*

First, the question of whether Database API provides the write access that Beagle's contracts require is a technical question about which two software engineers have now given conflicting sworn testimony.  Mr. Ayanga Okpokowuruk submitted a declaration in support of Beagle's motion for reconsideration stating that neither Scheduled Reports nor Database API will work, in large part because neither have "write" capabilities.  (Okpokowuruk Decl. ¶¶ 2-5.)  Though AppFolio admits Scheduled Reports do not have write capabilities (Opp. at 13-14.), Mr. Delage represents on behalf of AppFolio that Database API has a "robust [write] capability."  (Dkt. 68-3 ¶ 5.)[4]

Second, Beagle's engineer, Mr. Okpokowuruk, said available endpoints do not support Beagle's required workflows, and that building them would require AppFolio's

---

[4] Beagle acknowledges that AppFolio's declarant has made this statement, but does not address here whether it is accurate.

9                                                                    CASE NO. 2:25-cv-12248-JFW-SSC

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

active cooperation—which AppFolio has refused to provide.  (Okpokowuruk Decl. ¶ 4.)
AppFolio's declarant, in turn, stated that "*[c]ustomers* can use this write capability without
the need for AppFolio to engineer new endpoints," (Dkt. 68-3 ¶ 5 (emphasis added).)  These
two positions are also at odds and necessitate an evidentiary hearing.

A third conflict that should be reconciled in an evidentiary hearing concerns the
universe of customers for whom API is available.  Mr. Okpokowuruk declared that
Database API is restricted to enterprise-tier AppFolio accounts, making it unavailable to
most of Beagle's relevant customer base. (Okpokowuruk Decl. ¶ 4.)  AppFolio does not
appear to dispute this: its opposition is silent on the issue.  The Court should not resolve an
unrebutted engineering declaration *against* Beagle on a cold record.

AppFolio argues no evidentiary hearing is needed because Beagle identifies no "false
statements." (Opp. at 19.)  But that is not the standard.  *Thomas* does not require proof of
false statements—it requires "diametrically opposing declarations" on a material fact.
*Thomas,* 978 F.2d at 509.  That is precisely the situation here.

C.      **Beagle Exercised Reasonable Diligence**

Perhaps recognizing the precarity of its conflicting statements, AppFolio then resorts
to arguing Beagle lacked reasonable diligence to discover that AppFolio's proffered
solutions would not work.  For example, AppFolio claims the API limitation did not change
after the Court's order and that Beagle could have learned of the API limitations.

*First*, AppFolio did not provide, and has never claimed it provided, API

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF DENYING TRO
AND OSC PRELIMINARY INJUNCTION RE DKT. 39

documentation, technical specifications, or integration guidance to Beagle during the TRO briefing period.  AppFolio responded only after Beagle's counsel sent a formal letter on January 14, 2026, and even then, AppFolio did not respond until January 30, 2026, weeks after the TRO had been denied.  AppFolio cannot establish that Beagle had the means to discover the gaps underlying AppFolio's representations about the purported solution.

*Second*, Beagle had no opportunity for discovery or other diligence *before* the TRO briefing concluded on December 29, 2025.  Beagle had only two days between AppFolio's December 29 opposition and the end of briefing, and this was in the midst of chaos caused by AppFolio, which created a business emergency in addition to the legal emergency, all during the holiday season.  Expecting Beagle to have independently engineered and tested API integrations in that short window is unreasonable.  Contrary to AppFolio's statements, Beagle did not have "months."[5]  Therefore, AppFolio's claim that Beagle should have known the solutions AppFolio offered would not work is unavailing and should be rejected.

## II.    The Refiled Motion Is Timely And Relates Back To The Original Filing

### A.    AppFolio Concedes the Original Motion Was Timely

---

[5] AppFolio slings mud about the delay in its brief, arguing that Beagle should have figured out AppFolio's deception.  Beagle had just a short number of days to respond to AppFolio's Opposition to its request for a TRO and OSC re Preliminary Injunction.  AppFolio's accusations of forum shopping are false.  Beagle had good reason to file in the Northern District of California and the venue issue was not so clear cut as AppFolio tries to make it seem by cherry-picking a single quote from the transfer order.  The briefing and order speak for themselves.  There was no part of Beagle's filing in the Northern District that had to do with forum shopping.  Both Courts are in the Ninth Circuit and the same law binds each.

CASE NO. 2:25-cv-12248-JFW-SSC

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

AppFolio concedes that Beagle's January 21 motion was filed timely.  (Opp. at 10.) It does not dispute that Beagle re-filed immediately after curing the procedural deficiency identified by the Court.  Having admitted timeliness, AppFolio identifies no authority holding that a motion timely filed, then struck solely for an unintentional procedural defect, becomes untimely when promptly refiled in conformity with the Court's directive.

The relevant question asks not whether the *re-filed* motion fell within the original 14-day window—it could not.  The question is whether Beagle acted in good faith and without undue delay.  It manifestly did so.

**B.      Good Cause Exists for the Minimally Required Time Delay Compelled by the Court's Own Local Rules**

After the Court struck Beagle's timely-filed reconsideration motion, Beagle had to comply with the time requirements of the Court's own rules, in order to refile.  Beagle did just that.  Beagle initiated the L.R. 7-3 conference the same day the Court issued the strike order, filed the Joint Statement two days later, and re-filed the motion at the earliest point possible given the procedural prerequisites were satisfied.  L.R. 7-3.

