Brian Procel (Cal. Bar No. 218657)
Brian@ProcelLevine.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@ProcelLevine.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC., a California corporation,<br><br>Defendant. | Case No.  25-cv-12248-JFW-SSC<br><br>Hon. John F. Walter<br><br>**DEFENDANT APPFOLIO, INC.'S NOTICE OF MOTION AND MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS, OR IN THE ALTERNATIVE FOR LEAVE TO FILE SUPPLEMENTAL PLEADING ASSERTING COUNTERCLAIMS; DECLARATIONS OF NATHAN DELAGE, SEAN SAXENA, JEREMIAH LEVINE; EXHIBITS**<br><br>HEARING DATE: JUNE 15, 2026<br>TIME: 1:30 PM<br>PRETRIAL CONFERENCE: NOT SET<br>TRIAL: SEPTMBER 28, 2027 |

1

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 15, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable John F. Walter, Defendant AppFolio, Inc. hereby moves the Court for leave to file an Amended Answer, or in the alternative a Supplemental Pleading Asserting Counterclaims, asserting counterclaims for tortious interference with contractual relations, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and violations of California Penal Code § 502.

This motion is made on the grounds that good cause exists under Federal Rule of Civil Procedure 16(b)(4) to modify the scheduling order, that leave to amend should be freely granted under Federal Rule of Civil Procedure 15(a), and that Rules 15(d) and 13(e) independently authorize the proposed pleading. Plaintiffs cannot demonstrate prejudice, there is no bad faith or undue delay, and the proposed counterclaims are not futile.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Nathaniel Delage, Sean Saxena, and Jeremiah Levine, the exhibits attached thereto, all pleadings and papers on file in this action, and such further argument and evidence as the Court may consider at the hearing.

Counsel for AppFolio conferred with counsel for Plaintiffs pursuant to Local Rule 7-3 on March 23, 2026, more than seven days before this filing. The parties were unable to resolve the matter, and the parties' joint statement regarding the conference is on file at Dkt. 73.

1

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................... 1

NATURE AND EFFECT OF PROPOSED AMENDMENT ............................... 2

FACTUAL BACKGROUND .................................................................................. 3

    A.    Plaintiffs Accessed AppFolio Without Permission and Knew Their Access Was Prohibited ................................................................ 3

    B.    AppFolio's Pre-Deadline Enforcement Reduced Plaintiffs' Access ............................................................................................... 4

    C.    After the Amendment Deadline, Self-Help Failed ........................... 6

    D.    AppFolio Investigated, Sought Resolution, and Filed at the Earliest Practicable Time ................................................................ 8

ARGUMENT ........................................................................................................... 10

I.    AppFolio Has Demonstrated Good Cause to Modify the Scheduling Order Under Rule 16(b)(4) ..................................................... 10

    A.    Rule 16(b)(4) Turns on Diligence Alone ........................................ 10

    B.    AppFolio Investigated, Engaged, and Filed Within Ten Weeks ............................................................................................. 12

    C.    Awareness of Prior Conduct Does Not Bar Amendment for New Conduct ................................................................................. 14

II.    Rule 15(a) Requires That Leave Be Granted ............................................. 15

    A.    Rule 15(a) Creates a Presumption in Favor of Amendment ............ 15

    B.    Plaintiffs Cannot Demonstrate Prejudice ........................................ 16

    C.    AppFolio Has Not Acted in Bad Faith ............................................ 17

    D.    AppFolio Did Not Delay: It Investigated and Sought Resolution ..................................................................................... 18

    E.    AppFolio Has Not Previously Amended Its Answer ...................... 18

    F.    The Proposed Counterclaims Are Not Futile ................................. 18

III.   Rules 15(d) and 13(e) Independently Authorize the Proposed Pleading.................................................................................................23

CONCLUSION ..........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

## <u>Cases</u>

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.,*
No. EDCV 13-883 JGB, 2020 WL 5775174 (C.D. Cal. July 8, 2020) ...... 24, 25

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) ........................................................................ 12

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ........................................................... 16, 17, 18

*EEOC v. Bay Club Fairbanks Ranch, LLC*,
475 F. Supp. 3d 1099 (S.D. Cal. 2020) ................................................ 11, 14, 17

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) .............................................................. 16, 19

*Entangled Media, LLC v. Dropbox Inc.,*
348 F.R.D. 649 (N.D. Cal. 2025) ..................................................................... 11

*Facebook, Inc. v. Power Ventures, Inc.,*
844 F.3d 1058 (9th Cir. 2016) ................................................................ 20, 21, 22

*Foman v. Davis,*
371 U.S. 178 (1962) .............................................................................. 16, 19

*GCP Applied Technologies Inc. v. AVM Industries, Inc.,*
No. CV 19-7475-MWF (FFMx), 2021 WL 4527757
(C.D. Cal. July 23, 2021) ................................................................................. 12

*In re Western States Wholesale Natural Gas Antitrust Litigation,*
715 F.3d 716 (9th Cir. 2013) ......................................................................... 14

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992) ................................................................... 11, 14

*Keith v. Volpe*,
858 F.2d 467 (9th Cir. 1988) ......................................................................... 24

*Kendrick v. County of San Diego,*
No. 15cv2615 GPC (RBB), 2017 WL 2692903 (S.D.
Cal. June 22, 2017) ................................................................................. 12, 14

*Kuschner v. Nationwide Credit, Inc.,*
256 F.R.D. 684 (E.D. Cal. 2009) ......................................................... 11, 14, 25

*LVRC Holdings LLC v. Brekka,*
581 F.3d 1127 (9th Cir. 2009) ...................................................................... 20

*Miller v. Rykoff-Sexton, Inc.,*
845 F.2d 209 (9th Cir. 1988) ........................................................................ 19

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*

50 Cal. 3d 1118 (1990) .................................................................................. 19

*Pizana v. SanMedica Int'l, LLC,*
  345 F.R.D. 469 (E.D. Cal. 2022) ............................................................ 12, 14

*SKF Condition Monitoring, Inc. v. Invensys Systems, Inc.,*
  No. 07cv1116 BTM (BGS), 2010 WL 3463686
  (S.D. Cal. Aug. 31, 2010) ............................................................ 11, 13, 14, 15

