# EXHIBIT G

PROCELEVINE

401 Wilshire Boulevard
12th Floor
Santa Monica, CA 90401
(424) 788-4538

March 5, 2026

*VIA E-MAIL*

Michael Burshteyn
michael.burshteyn@gtlaw.com
Marcelo Barros
marcelo.barros@gtlaw.com

Re: Cease and desist from obtaining user access

Dear Counsel:

We write to address Beagle's ongoing and systematic interference with the contractual relationships between AppFolio, Inc. ("AppFolio") and its customer base. The elements of tortious interference with contract are:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 791 P.2d 587 (1990). Beagle's admissions in its federal court action, *Beagle Labs, Inc., et al., v. AppFolio, Inc.*, Case No. 25-cv-12248-JFW, including its admission to infiltrating and disguising itself in AppFolio databases, concede Beagle's liability for this tort.

By this letter, AppFolio demands that Beagle immediately cease and desist from this tortious conduct. Please state by close of business on March 12, 2026, whether Beagle agrees to cease obtaining user access to AppFolio databases.

**I. Existence of Valid Contracts and Beagle's Knowledge Thereof**

The first two elements of this tort require the existence of a valid contract between AppFolio and a third party, and Beagle's knowledge of that contract. Beagle has already admitted these facts because its federal action is premised on the fact that Beagle works with AppFolio customers. For example, in Beagle's motion for a temporary restraining order, Beagle said that "Property managers themselves create a separate AppFolio user account for Beagle." (Dkt. 4 at 7). And

Beagle knows of the contract between those customers and AppFolio: Beagle cited to and attached the AppFolio Terms and Conditions in Beagle's TRO application, which is a contract between AppFolio and its customers. (Dkt. 4-3.)

Moreover, Beagle's knowledge of AppFolio's contractual right to disable or delete access to enforce its Terms of Service is a matter of judicial record. In its order denying Beagle's TRO application, the court noted that AppFolio reserves the right to:

> "disable or delete access to the Services and any application programming interface for any of your authorized users to enforce these Terms of Service or to otherwise protect our interests."

(Dkt. 39 at 2.). The Court's order also acknowledged that AppFolio's terms of service state:

> "Third parties are not permitted to access or use the Services or any application programming interface we make available to you without [AppFolio's] prior consent."

(*Id.*) In short, AppFolio has contracts with its customers, Beagle knows of those contracts, and even knows of those contracts' specific provisions forbidding third party access.

**II. Intentional Acts Designed to Disrupt Contractual Relationships**

Beagle has admitted to performing intentional acts that prevent AppFolio from exercising its contractual rights. In its own briefing, Beagle describes a strategy of creating new, generic domains for the express purpose of masking its presence on AppFolio's platform (Dkt. 36 at 8). Beagle specifically admits that it is "play[ing] a game of whack-a-mole" by "using new domains" to prevent AppFolio from enforcing its Terms of Service.

In other words, Beagle admitted to affirmative, deceptive measures intended to circumvent AppFolio's security protocols and prevent AppFolio from enforcing the Terms of Service against its users. By hiding its identity to maintain unauthorized access, Beagle intentionally induces AppFolio's customers to remain in a state of continuous breach of their service agreements.

**III. Actual Disruption of the Contractual Relationship**

The disruption here is not hypothetical; it is ongoing. Beagle has characterized its conduct as a perpetual game of "whack-a-mole," admitting that it will "constantly" create new domains to bypass AppFolio's enforcement (Dkt. 36 at 8).

AppFolio's security tracking confirms this admission. We have identified numerous new user accounts using generic domain names that violate the Terms of Service—a direct result of Beagle's admitted tactics. Furthermore, Beagle has attached to its recent correspondence examples of communications AppFolio was forced to send to its customers in an effort to cure the repeated breaches Beagle has induced.

**IV. Resulting Damage**

As a direct result of Beagle's ongoing interference, AppFolio has suffered, and continues to suffer harm. AppFolio has been forced to expend considerable resources to defend its platform architecture and security protocols against Beagle's admitted game of whack-a-mole.

Beyond operational costs, Beagle's actions cause measurable disruption to AppFolio's relationship with its customers. Beagle has seen the evidence of this damage firsthand through its communications with customers, as AppFolio must continually attempt to re-enforce its terms and address the breaches Beagle facilitates.

**V. Conclusion and Demand**

The record establishes that Beagle is intentionally causing AppFolio customers to violate their contracts while deploying deceptive technical measures to prevent AppFolio from protecting its platform. AppFolio reserves all rights to seek further judicial relief and damages for this ongoing tortious conduct.

Sincerely,

Jeremiah Levine