# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/9/2025 9:04 PM
By: Narzralli Baksh , Deputy

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for AppFolio, Inc.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| APPFOLIO, INC., a California corporation | Case No. _____ 25CV07670 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **FALSE ADVERTISING** |
| BEAGLE, INC., a Delaware corporation, and DOES 1-20; | 2. **INDUCING BREACH OF CONTRACT** |
| Defendants. | 3. **INTERFERENCE WITH CONTRACT** |
| | 4. **UNFAIR COMPETITION** |
| | 5. **INJUNCTIVE RELIEF** |
| | **JURY DEMAND** |

1

Plaintiff AppFolio, Inc. ("AppFolio"), by and through its undersigned counsel, hereby alleges as follows:

## INTRODUCTION

1.      Defendant Beagle, Inc. ("Beagle") is named for a pet, but runs its business like a parasite.

2.      In an effort to win business from AppFolio's customers, Beagle has launched a systematic campaign to deceive them by falsely claiming association with AppFolio; even going so far as to falsely claim that AppFolio failed a compliance audit and *asked* Beagle to take over part of its business.

3.      Beagle's lies trick AppFolio's customers into giving Beagle access to their AppFolio accounts, which is a violation of AppFolio's terms of service. Once in the customer's AppFolio account, Beagle turns off the customer's AppFolio insurance program and replaces it with Beagle's own insurance product.

4.      Like a parasite, Beagle gains entry into the host and turns the host against itself.

5.      In just two months, Beagle's deception has misled more than 100 AppFolio customers into breaching AppFolio's terms of service and switching their insurance coverage to Beagle. That deceptive practice has cost AppFolio past and future revenue of at least $7,000,000.

6.      Beagle's false association with AppFolio has also harmed AppFolio's relationship with its remaining customers. These customers have admonished AppFolio for partnering with Beagle. As one AppFolio customer put it, AppFolio "should not be promoting this company . . . Beagle is a 'nightmare.'"

7.      Through this action, AppFolio seeks to protect its customers and its business from Beagle's deception.

2

## PARTIES

8.  AppFolio is a company incorporated in California and headquartered in Goleta, California.

9.  Beagle is a company incorporated in Delaware that is headquartered in San Francisco, California.

## JURISDICTION AND VENUE

10. A substantial part of the events giving rise to this claim occurred here.

11. At all times relevant to this complaint, AppFolio was headquartered in Goleta, California.

## FACTS

**AppFolio is an Industry-Leading Platform for Property Managers**

12. For nearly 20 years, AppFolio has been an industry leader in software and business services for property managers. It provides a property management software platform, on which property managers can run nearly all aspects of their business — including leasing, maintenance, and payments. The platform serves as the system of record for all aspects of the property manager's business. AppFolio provides services to more than 20,000 property managers, who in turn have more than eight million units.

13. One of AppFolio's most important services is called Smart Ensure. When a property manager uses Smart Ensure, they place a requirement in their leases that renters must carry liability insurance on their unit. The renter then has a choice of purchasing renters insurance (either through AppFolio or another provider) or of the property manager enrolling the renter's unit in the property manager's Liability to Landlord Insurance policy ("LLI policy"). Smart Ensure manages this process, tracking whether the renter has renters insurance and, where they

3

do not, automatically adding the unit to the property manager's LLI policy. Smart Ensure generates revenue for AppFolio.

14. In addition to offering its own services, AppFolio offers its customers the ability to work with "point solutions." Point solutions are companies that offer a particular service to the property manager. These services include vacancy listings, inspection services, and debt collection. While these services sometimes compete with AppFolio's own, AppFolio values its customer's ability to choose.

15. AppFolio works with point solutions in different ways. One way is by partnering with a point solution so that the point solution is seamlessly integrated into the customer's experience of AppFolio. It is very valuable for a point solution to be partnered with AppFolio because AppFolio is widely used by property managers, and because partnership makes it easy for AppFolio's customers to use the point solution. Beagle claims to be a partner. It is not.

**Beagle Uses False Advertising to Promote its Insurance Program**

16. Beagle offers an insurance service that competes with AppFolio's offering.

17. Beagle has launched a campaign to deceive AppFolio's customers into adopting Beagle's competing service.

18. AppFolio became aware of Beagle's lies when it began receiving a stream of customer questions and complaints regarding Beagle's advertising and services. As examples, between September 24, 2025 and November 24, 2025 alone (the "Time Period"), AppFolio received the following customer complaints:

19. On or about October 8, 2025, AppFolio customer MH reported that Beagle made a sales call to her, during which Beagle claimed that AppFolio had failed audits and, as a result, asked Beagle to work with its customers to bring it back into compliance. None of that is true.