In its Opposition, AppFolio cites to *ML Prods. Inc. v. Ninestar Tech. Co. Ltd.* and *Teixeira v. BMW of N. Am., LLC*.  Both are distinguishable.  In *ML Prods. Inc.*, the plaintiff attempted to file its *original* motion for reconsideration "a day late."  *See ML Prods. Inc. v. Ninestar Tech. Co. Ltd.*, 2025 WL 2670865 at *3-4 (C.D. Cal. Feb. 12, 2025).  *Teixeira* is even further afield.  There, the defendant repeatedly misunderstood and misapplied the

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

Local Rules and the Court's procedures, including a *63-day delay* following entry of a motion to compel order. *Teixeira v. BMW of N. Am., LLC*, 2023 WL 6194169, at *10, 11, n.3 (C.D. Cal. July 3, 2023). Neither case resembles the present circumstances. Unlike the plaintiff in *ML Prods. Inc.*, Beagle's original motion for reconsideration was timely. Additionally, Beagle did not miss a deadline through neglect or inattention. Rather, Beagle proceeded under an incorrect but sincere interpretation of the Local Rules and procedural mechanisms. Beagle's actions do not reflect a pattern of noncompliance, willful disobedience, or dilatory intent. As soon as Beagle's counsel learned of the inadvertent mistake, Beagle acted diligently, in good faith, and expeditiously.[6]

**C.    The refiled motion relates back to the first-filed reconsideration motion**

The February 11, 2026 motion is substantively identical to the January 21, 2026 original motion. It presents the same grounds, the same facts, the same declarations, and

---

[6] The length of delay and its impact on the proceedings also supports the finding of excusable neglect. The Ninth Circuit evaluates how unique local rules may complicate compliance with deadlines. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th. Cir. 2010) (finding excusable neglect, partially because plaintiff "faced an exceptionally constrained deadline resulting from the peculiar dictates of the local rules for the Central District of California.") Here, once counsel for Beagle learned of the meet and confer requirement for motions for reconsideration, they immediately met and conferred and complied fully with Local Rule 7-3. The seven-day time lapse in refiling was solely to comply with Local Rule 7-3, which mandates a conference to occur "at least 7 days prior to the filing of the motion." Local Rule 7-3. Beagle acted promptly and in immediate conformity with Local Rule 7-3 once the deficiency was identified, thereby ensuring minimum disruption and prejudice.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

the same legal arguments. Accordingly, there is no prejudice, no surprise, and no incremental burden on AppFolio.

The Ninth Circuit mandates liberal application of relation back doctrine "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1005 (9th. Cir. 2014). Courts have recognized that the relation back doctrine applies to facilitate merits adjudication where the opposing party has notice and suffers no prejudice. *C.f. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (analyzing excusable neglect through equitable factors including prejudice, length of delay, reason for delay, and good faith). Each *Pioneer* factor favors Beagle: there is zero or minimal prejudice to AppFolio, the delay was the minimum required (seven days), mandated by L.R. 7-3, the reason for the initial defect was a genuine interpretive question about whether L.R. 7-3 applied, and Beagle acted in immediate good faith upon learning of the deficiency.

The Court should find that the re-filed motion relates back to the original in order to facilitate merits-based adjudication of the reconsideration request. Treating the February 11th motion as relating back avoids prejudice, conserves judicial resources, and promotes a decision on the merits.

**III.   Beagle's Appeal Does Not Divest This Court Of Jurisdiction**

At the outset, AppFolio's jurisdictional argument is internally contradictory. On one hand, AppFolio's opposition states that it "takes no position on the scope of this Court's

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

jurisdiction," yet it devotes a full section of its brief to arguing the Court should deny Beagle's motion on jurisdictional grounds.  (Opp. at 11-12.)

In any event, the two inquiries are distinct: the Ninth Circuit can review the Court's January 7th order for legal error while this Court is asked to consider the denial of an evidentiary hearing on the grounds of new facts, declarations, and material omissions.  It may be the case that a ruling following an evidentiary hearing might moot the appeal, but that does not mean this Court cannot hold a hearing.

## IV.   **AppFolio's Irreparable Harm Arguments Further Support the Need for an Evidentiary Hearing**

AppFolio argues that recent funding announcements demonstrate the Beagle entities do not face irreparable harm and that AppFolio's actions do not put Beagle at catastrophic risk.  This argument misunderstands both the nature of irreparable harm and the purpose of injunctive relief.

AppFolio's unilateral termination of access threatens to disable Beagle's ability to serve existing customers, force Beagle to abandon product features that depend on real-time property management data, and expose Beagle to customer attrition that money cannot undo.  Beagle cannot be made whole in situations where customers abandon Beagle's product because it no longer functions.  Courts in this Circuit have consistently held that loss of market position, customer relationships, reputation, and operational continuity can constitute irreparable harm independent of a company's financial condition.  *See Rent-A-*

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

*Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)* ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."). Even where alternatives could be developed, the threat of business disruption alone can constitute the "extinction" level event that merits an injunction. *See also hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180, 1188 (9th Cir. 2022) (noting that it was "at least highly dubious" that hiQ could survive by "devising and implementing an entirely new data collection system").

AppFolio's factual statements about irreparable harm in their opposition brief do nothing but underscore the value of an evidentiary hearing. To the extent Beagle's family of companies has other business lines unrelated to AppFolio, that does not permit AppFolio to kill the rental software line of business. AppFolio's reasoning would make it impossible for any company to receive injunctive relief when it has multiple lines of businesses and a competitor's unlawful conduct threatens one of them.

### CONCLUSION

Beagle respectfully requests that the Court grant the motion for reconsideration and order an evidentiary hearing on whether a preliminary injunction should issue. Beagle does not ask the Court to resolve the merits on this record, but only that it be provided an opportunity to be heard.

DATED: March 9, 2026

CASE NO. 2:25-cv-12248-JFW-SSC
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39

By  /s/ Michael Burshteyn

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39