*Srigley v. Monterey Peninsula Yacht Club, Inc.,*
  748 F. Supp. 3d 801 (N.D. Cal. 2024) ................................................ 12, 14, 18

*Zivkovic v. Southern California Edison Co.,*
  302 F.3d 1080 (9th Cir. 2002) ...................................................................... 16, 17

### Statutes

18 U.S.C. § 1030 ............................................................................................ 3, 20

18 U.S.C. § 1030(e)(2)(B) ................................................................................. 22

Cal. Penal Code § 502 .......................................................................................... 3

Cal. Penal Code § 502(c)(2), (3), (4), (7) ........................................................... 22

Cal. Penal Code § 502(e)(1) ............................................................................... 23

### Rules

Fed. R. Civ. P. 13(e) ............................................................................... 1, 2, 24, 25

Fed. R. Civ. P. 15(a) .......................................................................... 1, 2, 16, 24, 25

Fed. R. Civ. P. 15(d) ............................................................................... 1, 2, 24, 25

Fed. R. Civ. P. 16(b)(4) ........................................................................ 1, 3, 10, 11, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In late February 2026, nearly a month after AppFolio filed its Answer, AppFolio began to observe two unfamiliar patterns of access to AppFolio's platform that did not match the Beagle-domain accounts AppFolio had previously detected and disabled. Investigation eventually confirmed that those patterns reflected two new methods Plaintiffs had adopted to access AppFolio's platform without authorization. The first uses *masked accounts*, which are created under email addresses on the customer's own domain (or one strikingly similar), rendering them facially indistinguishable from those of legitimate users. The second uses *ghost accounts*, which are created, used, and deleted before AppFolio's periodic database sweeps can detect them. Both were engineered to defeat the detection processes that had stopped Plaintiffs' earlier Beagle-domain access. Both reached operational scale after the Answer. Both continue today. AppFolio seeks leave to assert counterclaims arising from that post-Answer conduct.

Federal Rule of Civil Procedure 16(b)(4) requires good cause to modify a scheduling order before Rule 15(a)(2)'s liberal leave-to-amend standard applies. Rules 15(d) and 13(e) authorize supplemental pleadings based on conduct that arose after the original pleading. Each path independently authorizes the relief AppFolio seeks. Together they are conclusive.

AppFolio has been diligent. It first began to observe the unfamiliar access patterns in late February 2026. Attribution required documentary evidence, which arrived on March 18, 2026, when an AppFolio customer forwarded written instructions from Plaintiffs directing the scheme. In the ten weeks between first observation and this filing, AppFolio's investigation drew on technical analysis from a senior engineer, customer outreach from customer service specialists, written discovery directed at Plaintiffs' access methods, and a formal cease-and-

1

desist letter. Plaintiffs did not substantively respond to the cease-and-desist letter. Plaintiffs sought and received an extension on AppFolio's discovery, then produced no documents. The required Rule 7-3 conference produced confirmation that Plaintiffs would oppose this motion and would not stipulate. AppFolio filed when Plaintiffs declined to stipulate and refused to engage on the merits. That sequence is diligence under Rule 16(b)(4).

Every remaining Rule 15(a) factor favors amendment. The case is in its earliest stages: trial is nearly seventeen months away, discovery closes in thirteen months, neither party has taken a deposition, and no pretrial conference has occurred. The proposed counterclaims raise the same legal question Plaintiffs placed before this Court: whether their access to AppFolio's databases is authorized. They rest substantially on Plaintiffs' own filings and admissions. Plaintiffs cannot show prejudice on that record, and the record forecloses any finding of bad faith, undue delay, prior failed amendment, or futility.

Rules 15(d) and 13(e) supply two additional independent grounds. The Scheduling Order is silent on supplementation, and the counterclaims rest on conduct AppFolio observed and confirmed after the Answer. That is the situation those rules address.

The Federal Rules favor resolving the entire dispute between these parties in one proceeding, rather than dividing it between this case and a separate action AppFolio would otherwise have to file. Plaintiffs chose this forum to litigate the question of authorized access. The counterclaims present the other side of that question on the same record. The Court should grant leave to file the proposed pleading.

### NATURE AND EFFECT OF PROPOSED AMENDMENT

The proposed Amended Answer adds three counterclaims: tortious interference with contractual relations; violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and violations of California Penal Code § 502. Each rests

2

on the same post-Answer conduct: ghost accounts structured to vanish before AppFolio's database sweeps can detect them, and masked accounts, which are facially indistinguishable from those of legitimate users.

The amendment is narrow. It adds a Counterclaims section without altering any existing affirmative defense, adding any new party, or changing the nature of the dispute. It completes the controversy Plaintiffs placed before this Court rather than expanding it.

The proposed Amended Answer is attached as Exhibit A. A redlined comparison to the current Answer (Dkt. 57) is attached as Exhibit B. The proposed additions appear at page 24, line 1, through page 48, line 16.

## FACTUAL BACKGROUND

AppFolio operates a cloud-based property management platform for residential property managers. The platform supports tenant relationships, lease operations, financial transactions, and insurance offerings. AppFolio's Terms of Service have prohibited unauthorized third-party access since at least 2019. Section 5.2 bars third parties from accessing or using AppFolio's services without AppFolio's prior consent, and authorizes AppFolio to disable access to enforce the Terms or protect its interests. (Saxena Decl. (Dkt. 33-3) ¶¶ 17, 19-21 & Ex. C.) This Court quoted both provisions in its January 7, 2026 order denying Plaintiffs' TRO application. (Dkt. 39 at 2-3.) Plaintiffs have never obtained AppFolio's permission to access the platform. (Saxena Decl. (Dkt. 33-3) ¶¶ 23, 29.)