4

While Beagle assured MF that it was affiliated with AppFolio, no such affiliation has ever or will ever exist. Beagle lied to MF.

20. On or about September 24, 2025, AppFolio Customer SP reported that Beagle made a sales call to her and claimed to be partnered with AppFolio. Beagle lied.

21. On or about October 16, 2025, AppFolio Customer LS reported that Beagle made a sales call to her and claimed that Beagle had already spoken with specialists at AppFolio who were ready to help her get set up using Beagle. Needless to say, that too was a lie.

22. Beagle's deception is not limited to phone calls; it occurs in person as well. On or about November 24, 2025, AppFolio customer WC reported that Beagle made a sales pitch to him at a conference, where it claimed that it partnered with AppFolio. That is a lie.

23. When client WC found out that Beagle lied to him, he was upset. Working with AppFolio, he called Beagle's sales team to get a sales pitch. And Beagle's sales team repeated its false association with AppFolio. This time, the false association claim included that Beagle can integrate with AppFolio like another product that actually is integrated. Integration is a term of art that suggests consensual, seamless interaction between software systems. Integration is very important to customers because it means that a customer can use Beagle's product *within* AppFolio, without having to interact with different software. But Beagle does not and will not integrate with AppFolio—not now, and not ever.

24. Beagle even claimed to WC that it was part of AppFolio's Stack Marketplace. The Stack Marketplace is limited to AppFolio-vetted applications. Beagle is not one.

25. Beagle uses the same false advertising over and over: Beagle is partnered with AppFolio to offer insurance; it is affiliated with AppFolio; and it is integrated with AppFolio. On information and belief, these lies are part of Beagle's strategy and sales script.

5

26. Given that AppFolio has received so many contacts from customers reporting AppFolio's false advertising, AppFolio asserts on information and belief that Beagle has delivered false advertising to thousands of AppFolio customers.

**Beagle's False Advertising Causes Customer Confusion**

27. During the Time Period, AppFolio received additional inquiries from customers confused about AppFolio's non-existent partnership with Beagle. This confusion is the direct result of Beagle's false advertising.

28. For example, Customer DV contacted AppFolio to inquire about its partnership with Beagle. And customer MV contacted AppFolio asking for a list of authorized partners in order to learn more about Beagle.

**Beagle's False Advertising Induces Customers to Switch Under False Pretenses**

29. Beagle's false advertising works.

30. During the Time Period, customer LC switched to Beagle, apparently under the mistaken belief that Beagle was a vendor offered through AppFolio.

31. During the Time Period, customer SI switched to Beagle, apparently under the mistaken belief that Beagle was soon to be offered through AppFolio.

32. And during the Time Period, customer JR switched to Beagle, valuing its offering because it—he was falsely led to believe—integrated with AppFolio. JR stated he would only use a system that was directly integrated with AppFolio.

33. Since the first false advertising that AppFolio learned of, on or about September 24, 2025, Beagle has signed up at least 172 AppFolio customers. Each of those customers is a property manager operating numerous residential units. Altogether, the 172 customers that Beagle signed up represent approximately 70,000 units.

**Beagle's False Advertising Harms AppFolio's Relationship with its Customers**

34. Separate from its lying, Beagle's aggressive sales tactics make customers angry. Since Beagle pretends to be affiliated with AppFolio, Beagle's bad conduct reflects on AppFolio.

35. For example, Customer ML said that Beagle called multiple people in her company, and described the calls as "ruthless" and "aggressive."

36. Beagle's product also reflects badly on AppFolio. Customer RG reported to AppFolio that Beagle is "not very organized" and left him "unsure if anything was done [by Beagle] other than create[] the monthly charges" [sic]. Customer LS similarly reported to AppFolio, after switching to Beagle, that Beagle had been a "nightmare" and "ridiculous," and that Beagle had done "nothing but waste my time and cause me issues with my tenants." Still confused by Beagle's false association with AppFolio, LM admonished AppFolio stating "you should not be promoting this company."

37. Beagle has also made AppFolio's performance of its agreements with customers more costly and difficult. Beagle's recent efforts to sign up AppFolio's customers through a series of lies has resulted in a surge of customers contacting AppFolio's customer service department to air complaints or raise questions based on the confusion Beagle has intentionally sowed. This has taxed AppFolio's customer service function.