### A.  Plaintiffs Accessed AppFolio Without Permission and Knew Their Access Was Prohibited

By Plaintiffs' own admission, "the entire Beagle value proposition" depends on access to AppFolio's platform. (Dkt. 36 at 7.) Plaintiffs built that business on

3

access they were not authorized to have. Rather than seek consent, Plaintiffs recruited AppFolio's own customers to create user accounts that gave Plaintiffs entry into the platform. Once inside, Plaintiffs disabled AppFolio's insurance offerings, replaced them with Plaintiffs' own competing insurance products, and configured recurring charges to residents that ultimately benefit Plaintiffs. (Saxena State Court Decl. (Dkt. 33-2) ¶¶ 23-24; Saxena Decl. ¶ 4.)

Plaintiffs knew throughout that their access was prohibited. Plaintiffs' own TRO application admitted the access mechanism on which they relied: "property managers themselves create a separate AppFolio user account for Beagle." (Dkt. 4 at 7.) In the same filing, Plaintiffs attached AppFolio's Terms of Service as an exhibit. (Dkt. 4-3.) This Court subsequently quoted Section 5.2's prohibition on third-party access from Plaintiffs' own exhibit when denying their TRO application. (Dkt. 39 at 2-3.) Plaintiffs therefore held in hand the provision prohibiting the very access method they had just admitted to using, and they placed it before this Court.

**B.    AppFolio's Pre-Deadline Enforcement Reduced Plaintiffs' Access**

Before the pleading-amendment deadline, AppFolio reduced Plaintiffs' access through layered detection: automated database sweeps that ran continuously against a known-domain block list, and weekly manual searches that identified new domains for addition to the list. (Delage Decl. ¶ 9.) Plaintiffs' user accounts moved through two stages of pre-deadline detection.

In the first stage, Plaintiffs' user accounts carried Beagle-domain email addresses, including reports@beagleforpm.com, that AppFolio's sweeps could readily identify and attribute to Plaintiffs. (Delage TRO Decl. (Dkt. 33-8) ¶¶ 9-11; Delage Decl. ¶ 7.) On December 9, 2025, AppFolio formally notified Plaintiffs by email that all Beagle-domain user accounts would be disabled on December 16,

4

2025. (Dkt. 55-2; Saxena Decl. (Dkt. 55-1) ¶ 4.) The same day, AppFolio filed and served a TRO application against Plaintiffs in the Santa Barbara County Superior Court to enjoin Plaintiffs' false advertising, including Plaintiffs' false representations that they were "partnered with" AppFolio when Section 5.2 prohibited their access. (Dkt. 33-2.) On December 15, 2025, Plaintiffs filed their own complaint and TRO application in the Northern District of California, which that court subsequently transferred here, finding "apparent forum shopping" by Plaintiffs and that they had "strategically" selected a forum bearing minimal connection to the controversy. (Dkt. 1; Dkt. 4; Dkt. 24 at 6.)

Before AppFolio could disable the Beagle-domain accounts, Plaintiffs preempted the disablement. During a court-ordered stay from December 15 to December 22, 2025, Plaintiffs changed the email addresses on the very accounts AppFolio had already catalogued, switching to new addresses with generic domain names. The tactic failed. Permanent User IDs AppFolio had previously recorded kept the accounts traceable. (Dkt. 15; Delage TRO Decl. (Dkt. 33-8) ¶¶ 12-13, 15, 18.) AppFolio identified all sixty changed accounts within days. (Delage TRO Decl. ¶ 15.) AppFolio disabled them on January 9, 2026, after this Court denied Plaintiffs' TRO application. (Delage Decl. (Dkt. 55-3) ¶¶ 3-4.)

In the second stage, Plaintiffs began directing customers to create user accounts under generic domain names that Plaintiffs would reuse across multiple customer databases, such as residentpm.cc. (Delage Decl. ¶ 8.) AppFolio's layered detection handled this stage too. Once a generic domain appeared on AppFolio's known-domain list, automated sweeps disabled accounts using that domain within an hour of creation. (Delage Decl. ¶ 9.) AppFolio's weekly manual searches identified previously unknown generic domains for addition to the list, ensuring that

each new domain Plaintiffs adopted was caught and added to the automated block. (Delage Decl. ¶ 9.)

On January 7, 2026, this Court denied Plaintiffs' TRO application. (Dkt. 39.) The Court found that Plaintiffs had "changed fifty-seven of [their] user accounts in AppFolio's customers' databases to prevent AppFolio from locating those accounts and disabling them." (Dkt. 39 at 4.)

By the time AppFolio filed its Answer on February 4, 2026, AppFolio's layered detection had reduced Plaintiffs' identifiable access to isolated instances. Plaintiffs' efforts to evade detection by changing email addresses had been defeated by permanent User IDs. AppFolio's sweeps and searches caught the second-stage generic-domain accounts within an hour. Self-help was working. AppFolio said as much in its Answer, pleading that it had disabled Beagle's access. (Dkt. 57 at 21 (Eighth Affirmative Defense).)

### C.    After the Amendment Deadline, Self-Help Failed

AppFolio filed its Answer on February 4, 2026. The Court entered the Scheduling and Case Management Order on February 12, 2026, setting March 4, 2026 as the deadline for filing motions to amend pleadings and April 13, 2026 as the pleading-amendment deadline itself. (Dkt. 67.) By the time that order issued, Plaintiffs had returned, deploying methods AppFolio had not yet observed. AppFolio could not have filed a supported motion by March 4 on conduct it had not yet confirmed, and that in part had not yet occurred.

In late February 2026, AppFolio began to observe two unfamiliar patterns of access in customer databases. (Delage Decl. ¶ 6.) Both patterns appeared during AppFolio's weekly manual searches but did not match the Beagle-domain or generic-domain accounts AppFolio had previously identified and disabled. (Delage

Decl. ¶¶ 6, 10.) The patterns suggested Plaintiffs had adopted new evasion methods. AppFolio had not yet confirmed their full scope or whether Plaintiffs had directed them systematically. AppFolio could not file a supported motion on an incomplete investigation.