**What Beagle Does to AppFolio Customers' Accounts**

38. When Beagle convinces an AppFolio customer to switch, Beagle logs in to the customer's AppFolio account. That is, Beagle persuades the customer to give Beagle log-in credentials to the customer's account (in violation of the Terms of Service). This gives Beagle the ability to change the customer's system settings. And with that power, Beagle turns off Smart Ensure and replaces it with their own offering.

7

39. In summary, Beagle lies to AppFolio's customers, pretends to be AppFolio's partner to gain access to the customer's AppFolio account, and then uses AppFolio's own platform to turn off AppFolio's service and run its own competing business.

**Beagle's False Advertising Tricks Customers Into Violating the Terms of Service**

40. Beagle's subterfuge tricks the customers into violating AppFolio's terms of service (the "Terms of Service"), to which all customers have agreed.

41. AppFolio's Terms of Service state: "Third parties are not permitted to access or use the Services or any application programming interface we may make available to you without our prior consent." The "Services" refers to AppFolio's platform and all services offered therein.

42. AppFolio's terms of service also address direct competitors, stating: "You may not . . . make available or otherwise provide all or any portion of the Services . . . or any application programming interface . . . to any of our direct or indirect competitors."

43. By deceiving customers into believing they are an AppFolio partner, Beagle falsely leads customers to believe that the customers have AppFolio's permission to provide Beagle access to the platform and that Beagle is not a direct competitor.

44. Beagle knows it is not allowed to access AppFolio's platform and that it is deceiving customers into violating the terms of service.

45. Beagle knows this because it is standard practice for companies that provide software as a service ("SaaS") to forbid, in their terms of service, third-party access without permission, particularly by direct competitors. These prohibitions are necessary to prevent third parties (and competitors) from using the service for free, copying the service, or misusing the service (as is happening here). As a SaaS company, Beagle knows AppFolio's terms of service forbid third party access.

8

46. Moreover, Beagle's own terms of service state that its customers are "responsible for keeping any login credentials (e.g., username, password) private and for restricting access to your computer or device."

47. Also, AppFolio's Terms of Service are publicly accessible on its website. And Beagle has visited that website to steal AppFolio's trademarked logo and place it on Beagle's website to create the false impression of partnership. On information and belief, Beagle has also used AppFolio's website to try to purchase an AppFolio database, also in furtherance of its deception.

**Beagle Deception Extends Beyond False Advertising**

48. Recently, an individual named Vincenzo Passariello contacted AppFolio's sales team. Passariello said that he worked for a property management company called Akita, and that he wanted a demonstration of AppFolio's platform.

49. On information and belief, Passariello was lying. Akita appears to be a made-up company. This is clear because Passariello provided inconsistent information about the purported business and was unable to answer basic questions about it. In addition, Akita's online presence appears to be fictional, created by artificial intelligence. And Akita is a dog breed, just like Beagle and Beagle's parent company, Corgi.

50. Nonetheless, Passariello got the demonstration—and with him on the video call was a representative of Beagle's parent company, Corgi.

51. On information and belief, Passariello was attempting to purchase an AppFolio database to covertly provide Beagle with its own AppFolio account, which Beagle could in turn use to provide fake demonstrations of its non-existent integration.

52. Beagle's aggressive and deceptive tactics are embedded in its culture and integral to its strategy. Beagle seeks out college students who do not even permanently work for the

9

company to act as sales representatives. For example, at the University of Utah, Beagle recently advertised a "sales hiring blitz" with the slogan "one day, one shot, land the job." The participating students would sell Beagle's lies for one day, competing for a chance to win $10,000 in performance bonuses. On information and belief, Beagle provides its salespeople sales scripts falsely claiming partnership with AppFolio, does not require its sales representatives to be truthful, and fosters a culture in which false advertising is accepted and encouraged to close a deal.

53. Moreover, the homepage of Beagle's website bears the AppFolio logo—even though AppFolio has never given permission for such use, and even though there is no association between the companies.

## **FIRST CAUSE OF ACTION**

### **(For False Advertising)**

54. AppFolio incorporates paragraphs 1 through 53 by reference as if fully set forth herein.

55. Beginning on a date unknown but no later than September 24, 2025, Beagle's sales team began calling and otherwise making sales pitches to AppFolio clients.