**Masked accounts.** Plaintiffs began directing customers to create AppFolio user accounts under email addresses on the customer's own domain, or on a domain closely resembling the customer's name. (Delage Decl. ¶ 10, 13.) Those accounts facially appeared to come from the customer's own employees. (Delage Decl. ¶ 10.) Only deeper, manual investigation of digital footprints and database activity within individual customer databases could reveal markers suggesting Plaintiffs were behind the access. (Delage Decl. ¶¶ 10, 19.) AppFolio has identified at least 70 masked accounts created after the Answer. (Delage Decl. ¶ 15.) More remain suspected but not yet confirmed. (Delage Decl. ¶ 14.)

**Ghost accounts.** Plaintiffs began instructing customers to delete user accounts shortly after creation, some within a week. (Delage Decl. ¶ 11, 13.) During that week, Plaintiffs entered the customer database, disabled AppFolio's insurance offerings, and configured recurring charges payable to Plaintiffs that would continue running long after the underlying account was deleted. (Saxena Decl. ¶ 4; Delage Decl. ¶ 20.) The accounts were then deleted before AppFolio's next weekly manual search could find them. (Delage Decl. ¶ 11.) Because AppFolio's sweeps cannot detect what no longer exists, AppFolio cannot determine how many ghost accounts Plaintiffs have created. (Delage Decl. ¶ 14.)

By design, the two methods together overcame and overwhelmed AppFolio's layered detection. Masked accounts defeated the automated layer: because each masked domain is unique to a customer, no known-domain block list can catch

7

them. (Delage Decl. ¶ 18.) Ghost accounts defeated the manual layer: deletion within a week meant the accounts vanished before AppFolio's next weekly search could identify them. (Delage Decl. ¶ 11.) What had been costly became both costly and ineffective.

The asymmetry of the new enforcement burden is structural. To find masked accounts, AppFolio's senior engineer must conduct customer-database-by-customer-database forensic review, then manually verify whether each suspicious account belongs to Plaintiffs or to the customer's actual employees. (Delage Decl. ¶ 10, 19.) The verification step is critical and risky: if AppFolio disables a legitimate customer account, AppFolio risks damaging the customer relationship. (Delage Decl. ¶ 19.) AppFolio is forced to investigate exhaustively before acting, which buys Plaintiffs the time they need to use AppFolio's platform to set up their business and create the indefinite recurring charges that outlast Plaintiffs' direct access. (Delage Decl. ¶ 20.) In three ghost accounts AppFolio has analyzed, Plaintiffs configured 633 recurring resident charges totaling approximately $9,575 per month, all set to continue running after the underlying user accounts were deleted. (Delage Decl. ¶ 20.) The senior engineer responsible for this work has spent over sixty hours on this investigation and database analysis, time diverted from leading the engineering team responsible for two of AppFolio's core services. (Delage Decl. ¶¶ 4, 5.) That effort has not stopped Plaintiffs' access. (Delage Decl. ¶¶ 5, 17.) Self-help is no longer sufficient.

### D. AppFolio Investigated, Sought Resolution, and Filed at the Earliest Practicable Time

On March 4, 2026, the motion-filing deadline, AppFolio served Plaintiffs with written discovery directed at Plaintiffs' access methods, including requests for

production, requests for admission, and interrogatories. (Levine Decl. ¶ 3.) At Plaintiffs' request, AppFolio agreed to a continuance of Plaintiffs' response deadline. (Levine Decl. ¶ 7.) AppFolio could not file a supported motion until it confirmed the conduct through its own engineering analysis and documentary evidence from customers.

On March 5, 2026, AppFolio sent Plaintiffs a formal cease-and-desist letter addressing the domain-switching conduct Plaintiffs had themselves admitted in their own briefing. (Levine Decl. ¶ 4 & Ex. G (Cease-and-Desist Letter).) The letter did not yet address the masked or ghost accounts, because AppFolio had only just begun to observe those patterns and could not yet attribute them to Plaintiffs. (Levine Decl. ¶ 4; Delage Decl. ¶¶ 6, 10, 11, 13.) The letter demanded that Plaintiffs state by March 12 whether they would stop. On March 12, Plaintiffs' counsel represented that Plaintiffs would respond the following week. Plaintiffs never substantively responded. (Levine Decl. ¶ 5.)

On March 18, 2026, an AppFolio customer forwarded an email chain from Plaintiffs containing written, step-by-step instructions directing the customer to create a user account using the customer's own domain name, grant Plaintiffs entry to the database, allow Plaintiffs to operate inside it, and then delete the account approximately one week later, after Plaintiffs had used the access to set up their own services and configure recurring resident charges. (Delage Decl. ¶ 13 & Ex. A (Customer Email Chain).) The same email chain captured Plaintiffs directing both the masked-account and ghost-account mechanism in a single set of instructions. (Delage Decl. ¶ 13.) Those emails confirmed that Plaintiffs were responsible for the new conduct. Customers did not act independently; they followed Plaintiffs' written instructions. As of the date of this filing, AppFolio has identified more than 800

accounts attributed to Plaintiffs in total, approximately 180 of which Plaintiffs created after AppFolio filed its Answer on February 4, 2026. (Delage Decl. ¶ 15.) Since March 5, 2026, Plaintiffs have obtained unauthorized access at least 100 additional times, not including ghost accounts AppFolio cannot detect. (Delage Decl. ¶ 16.)

On March 23, 2026, the parties conducted the required Local Rule 7-3 conference. Plaintiffs' counsel confirmed that Plaintiffs would oppose the motion and refused to stipulate to AppFolio's filing of counterclaims. (Levine Decl. ¶ 6.) AppFolio filed the required joint statement on March 25, 2026. (Dkt. 73.)

Between April 16 and April 27, 2026, Plaintiffs served their responses to AppFolio's requests for production, admission, and interrogatories. (Levine Decl. ¶ 8.) Plaintiffs produced no documents and conditioned any future production on entry of a protective order that neither party has negotiated. (Levine Decl. ¶ 8.) AppFolio investigated, confirmed the conduct, demanded that Plaintiffs stop, and filed when Plaintiffs declined to stipulate.

## ARGUMENT

I.    **AppFolio Has Demonstrated Good Cause to Modify the Scheduling Order Under Rule 16(b)(4)**

A.    **Rule 16(b)(4) Turns on Diligence Alone**

Rule 16(b)(4) requires good cause to modify a scheduling order, and good cause turns on a single question: diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992). A movant that fails Rule 16 does not reach Rule 15.