56. The sales pitches contained numerous false statements that advertise Beagle's products.

57. Beagle's lies include that Beagle is partnered with AppFolio to offer insurance; that Beagle is affiliated with AppFolio; and that Beagle is integrated with AppFolio.

58. Beagle has even claimed that AppFolio failed an audit, which is false, and that Beagle is associated with AppFolio to offer insurance products while AppFolio becomes compliant, which is false.

10

59. All of these lies are material. AppFolio customers trust AppFolio. Moreover, AppFolio is a property management platform that *does* offer integration with a few, highly vetted services from outside companies.

60. Because of all this—the trust its customers place in AppFolio, and its vetting process—AppFolio's customers know that they can trust companies that actually are associated with AppFolio.

61. Beagle's lies were intended to induce reliance, and AppFolio customers reasonably relied on them when switching to Beagle's product. For example, one customer who switched to Beagle for insurance said that he would only use products that were integrated with AppFolio. And AppFolio's customers rely on representations about integration because those things, if they were real, would mean a safe and seamless user experience.

62. Beagle amplifies these lies by incorporating AppFolio's name and logo on its own website, falsely implying an affiliation or endorsement that does not in fact exist.

63. AppFolio has been harmed by Beagle's false advertising. Numerous customers have deactivated AppFolio's Smart Ensure in favor of Beagle's insurance based on Beagle's misrepresentations.

64. Beagle's lies were a substantial factor and proximate cause of harm to AppFolio.

65. Since the false advertising that AppFolio learned of on or about September 24, 2025, until November 24, 2025 Beagle has signed up at least 172 AppFolio customers representing approximately residential 70,000 units.

66. The absence of these customers has *already* cost AppFolio approximately $125,000 in just two months. Over the course of the customer lifecycle, Beagle's lies will cost AppFolio in excess of $7,000,000, based just on the customers that have already been lost. AppFolio will lose millions more if Beagle's predatory behavior is allowed to continue.

11

67. AppFolio seeks compensatory and consequential damages against Beagle in an amount to be proven at trial; and an injunction to prevent further wrongful conduct.

## SECOND CAUSE OF ACTION

### (For Inducing Breach of Contract)

68. AppFolio incorporates paragraphs 1 through 67 by reference as if fully set forth herein.

69. AppFolio and its customers are bound by the Terms of Service. The Terms of Service include the following provision: "Third parties are not permitted to access or use the Services or any application programming interface we may make available to you without our prior consent." The "Services" refers to AppFolio's platform and all services offered therein.

70. The Terms of Service also state: You may not . . . make available or otherwise provide all or any portion of the Services . . . or any application programming interface . . . to any of our direct or indirect competitors."

71. Beagle knows this. All companies that sell software as a service have terms of service that forbid third party access. And Beagle has its own terms of service that also forbid thirty party access.

72. Moreover, AppFolio's Terms of Service are publicly accessible on its website, which Beagle has visited to steal AppFolio's logo for misappropriation on its own website, and when it signed up for a sales demo to covertly get access to AppFolio's platform.

73. Beagle intentionally caused AppFolio's customers to breach the Terms of Service. Beagle asked AppFolio's customers to create login credentials for Beagle. When the customers did so, Beagle used the credentials to log in to the customers' AppFolio platform and change the customers' insurance settings. That breached the Terms of Service' prohibition on

12

third party access because Beagle is a third party and direct competitor. That harmed AppFolio because through this process, Beagle signed up AppFolio's customers.

74. Beagle's false advertising also harmed AppFolio by tarnishing its reputation with its customers and in the marketplace. Beagle offers inferior products and customer service, and when customers or prospective customers who are frustrated with Beagle mistakenly believe that Beagle is affiliated with or endorsed by AppFolio, they hold it against AppFolio.

75. AppFolio seeks compensatory and consequential damages against Beagle in an amount to be proven at trial; and an injunction to prevent further wrongful conduct.

76. Moreover, because Beagle's willful tortious conduct is characterized by fraud, malice and/or oppression, AppFolio seeks punitive damages against Beagle as well.

## THIRD CAUSE OF ACTION

### (For Interference with Contract)

77. AppFolio incorporates paragraphs 1 through 76 by reference as if fully set forth herein.

78. AppFolio and its customers are bound by the Terms of Service. The Terms of Service require AppFolio to "offer a hosted suite of property management software services, which include our property management software solution, AppFolio Property Manager Core, and Add-On services."

79. Beagle knows of the Terms of Service, and knows that they require AppFolio to offer services. This is standard in the SaaS industry, and the Terms of Service are publicly posted on AppFolio's website, which Beagle has visited repeatedly.