Diligence is not a measure of elapsed time. It is a measure of sustained effort over that time. A movant is diligent when it "remain[s] active in attempting to obtain

10

new information" and "consistently attempt[s] to resolve th[e] issue by meeting and conferring." *EEOC v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1103 (S.D. Cal. 2020).

Courts applying *Johnson* have drawn a critical distinction: diligence is measured against the facts underlying the claim, not against the movant's first observation of the conduct. In *SKF Condition Monitoring, Inc. v. Invensys Sys., Inc.*, No. 07cv1116 BTM (BGS), 2010 WL 3463686, at *5 (S.D. Cal. Aug. 31, 2010), the court put the point directly: "[M]ere knowledge of the [prior conduct] is irrelevant. The crucial question is when did [the movant] have any reason to know" of the facts underlying the claim, and "the answer is [the movant] knew [of the relevant facts] only when it received" the confirming documentary evidence. *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687-688 (E.D. Cal. 2009), applied the same rule to the posture presented here, measuring diligence for a defendant's post-scheduling-order counterclaim from when the defendant learned of the counterclaim's factual basis. A movant that develops its factual basis through documentary investigation has not delayed. It has performed the pre-filing inquiry the rules contemplate. *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 655 (N.D. Cal. 2025) (waiting "until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record"); *GCP Applied Techs. Inc. v. AVM Indus., Inc.*, No. CV 19-7475-MWF (FFMx), 2021 WL 4527757, at *2 (C.D. Cal. July 23, 2021) (good cause where movant confirmed factual basis after completing investigation).

Courts in this Circuit have accordingly found good cause after long intervals between first awareness and filing. In *Srigley v. Monterey Peninsula Yacht Club, Inc.*, 748 F. Supp. 3d 801, 803-04 (N.D. Cal. 2024), the court granted leave after

11

nearly twenty-two months where the predicate for the amendment crystallized only after the original pleading. *Pizana v. SanMedica Int'l, LLC*, 345 F.R.D. 469, 481-82 (E.D. Cal. 2022), and *Kendrick v. County of San Diego*, No. 15cv2615-GPC(RBB), 2017 WL 2692903, at *3 (S.D. Cal. June 22, 2017), reached the same result on comparable records. The common thread is effort. So long as the movant was working, courts grant leave.

Good cause fails only where the movant possessed the facts and sat on them. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (no good cause where party possessed factual basis for over a year and offered no explanation). AppFolio's record is the opposite.

### B.   AppFolio Investigated, Engaged, and Filed Within Ten Weeks

AppFolio first began to observe unfamiliar access patterns in late February 2026, patterns that did not match the Beagle-domain or generic-domain accounts AppFolio had previously identified and disabled. (Delage Decl. ¶¶ 6, 10.) In the ten weeks that followed, AppFolio investigated, engaged, and filed.

**Investigation.** AppFolio's investigation moved from internal pattern identification to external documentary confirmation. AppFolio's senior engineer responsible for technical security analysis worked customer-database-by-customer-database to determine whether the suspicious access markers were attributable to Plaintiffs, while AppFolio personnel contacted affected customers to confirm whether suspicious accounts were Plaintiffs' or the customers' own. (Delage Decl. ¶¶ 5, 10, 19; Saxena Decl. ¶ 2.) On March 4, 2026, the motion-filing deadline, AppFolio served Plaintiffs with written discovery directed at Plaintiffs' access methods: requests for production, requests for admission, and interrogatories seeking internal and customer-facing communications about the creation of user

accounts. (Levine Decl. ¶ 3 & Exs. A–F.) AppFolio had begun to identify the patterns inside AppFolio's databases but could not attribute those patterns to Plaintiffs as directed conduct. *See SKF*, 2010 WL 3463686, at *5. Attribution required documentary evidence in Plaintiffs' own words. On March 18, 2026, an AppFolio customer forwarded written instructions from Plaintiffs directing customers through both the masked-account and ghost-account sequence in a single email chain. (Delage Decl. ¶ 13 & Ex. A.)

**Engagement.** AppFolio sought resolution at every stage. Plaintiffs did not reciprocate. The March 5 cease-and-desist letter addressed the domain-switching conduct Plaintiffs had admitted in Dkt. 36. AppFolio had only just begun to observe the masked-account and ghost-account patterns and did not yet have the documentary basis to include them. The narrow scope of the letter reflects the state of AppFolio's investigation, not delay. The letter demanded cessation by March 12. On March 12, Plaintiffs' counsel stated that Plaintiffs would respond the following week. No substantive response followed. (Levine Decl. ¶ 5.) At the required Local Rule 7-3 conference on March 23, 2026, Plaintiffs declined to stipulate and made clear they would oppose. (Levine Decl. ¶ 6.) AppFolio filed the joint statement two days later. (Dkt. 73.) Plaintiffs have not substantively engaged at any stage.

**Filing.** Once investigation confirmed the conduct and Plaintiffs failed to engage, AppFolio filed this motion on May 8, 2026, twenty-five days after the April 13 pleading-amendment deadline. Plaintiffs' masked-account and ghost-account tactics continued through the interval, and continue through the date of this filing. (Delage Decl. ¶ 17.) AppFolio's investigation kept pace, identifying additional unauthorized accesses on a continuing basis. (Delage Decl. ¶¶ 14, 16.) That ongoing work is not a failure of diligence. It is the definition of it.

13

That timeline establishes diligence under Rule 16(b)(4). AppFolio "remain[ed] active in attempting to obtain new information" and "consistently attempt[ed] to resolve th[e] issue by meeting and conferring" at every stage. *Bay Club*, 475 F. Supp. 3d at 1103. Ten weeks is a small fraction of what courts in this Circuit have repeatedly found diligent. *Srigley*, 748 F. Supp. 3d at 803-804; *Pizana*, 345 F.R.D. at 481-82; *Kendrick*, 2017 WL 2692903, at *3.