80. Beagle's conduct has made it more difficult and expensive for AppFolio to offer the services that AppFolio is bound to offer by the Terms of Service. Beagle lies to AppFolio customers, pretending to be affiliated with AppFolio. This causes customers to contact AppFolio

13

to address their confusion about whether Beagle and AppFolio are associated. This use of customer service resources is expensive.

81. Beagle intended to make it more difficult and expensive for AppFolio to fulfill the Terms of Service. Beagle intentionally lied to AppFolio's customers in pretending to be affiliated with AppFolio, knowing that such lies would cause numerous customer service inquiries.

82. AppFolio has been harmed by diverting expensive customer service resources to respond to inquiries based solely on Beagle's lies.

83. AppFolio seeks compensatory and consequential damages against Beagle in an amount to be proven at trial; and an injunction to prevent further wrongful conduct.

84. Moreover, because Beagle's willful tortious conduct is characterized by fraud, malice and/or oppression, AppFolio seeks punitive damages against Beagle as well.

## FOURTH CAUSE OF ACTION

### (For Violations of the Unfair Competition Law Cal. Bus.

### & Prof. Code § 17200 *et. seq.*) (the "UCL")

85. AppFolio incorporates paragraphs 1 through 84 by reference as if fully set forth herein.

86. The UCL forbids any unlawful, unfair, or fraudulent business act or practice.

87. Beagle's conduct was unlawful, unfair, and fraudulent because it constituted false advertising, inducing breach of contract, and interference with contract.

88. As described above, Beagle engaged in unfair, unlawful, and fraudulent conduct in numerous ways, including:

    a.   Lying to AppFolio's customers that AppFolio had failed an audit;

14

b.  Lying to AppFolio's customers that Beagle was now available to handle AppFolio's customers' insurance while AppFolio regained compliance;

c.  Lying to AppFolio's customers that Beagle was partnered with AppFolio for insurance purposes;

d.  Lying to AppFolio's customers that Beagle was or would be integrated with AppFolio;

e.  Lying to AppFolio's customers that Beagle had spoken with specialists at AppFolio to get the customer set up using Beagle;

f.  Using the foregoing lies to harm AppFolio by signing up its customers;

g.  Inducing AppFolio's customers to breach the Terms of Service by allowing third party access to AppFolio;

h.  Making it more difficult and expensive for AppFolio to fulfill the Terms of Service by lying to AppFolio's customers in a way that caused numerous customer service inquiries to AppFolio.

89. In committing these wrongful acts, Beagle violated, among things, California Business and Professional Code § 17200.

90. The harm from Beagle's conduct was not reasonably avoidable by AppFolio.

91. AppFolio has standing to bring this claim, as it suffered injury in fact, and lost money or property, as a direct and proximate result of Beagle's unlawful, unfair, and fraudulent conduct.

92. AppFolio accordingly seeks injunctive relief as provided for under Cal. Bus. & Prof. Code § 17203, in addition to reasonable attorneys' fees and costs.

15

## FIFTH CAUSE OF ACTION

### (For Injunctive Relief)

93. AppFolio incorporates paragraphs 1 through 92 by reference as if fully set forth herein.

94. Beagle has undertaken misconduct against AppFolio including:

False advertising to mislead and sign up AppFolio's clients;

Inducing AppFolio's clients to breach the Terms of Service;

Frustrating AppFolio's ability to fulfill the Terms of Service;

Use of the foregoing techniques to affect unfair competition against AppFolio.

95. AppFolio has suffered, and will continue to suffer, irreparable harm if Defendants' conduct is not restrained. This includes AppFolio losing customers and devoting customer services resources to responding to Beagle's lies. It also involves harm to AppFolio's reputation with its customers and in the marketplace as a result of confusion about Beagle's affiliation with or endorsement by AppFolio.

96. Monetary damages alone are inadequate to compensate Plaintiff because the injury is continuous and cannot be readily quantified. Namely, it is difficult to quantify the future value to AppFolio of the customers that Beagle has signed up; it is difficult to quantify the expense of responding to customer inquiries caused by Beagle's lies; and it is difficult to quantify the harm to AppFolio's reputation, which will only increase with time.

97. AppFolio is likely to prevail on the merits of the underlying claims. The evidence—even before discovery is taken—includes numerous AppFolio customers' testimony that Beagle told them the same lies. It includes more than 170 customers switching from AppFolio to Beagle during the time in which Beagle was advertising its lies. On information and belief, discovery will reveal recordings and sales scripts that include Beagle's lies.