### C.    Awareness of Prior Conduct Does Not Bar Amendment for New Conduct

Rule 16(b)(4) measures good cause against the specific conduct that forms the factual predicate for the proposed amendment, not against the movant's awareness of prior conduct that the amendment does not concern. *Johnson*, 975 F.2d at 609; *SKF*, 2010 WL 3463686, at *5; *Kuschner*, 256 F.R.D. at 687-688. The Ninth Circuit has withheld good cause only in the inverse scenario, where the movant possessed the facts and theory of its claim for years and offered no explanation for the delay. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (no good cause where plaintiffs had known of the viability of their claims for years). The rule cuts in AppFolio's favor.

Plaintiffs' pre-deadline access gave AppFolio no reason to know the facts underlying these counterclaims. That access used Beagle-domain accounts AppFolio disabled through routine database sweeps, then generic-domain accounts AppFolio caught through the same automated detection and weekly manual searches. (Delage Decl. ¶¶ 7-9; Delage TRO Decl. (Dkt. 33-8) ¶¶ 9-18; Dkt. 39 at 2, 4.) Self-help was sufficient against those methods. AppFolio reduced the access to isolated instances. The February 4 Answer confirms the limit of pre-Answer knowledge: in that Answer, AppFolio pleaded that it had disabled Beagle's access.

14

(Dkt. 57 at 21 (Eighth Affirmative Defense).) AppFolio could not have counterclaim-pled conduct it had simultaneously sworn did not exist.

But then Plaintiffs returned. They returned with methods engineered to defeat the layered detection that had stopped them. Masked accounts use customer-specific domains that no known-domain block list can catch, defeating the automated layer. (Delage Decl. ¶ 18.) Ghost accounts are deleted shortly after creation, often before AppFolio's next weekly search can identify them. (Delage Decl. ¶ 11.) Neither method had been identified as systematic Beagle conduct in the prior Delage TRO declaration. (Delage Decl. ¶ 12.) These methods are designed to evade detection. AppFolio's automated sweeps cannot catch them, and AppFolio could not surface the underlying pattern through manual review until late February 2026. Confirmation that Plaintiffs were directing the conduct came on March 18, 2026, when an AppFolio customer forwarded written instructions from Plaintiffs. (Delage Decl. ¶ 13; *see SKF*, 2010 WL 3463686, at *5.) They continue today. (Delage Decl. ¶ 17.) Different methods. Different detection requirements. Different legal claims. Different customers. Different timing. Each unauthorized access is an independent violation.

## II.    Rule 15(a) Requires That Leave Be Granted

### A.    Rule 15(a) Creates a Presumption in Favor of Amendment

Rule 15(a) directs that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit applies that standard with "extreme liberality," and creates a presumption in favor of amendment absent a strong showing by the opposing party. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). Five factors guide the inquiry: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice

15

to the opposing party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Denial without a justifying reason is an abuse of discretion. *Id*.

### B.    Plaintiffs Cannot Demonstrate Prejudice

Prejudice carries the greatest weight of the five *Foman* factors, and Plaintiffs cannot show it. *Eminence Capital*, 316 F.3d at 1052. The opposing party bears a demanding burden. Prejudice requires more than the burden of defending an additional claim. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). It requires reopening of closed discovery or alteration of the litigation on the eve of trial. *See Zivkovic*, 302 F.3d at 1087. Neither condition is present.

This case is in its earliest stages. Trial is nearly seventeen months away, discovery closes in thirteen months, and Plaintiffs' appeal of this Court's denial of their TRO application is pending before the Ninth Circuit. Neither party has taken a deposition. No pretrial conference has occurred.

Plaintiffs themselves placed the authorization question before this Court, and the evidence supporting the proposed counterclaims comes substantially from Plaintiffs' own filings and admissions. The parties are the same, the databases are the same, and the discovery categories overlap with what is already in the case. The counterclaims require no new parties, no new venue, no new factual universe. Plaintiffs have admitted that "the entire Beagle value proposition" rests on the access at issue. (Dkt. 36 at 7.) They have admitted that loss of access to AppFolio's databases would "end Beagle's business overnight." (Brown Decl. (Dkt. 4-2) ¶ 10.) A party that has claimed to have staked its entire existence on the access at issue cannot credibly cry prejudice from the assertion of counterclaims arising from that access.

The cases finding prejudice illustrate conditions absent here. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), found prejudice where the movant filed five days before the discovery cutoff with additional claims requiring new discovery that would have delayed trial. Neither condition exists here. Discovery remains open for thirteen months.

The cases granting leave track AppFolio's posture. In *DCD Programs*, 833 F.2d at 187-88, the Ninth Circuit reversed denial of leave where the case was at the discovery stage with no trial date pending. *EEOC v. Bay Club Fairbanks Ranch*, 475 F. Supp. 3d at 1103, reached the same result where the amended claims rested on the same operative facts, witnesses, and documentary evidence as the original pleading. AppFolio's record fits both: discovery is open for thirteen months, and the counterclaims rest on the operative facts, witnesses, and documents already before the Court.

### C.    AppFolio Has Not Acted in Bad Faith

Bad faith requires evidence of an improper purpose: harassment, tactical advantage, or unnecessary delay. The record forecloses any such finding. The Ninth Circuit has recognized that waiting to file until a party has "sufficient evidence of conduct upon which they could base claims of wrongful conduct" is not bad faith; it is the ordinary pre-filing inquiry. *DCD Programs*, 833 F.2d at 187. AppFolio addressed Plaintiffs' pre-Answer access through self-help. When that access escalated beyond what self-help could address, AppFolio served discovery, issued a cease-and-desist letter, and engaged with Plaintiffs at the required Rule 7-3 conference. It filed this motion only after documentary evidence confirmed the conduct on March 18, 2026, and only after Plaintiffs declined to stipulate and produced no documents.

17

AppFolio seeks to assert legal claims arising from conduct that occurred after its Answer. AppFolio gains no tactical advantage from bringing these counterclaims here rather than in a separate action, and its timing tracks Plaintiffs' silence: AppFolio filed only after Plaintiffs declined to stipulate and refused to engage on the merits. Rule 15 contemplates exactly this: amendment based on developed facts. AppFolio has done exactly that.