16

98. The balance of hardships favors AppFolio, because the injunction merely requires Beagle to cease unlawful conduct, whereas AppFolio will suffer ongoing irreparable harm without injunctive relief.

99. The public interest will not be harmed by the issuance of an injunction and may be served by preventing continuing unlawful conduct.

100.    Accordingly, AppFolio seeks both a preliminary and permanent injunction enjoining Beagle from:

- Falsely misrepresenting to AppFolio's actual or potential customers or clients, or to any other third party, that Beagle or its products or services are, or soon will be, affiliated with, partnered with, endorsed by, approved by, or otherwise associated with AppFolio or any of AppFolio's products or services;

- Falsely misrepresenting to AppFolio's actual or potential customers or clients, or to any other third party, that AppFolio, or any of its products or services, has failed any audits or has been deemed to be out of compliance with any applicable laws, statutes, ordinances, rules, or regulations;

- Falsely misrepresenting to AppFolio's actual or potential customers or clients, or to any other third party, that AppFolio is no longer offering or is no longer permitted by law to offer any of its existing products or services;

- Falsely misrepresenting to AppFolio's actual or potential customers or clients, or to any other third party, that AppFolio's customers or clients are, or are at risk for, being out of compliance with or violating any applicable laws, statutes, ordinances, rules or regulations by utilizing or continuing to utilize AppFolio or any of its products or services;

- Falsely misrepresenting to, suggesting to, encouraging, or advising AppFolio's customers or clients that they need to or should utilize Beagle or its products or services as a result of AppFolio's supposed compliance violations or supposed discontinuation of any of its products or services;

- Falsely misrepresenting to AppFolio's actual or potential customers or clients that Beagle or its agents or representatives have already been in contact with AppFolio or its agents or representatives and obtained consent from AppFolio to contact them;

- Inducing AppFolio customers or clients to give Beagle or Beagle's representatives or agents access to their log-in credentials to their AppFolio

17

customer account, or inducing them to otherwise violate their AppFolio terms of service;

- Training, encouraging, or incentivizing current or prospective sales representatives or other agents to make false or misleading representations about AppFolio or its products or services, or about any current or expected affiliation between AppFolio or its products or services and Beagle or its products or services;

- Making any other false misleading claims about AppFolio or its products and services, or about Beagle or its products or services, during any communications with actual or potential AppFolio customers or clients;

- Contacting AppFolio customers or clients for the purposes of making false or misleading statements about AppFolio or its products and services, or about Beagle or its products or services, or about any current or expected affiliation between AppFolio or its products or services and Beagle or its products or services;

- Making any other false or misleading statements about AppFolio or its products or services, or about any affiliation between AppFolio or its products or services and Beagle or its products or services, in Beagle's marketing, advertising, social media, or any other communications, including but not limited to utilizing AppFolio's name or logo on Beagle's website or any other promotional materials;

- Taking any other steps to intentionally create confusion or uncertainty in the marketplace about any current or expected affiliation between AppFolio or its products or services and Beagle or its products or services.

## **PRAYER FOR RELIEF**

**WHEREFORE**, AppFolio prays for a judgment against Beagle and for relief as follows:

18

(1)    For compensatory damages in a sum of no less $7,000,000, according to proof;

(2)    For punitive and exemplary damages in an amount sufficient to punish Beagle and to deter such conduct;

(3)    For attorneys' fees and costs;

(4)    For pre-judgment and post-judgment interest;

(5)    For an injunction prohibiting Beagle from intentionally targeting AppFolio's customers, from making false misrepresentations about AppFolio's regulatory compliance or its services or products, from making false or misleading statements or suggestions that Beagle is associated with or endorsed by AppFolio in any way, from falsely stating or implying that Beagle is or soon will be integrated with AppFolio, from accessing AppFolio's customer-facing software system, or from inducing AppFolio's clients to share their log-in information or to otherwise violate their terms of service; and

(6)    Such other and further relief as the court deems just or proper.

///

19

**<u>DEMAND FOR JURY TRIAL</u>**

AppFolio further hereby requests a jury trial for all claims and issues triable by jury.


DATED this 9th day of December, 2025.


/s/ *Jeremiah Levine*
Brian Procel
Marty Pritikin
Jeremiah Levine
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Plaintiff
AppFolio, Inc.

20