### D.   AppFolio Did Not Delay: It Investigated and Sought Resolution

Undue delay alone cannot justify denial of leave to amend. *DCD Programs*, 833 F.2d at 186. Even unreasonable delay coupled with improper motive is insufficient to deny leave to amend absent a showing of prejudice. *Srigley*, 748 F. Supp. 3d at 804. Plaintiffs cannot establish either element. AppFolio spent the interval between first observing the new tactics and this filing pursuing every available avenue of resolution: documenting the conduct through engineering analysis and customer communications, issuing a written demand, conferring with Plaintiffs at the required pre-filing conference, and awaiting substantive responses that did not come. That is not undue delay. It is the good-faith pre-filing inquiry this Court's rules contemplate.

### E.   AppFolio Has Not Previously Amended Its Answer

This is AppFolio's first request for leave to amend its Answer since filing it on February 4, 2026. (Dkt. 57.) The *Foman* factor of repeated failure to cure deficient pleading is therefore inapplicable. *Eminence Capital*, 316 F.3d at 1052.

### F.   The Proposed Counterclaims Are Not Futile

A proposed amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim

or defense." *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988). Each of AppFolio's three proposed counterclaims clears that bar.

### Count One: The Tortious Interference Claim Pleads Every Element

California tortious interference with contractual relations requires a valid contract with a third party, the defendant's knowledge of that contract, intentional acts designed to induce breach, actual breach or disruption, resulting harm, and causation. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). AppFolio alleges each element.

AppFolio's Terms of Service have prohibited unauthorized third-party access to its platform since 2019. (Saxena Decl. (Dkt. 33-3) ¶¶ 17, 19-21 & Ex. C.) Plaintiffs attached AppFolio's Terms of Service as an exhibit to their own TRO application, and this Court quoted Section 5.2's prohibition from Plaintiffs' own exhibit in its January 7, 2026 order denying that application. (Dkt. 4-3; Dkt. 39 at 2-3.) That order also confirmed the prohibition's duration and identified AppFolio's contractual right to disable access to enforce it. *Id*. Plaintiffs' knowledge of the contractual prohibition is therefore undisputed and part of the existing record. With that knowledge, Plaintiffs recruited AppFolio customers to create unauthorized user accounts and directed them to grant Plaintiffs database access. (Saxena Decl. (Dkt. 33-3) ¶¶ 24, 26.)

Customers did not act independently. Plaintiffs' written instructions directly caused the breaches: emails from an AppFolio customer confirm that customers followed Plaintiffs' step-by-step directions to create masked accounts on the customer's own domain and delete those accounts approximately one week later, after Plaintiffs had used the access to operate inside the database. (Delage Decl. ¶ 13 & Ex. A.) AppFolio pleads each breach with specificity. AppFolio has identified

19

more than 800 unauthorized accounts attributable to Plaintiffs in total. Approximately 180 were created after AppFolio filed its Answer on February 4, 2026, and at least 70 of those post-Answer accounts are masked accounts. Additional ghost accounts cannot be counted because they were deleted before AppFolio could detect them. (Delage Decl. ¶¶ 10-15.) Each unauthorized access under those accounts breaches Section 5.2 and accrues harm to AppFolio's enforcement capacity, customer relationships, and platform integrity. (Delage Decl. ¶¶ 18-20; Saxena Decl. ¶¶ 2-3, 5.) The claim is not only non-futile; AppFolio has factually developed it on the current record.

### Count Two: The CFAA Claim Pleads Unauthorized Access and Loss

The CFAA creates civil liability for intentional access to a protected computer without authorization, where the access causes loss aggregating at least $5,000 during any one-year period. 18 U.S.C. § 1030; *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). The central question is authorization. Under *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), once a platform operator communicates that access is not permitted, "technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability." *Power Ventures* held that even where individual users consented to a third party's access, that consent did not cure unauthorized access in the face of the platform operator's contrary communication. *Id.* at 1067-69. A single cease-and-desist communication suffices to establish liability. *Id.* at 1068.

AppFolio's Terms of Service have prohibited third-party access to its platform since 2019. (Dkt. 4-3; Saxena Decl. (Dkt. 33-3) ¶¶ 17, 19-21 & Ex. C.) AppFolio communicated the prohibition to Plaintiffs directly and reaffirmed it four successive times before Plaintiffs engaged in the conduct at issue: the December 9,

2025 email; the Santa Barbara TRO application filed that same day; the federal TRO proceedings before this Court; and the January 9, 2026 lockouts. (Dkt. 55-2; Saxena Decl. (Dkt. 55-1) ¶ 4; Dkt. 33-2; Dkt. 33 at 8; Delage Decl. (Dkt. 55-3) ¶¶ 3-4.) Each was sufficient under *Power Ventures* standing alone. AppFolio delivered four. Plaintiffs nevertheless created the masked accounts and ghost accounts that form the basis of this counterclaim and continue to direct new instances today. (Delage Decl. ¶¶ 6, 10-14.) Each new instance, occurring after four express reaffirmations of prohibition, is an independent CFAA violation.

Plaintiffs' own briefing establishes the scienter element. In their reply supporting the TRO application, Plaintiffs admitted that AppFolio "can detect those domains and will block them too" and conceded that Beagle "was justified in using new domains" despite knowing AppFolio would detect and block them. (Dkt. 36 at 8.) That is a pleaded admission of intentional circumvention. AppFolio offers authorized methods of access through Scheduled Reports and Database API, available to Plaintiffs whenever an AppFolio customer elects to use them. (Saxena Decl. ¶ 4 n.1.) Plaintiffs did not use those methods. They engineered new methods to evade detection. *Power Ventures* forecloses that choice. 844 F.3d at 1067.

The pleaded record likewise satisfies the protected-computer and information-obtained elements. Plaintiffs entered AppFolio customer databases hosted on AppFolio's cloud servers and obtained access to tenant rosters, unit identifiers, lease and billing data, and insurance compliance data. (Saxena Decl. (Dkt. 33-3) ¶ 12.) That is access to a "protected computer" and information "obtained" within the meaning of 18 U.S.C. § 1030(e)(2)(B). AppFolio's engineering costs in identifying and responding to Plaintiffs' post-Answer access

21

exceed the $5,000 loss threshold. (Delage Decl. ¶ 5.) The claim is not only non-futile; AppFolio has pleaded it to the statutory standard.

### Count Three: Plaintiffs' Conduct Violates Four § 502 Subsections

Plaintiffs' conduct independently violates four subsections of § 502: § 502(c)(2) (knowingly accessing and without permission taking or making use of data); § 502(c)(3) (knowingly and without permission using computer services); § 502(c)(4) (knowingly and without permission adding, altering, damaging, or destroying any data residing internal or external to a computer); and § 502(c)(7) (knowingly and without permission accessing or causing to be accessed any computer system). Cal. Penal Code § 502(c)(2), (3), (4), (7). The Ninth Circuit in *Power Ventures* analyzed § 502 alongside the CFAA on parallel facts, applying the same authorization analysis to both statutes where access continues after the platform operator has communicated that access is not permitted. *Power Ventures*, 844 F.3d at 1069-70.

The pleaded facts satisfy each subsection. Plaintiffs extracted and used customer data from AppFolio's servers after four express reaffirmations of prohibition, violating § 502(c)(2). (Delage Decl. ¶¶ 10-13, 20.) They used AppFolio's billing and payment systems to schedule and issue recurring resident charges supporting Plaintiffs' competing services, violating § 502(c)(3). (Saxena Decl. ¶ 4; Delage Decl. ¶ 20.) Plaintiffs altered customer databases by using AppFolio's platform and functionality to disable AppFolio's insurance offerings, replace them with Plaintiffs' own competing insurance products, and configure recurring resident charges supporting Plaintiffs' services, violating § 502(c)(4). (Saxena State Court Decl. (Dkt. 33-2) ¶¶ 23-24; Saxena Decl. ¶ 4.) And § 502(c)(7)'s "causes to be accessed" language reaches Plaintiffs' conduct directly:

Plaintiffs directed AppFolio's own customers to create user accounts, grant Plaintiffs entry into AppFolio's systems, and in the case of ghost accounts delete those accounts after Plaintiffs had completed their work. (Delage Decl. ¶ 13 & Ex. A.) Customers accessed AppFolio's systems at Plaintiffs' direction. That is the statutory "causing."

Plaintiffs' admissions establish the knowing element. They represented to this Court that more than 80% of their business depends on access to AppFolio's platform. (Brown Decl. (Dkt. 4-2) ¶¶ 2, 10.) A business of that scale built around access to a single platform necessarily entails knowledge of that platform's access terms. Plaintiffs therefore knew the access was prohibited when they created each ghost account and masked account, and they know it continues to be prohibited as they direct new accounts today. Knowledge of the prohibition pre-existed each new act.

Section 502 requires damage or loss by reason of the violation. Cal. Penal Code § 502(e)(1). AppFolio's engineering and investigation costs incurred in identifying and responding to Plaintiffs' post-Answer access satisfy that element. (Delage Decl. ¶¶ 5, 19-20.) The claim is not only non-futile; AppFolio has pleaded it to the statutory standard.

### III.   Rules 15(d) and 13(e) Independently Authorize the Proposed Pleading

Every path leads to the same result. Two other independent rules authorize this pleading. AppFolio satisfies both.

Rule 15(d) permits a supplemental pleading setting out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Rule reaches conduct that did not exist when the party filed its original pleading. *Agua Caliente Band of Cahuilla Indians*

*v. Coachella Valley Water Dist.*, No. EDCV 13-883 JGB, 2020 WL 5775174, at \*2 (C.D. Cal. July 8, 2020). That is this case. The factual basis for these counterclaims emerged in observable form only after AppFolio served its Answer on February 4, 2026. AppFolio first observed the masked-account and ghost-account patterns in late February 2026 and confirmed Plaintiffs' direction of the conduct on March 18, 2026. The conduct continues today. (Delage Decl. ¶¶ 6, 13, 17.)

The Scheduling Order sets a deadline for amending pleadings (Dkt. 67 § 3(b)) but says nothing about supplemental pleadings. (*See generally* Dkt. 67.) That silence controls. "Because the Federal Rules distinguish the two, a deadline to amend does not automatically include supplementation." *Agua Caliente*, 2020 WL 5775174, at \*4. The Scheduling Order would have to say so expressly. It does not. Rule 15(d) therefore imposes no deadline AppFolio has missed. *Id.*

Supplementation promotes judicial economy and avoids serial actions. *Id.* at \*2; *Keith v. Volpe*, 858 F.2d 467, 473-74 (9th Cir. 1988). The Rule 15(d) factors track Rule 15(a): undue delay, bad faith, repeated failure to cure, prejudice, and futility. *Agua Caliente*, 2020 WL 5775174, at \*2. Each favors AppFolio for the reasons given in Section II. The undue-delay inquiry asks "whether the moving party knew of the facts and legal bases for the amendments at the time the operative pleading was filed." *Id.* at \*5. AppFolio did not. AppFolio first observed the conduct in late February 2026 and confirmed it in March 2026.

Rule 13(e) reaches the same result. It authorizes a supplemental pleading asserting a counterclaim that "matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e). Courts apply the Rule 15(a) standard to such motions. *Kuschner*, 256 F.R.D. at 689. The counterclaims here matured after AppFolio served its Answer. AppFolio had reduced Plaintiffs' prior access to

24

isolated instances. AppFolio could not have pleaded those violations in the original Answer. The facts underlying them had not yet been observed or confirmed. And most of the unauthorized accesses had not yet occurred. *Id.* at 689-90 (granting leave to assert counterclaim that matured after the answer). Rule 13(e) exists for exactly this case.

## CONCLUSION

The Court should grant leave to file the Amended Answer, or in the alternative leave to file a Supplemental Pleading Asserting Counterclaims under Rule 15(d) or 13(e).

Dated: May 8, 2026

Respectfully Submitted,
PROCEL LEVINE LLP

By: /s/

Brian Procel
Marty Pritikin
Jeremiah Levine
*Attorneys for Defendant AppFolio, Inc.*

25