# EXHIBIT H

**GREENBERG TRAURIG, LLP**
David S. Bloch (SBN 184530)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Blochd@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jake.Evans@gtlaw.com
Jordana R. Sternberg (*pro hac vice*)
Jordana.Sternberg@gtlaw.com
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC. a California corporation,<br><br>Defendant. | CASE NO. 2:25-cv-12248-JFW-SSC<br><br>**PLAINTIFF BLI'S AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. John F. Walter |

PROPOUNDING PARTY: DEFENDANT APPFOLIO, INC.

RESPONDING PARTY: PLAINTIFF BEAGLE LABS, INC. ("BLI")

SET NO.: ONE

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Beagle Labs, Inc. ("BLI") hereby provides these amended responses and objections to Defendant AppFolio, Inc.'s ("AppFolio" or "Defendant") First Set of Interrogatories.

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

1) The responses set forth below represent BLI's present knowledge based upon discovery, investigation, and trial preparation to date. To the extent BLI responds to any Interrogatory, it does so without conceding the materiality, admissibility or relevance of any such responses or documents. BLI reserves all objections to the use of the responses. All such objections may be interposed by BLI at the time of trial or as otherwise required by the rules of the Court.

2) BLI's investigation into this matter is ongoing. BLI may ascertain additional responsive documents and information at a later date. BLI therefore reserves the right to amend, supplement or withdraw its responses and objections to these Interrogatories, and to supplement its production of documents in response to these Interrogatories.

3) BLI's responses are made without waiver of the following rights, but, on the contrary, are intended to preserve and do preserve the following:

(i) The right to raise all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the information identified in response to the Interrogatories which may arise in any subsequent proceedings in, or trial of, this or any other action;

(ii) The right to object on any ground to the use of said information identified in response to the Interrogatories in any subsequent proceeding in, or trial of, this or any other action;

(iii) The right to object on any ground to the introduction into evidence of said information identified in response to the Interrogatories;

(iv) The right to object on any ground at any time to other discovery involving said information;

(v) The right to amend or supplement this response in the event that any information is unintentionally omitted. Inadvertent identification or production of privileged documents or information by BLI is not a waiver of any applicable privilege; and

(vi) Its right to the return of inadvertently produced documents to which any privilege, protection, or immunity applies, or which are not responsive.

4) BLI objects generally to the extent any of the Interrogatories seek information protected by the attorney-client privilege and/or attorney work product privilege, and objects specifically to the extent the definition of "You" to include "attorneys" seeks privileged and/or work product information. Any inadvertent disclosure thereof shall not be a waiver of any privilege. BLI also objects generally to Defendant's prefatory definitions to the extent they seek information or documents protected by privilege.

5) BLI objects to the Definitions, Instructions, and specific Interrogatories to the extent they purport to impose burdens or duties on BLI that exceed the scope of reasonable and permissible discovery or that exceed the requirements of the Federal Rules of Civil Procedure or any other applicable law.

6) BLI objects to the Interrogatories to the extent they seek the disclosure of confidential or sensitive communications, documents or information without the entry of an appropriate protective order.

7) BLI objects to the definition of the term "You" as including "all of that entity's parents, subsidiaries, affiliates, agents, representatives" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served. Expanding the definition of "You" in this manner improperly circumvents the numerical limits on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1).

8) BLI objects to the defined term "Account Closure" to the extent it

characterizes Defendant AppFolio, Inc.'s unilateral deactivation of authorized user accounts as a neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues at the center of this litigation, including whether AppFolio's deactivation of Plaintiffs' authorized user accounts was lawful.

9) BLI objects to the defined term "Covered Domains" to the extent the catchall phrase "any other domain registered by or on behalf of You after December 1, 2025" is overbroad, vague, and not limited to the domains Defendant has specifically placed at issue in this litigation. The catchall also calls for a legal conclusion regarding the scope of domains "registered by or on behalf of" Plaintiff.

10) BLI objects to the defined term "Customer Domain Accounts" to the extent it presupposes that email accounts using an AppFolio customer's domain were used for any unauthorized or improper purpose, which is a disputed legal question in this litigation.

11) BLI objects to the term "access" to the extent it is intended to incorporate or imply any legal conclusion under the Computer Fraud and Abuse Act or otherwise, including that any interaction with a customer account was unauthorized, exceeded authorization, or was unlawful. BLI's use of any form of the word "access" in these responses is intended only in its ordinary, non-legal sense to describe customer-authorized use of customer-provisioned accounts, and does not concede any element of AppFolio's CFAA claim or waive any defenses or objections thereof.

Each of the objections set forth above (the "General Objections") are hereby incorporated into each of the specific responses set forth below.

## RESPONSES TO INTERROGATORIES[1]

Subject to and without waiving the foregoing General Objections, which are incorporated into each response by reference, BLI responds to each Interrogatory as follows:

[1] **NOTE REGARDING OMITTED INTERROGATORY NUMBERS**: Defendant's First Set of Interrogatories as served on Beagle Labs, Inc. omits Interrogatory Nos. 3, 4, 6, 7, 8, and 11. The requests as propounded proceed from No. 2 directly to No. 5, and from No. 10 directly to No. 12. Plaintiff responds using the numbering set forth in the Interrogatories as served.

**INTERROGATORY NO. 1:**

Identify all internet domains registered, purchased, leased, or otherwise acquired by You since December 1, 2025.

**RESPONSE TO INTERROGATORY NO. 1:**

BLI objects to the phrase "or otherwise acquired" as vague and ambiguous insofar as it fails to specify what methods of domain acquisition or the meaning of "acquired" this phrase is intended to capture, and will construe the phrase to mean domains registered, purchased, or leased by or on behalf of BLI. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, BLI responds as follows: Subject to designation under the entered Stipulated Protective Order (Dkt. 93) and pursuant to Federal Rule of Civil Procedure 33(d), BLI will produce documents from which the answer to this Interrogatory may be derived or ascertained. BLI's investigation is ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 2:**

For each of the Covered Domains, identify all email addresses created using that domain, and for each such address state: (a) which AppFolio customers' databases were accessed using that email address; and (b) the actions You took using that email address in each AppFolio customer database.

**RESPONSE TO INTERROGATORY NO. 2:**

BLI objects to this Interrogatory as compound insofar as it contains multiple discrete subparts.

BLI further objects to subpart (b) as overbroad and unduly burdensome to the extent it requires BLI to catalog every individual action taken in every customer database. BLI further objects that, with respect to subparts (a) and (b), Defendant AppFolio is in equal or superior possession of its own platform access logs and is therefore equally or better able to determine which customer databases were accessed and what actions were taken,

especially when provided with the domain names.

BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections. BLI also objects to the term "AppFolio customer database" to the extent that term is prejudicial and inaccurate given that the referenced databases contain data owned by BLI's customers, as AppFolio itself acknowledges in Section 1.4 of its Terms of Service, and were serviced through accounts provisioned by BLI's customers. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

BLI further objects to the extent this Interrogatory seeks identification of AppFolio customers by name, the disclosure of which implicates the privacy and confidentiality interests of those third parties and the competitive interests of BLI.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, BLI responds as follows:

(a) Subject to designation under the entered Stipulated Protective Order (Dkt. 93), and pursuant to Federal Rule of Civil Procedure 33(d), BLI will produce documents from which the answer to this Interrogatory may be derived or ascertained.

(b) The categories of actions BLI took using those email addresses were limited to the insurance-compliance and resident-services functions that BLI's customers contracted for BLI to perform, including reviewing tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status; verifying insurance coverage; administering tenant liability waiver programs; and facilitating resident services. BLI did not issue payments through the AppFolio payments platform, did not use any automated script, bot, or scraper, and did not work with any data beyond providing services its customers authorized it to perform.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 5:**

Describe in detail the circumstances under which You decided to begin accessing AppFolio databases through user accounts that have an email address associated with the Covered Domains or an AppFolio customers' email domain, including: (a) the person(s) who made or participated in the decision; (b) all reasons for the change; and (c) how avoiding detection by AppFolio factored into the decision.

**RESPONSE TO INTERROGATORY NO. 5:**

BLI objects to this Interrogatory as argumentative and to the extent it assumes disputed facts concerning BLI's decisions and actions and assumes without basis that BLI made decisions that were motivated by a desire to "avoid detection." The framing of subpart (c) attempts to characterize BLI's intent in a manner that BLI disputes. BLI further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. BLI further objects to the extent this Interrogatory seeks confidential business strategy information.

BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, BLI responds as follows: BLI's customers, each of which retains all rights, title, and interest in and to the data in its AppFolio database and is responsible for administering its own authorized users, provisioned user accounts for BLI personnel using the domains identified in response to Interrogatory No. 1. BLI's management determined, in consultation with counsel, that BLI would continue servicing its customers' accounts at those customers' direction and with their express authorization. BLI does not waive privilege as to any attorney-client communications concerning that determination.

BLI used those accounts to enable BLI to continue performing the insurance-

compliance and resident-services functions for which its customers had contracted. BLI's customers authorized BLI to service their AppFolio accounts and consented to the use of those domains to provide those services, as further described in the Declaration of Anthony D'Angelo (Dkt. 36-2, ¶ 6).

Contrary to the premise of subpart (c), BLI operated openly and at all times at the direction of its customers, who authorized BLI's work in their own databases. The domains were an incident of preserving continuity of contracted services after AppFolio cut off Beagle's ability to service its customers, not an effort at concealment.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 9:**

Describe all processes by which You obtained access to AppFolio customer databases after the Account Closure, including the technical method(s) used.

**RESPONSE TO INTERROGATORY NO. 9:**

BLI objects to this Interrogatory to the extent the phrase "obtained access" assumes that BLI's access to AppFolio customer databases following the deactivation was not lawful. BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections. Further, BLI objects to the defined term "Account Closure" to the extent it characterizes Defendant AppFolio, Inc.'s unilateral deactivation of BLI's ability to service authorized user accounts as a neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "AppFolio customer databases" to the extent that term is prejudicial and inaccurate given that the referenced databases contain data owned by BLI's customers, as AppFolio itself acknowledges in Section 1.4 of its Terms of Service and were serviced through accounts provisioned by BLI's customers. BLI further objects to this Interrogatory as compound insofar as it seeks a description of "all processes" and "technical method(s)," which are distinct inquiries. Additionally, BLI objects to the extent this Interrogatory seeks detailed technical information that constitutes confidential and proprietary business

information. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, and subject to designation under the entered Stipulated Protective Order (Dkt. 93), BLI responds as follows: Following AppFolio's unilateral deactivation of BLI's customer-authorized user accounts, BLI continued to service certain of its customers pursuant to those customers' express authorization and direction. In each instance, the customer, acting as the owner of its data and the administrator of its own AppFolio subscription, used AppFolio's built-in user-management features to create a designated user account for BLI within the customer's AppFolio account, using an email address associated with a domain identified in response to Interrogatory No. 1 or the customer's own email domain. BLI then logged in to the customer's account, as authorized by the customer, using the credentials associated with that customer-provisioned user account, in the same manner as other third-party vendors that service AppFolio customers, including Second Nature. BLI did not use any automated script, bot, scraper, or other means of automated access; did not use any credentials that had not been provided to it by the customer; and did not circumvent any technical measure or authentication requirement. BLI's work and operation in each instance was authorized by the customer that owns the data at issue.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 10:**

Identify by Bates number all Documents reflecting Communications between You and any AppFolio Customer that discuss, relate to, or reference creation of new AppFolio user accounts after the Account Closure.

**RESPONSE TO INTERROGATORY NO. 10:**

BLI objects to the defined term "Account Closure" to the extent it characterizes

Defendant AppFolio, Inc.'s unilateral deactivation of BLI's access to authorized user accounts as a neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "AppFolio Customer" to the extent that term is prejudicial and inaccurate given that the referenced persons and entities were also BLI customers. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

BLI further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine and to the extent it seeks confidential business information.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, BLI responds as follows: Subject to designation under the entered Stipulated Protective Order (Dkt. 93) and pursuant to Federal Rule of Civil Procedure 33(d), BLI will produce responsive, non-privileged documents from which the answer to this Interrogatory may be derived.

**INTERROGATORY NO. 12:**

Identify all Documents reflecting Communications internal to or between Plaintiffs in this matter from December 1, 2025, through the present that discuss, reference, or relate to strategies for continuing to access AppFolio databases following the Account Closure.

**RESPONSE TO INTERROGATORY NO. 12:**

BLI objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and, as to communications among Plaintiffs and their common counsel, the common-interest privilege. BLI objects to the phrase "strategies for continuing to access AppFolio databases" on grounds it is prejudicial and to the extent it assumes that BLI's continued servicing of its customers was unauthorized, which is a disputed issue. BLI objects to the defined term "Account Closure" to the extent it characterizes Defendant AppFolio, Inc.'s unilateral deactivation of BLI's ability to service authorized user accounts as a neutral, permissible,

or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

The communications responsive to this Interrogatory are, in substantial part, protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest privilege. Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, and subject to designation under the entered Stipulated Protective Order (Dkt. 93), and pursuant to Federal Rule of Civil Procedure 33(d), BLI will produce responsive, non-privileged documents from which the answer to this Interrogatory may be derived.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 13:**

Describe in detail how You were harmed by Defendant's conduct described in the Complaint in this matter.

**RESPONSE TO INTERROGATORY NO. 13:**

BLI objects to this Interrogatory as premature to the extent it calls for legal conclusions regarding the causation of damages or the complete computation of damages at this stage of litigation. Discovery is ongoing, and BLI is continuing to incur damages. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, BLI responds as follows: BLI has been harmed by AppFolio's unlawful deactivation of Plaintiffs' authorized user accounts, its threats of deplatforming, and its negative statements about Beagle to Beagle's customers and potential customers, in ways including but not

limited to: (1) loss of revenue; (2) loss of customer contracts and customer relationships, including customer cancellations directly attributable to AppFolio's deactivation and false statements; (3) loss of goodwill and business reputation within the property management industry, including reputational harm evidenced by customer communications accusing Beagle of being "scumbags" and a "scam"; (4) significant operational disruption and the substantial time, resources, and expense required to develop alternative service delivery methods and technical workarounds to continue servicing customers following the deactivation; (5) inability to serve customers' needs during the disruption period; (6) harm to Beagle's business development efforts and relationships, including diminution of enterprise value; and (7) significant time and expense incurred in connection with the business crisis caused by and legal response necessitated by AppFolio's actions.

As a direct and proximate result of AppFolio's termination of Beagle's ability to service its customers and AppFolio's exclusionary conduct, Beagle has lost over 200 property management clients on AppFolio's platform who cancelled their rollout, churned, or ceased expanding because Beagle could no longer administer its services through AppFolio, and has lost prospective customers that terminated active sales processes as a result of AppFolio's conduct and the resulting dispute. These losses were compounded by AppFolio's direct outreach and notices to Beagle's clients concerning the termination, which disparaged the continuity of Beagle's services, were followed by accelerated cancellations, and interfered with Beagle's customer relationships. Based on revenue at the time of loss, the projected growth of those accounts consistent with Beagle's historical adoption rates, and the value of the lost prospective business, these damages exceed $25 million in annual recurring revenue. AppFolio's conduct has also materially increased Beagle's cost of performance through manual reconciliation and enrollment workarounds, and has damaged Beagle's reputation and goodwill in a market where reliable compliance administration is the core purchase criterion. Damages continue to accrue each month, and Plaintiffs will supplement this response as discovery and expert analysis proceed.

BLI will produce any non-privileged documents supporting its damages calculations

in response to Defendant's Requests for Production Nos. 11, 21-22, and 78-80, subject to designation under the entered Stipulated Protective Order (Dkt. 93).

BLI's investigation and discovery are ongoing, and BLI is continuing to identify and quantify specific damages. BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 14:**

Identify by Bates number all Documents that support Your assertion that Plaintiffs are "play[ing] a game of whack-a-mole" by "using new domains."

**RESPONSE TO INTERROGATORY NO. 14:**

BLI objects to this Interrogatory because BLI did not make that statement. This Interrogatory misquotes Plaintiffs in several ways, including turning the statement into present tense when the actual statement spoke of a future risk of AppFolio's conduct and a hypothetical possible response. As set forth in Plaintiffs' Reply in Support of TRO at 8 (Dkt. 36), the full statement was: "Beagle did not trust AppFolio would hold up its consent, so it had to prepare for the worst. These alternative domains would force Beagle to play a game of whack-a-mole where AppFolio would constantly be disrupting Beagle's contracts and ability to work with its customers. Only a Court injunction that stops AppFolio from deplatforming Beagle, regardless of what domain Beagle uses, would be effective." This statement described the hypothetical consequences of AppFolio's conduct, specifically, the risk that AppFolio would repeatedly disrupt BLI's customer relationships, and was not a claim or admission that Plaintiffs are or have already been taking such actions.

**INTERROGATORY NO. 15:**

Identify by Bates number Documents sufficient to show the processes by which You obtained access to AppFolio customer databases after the Account Closure.

**RESPONSE TO INTERROGATORY NO. 15:**

BLI objects to this Interrogatory to the extent the phrase "obtained access" assumes or implies that BLI's access to AppFolio customer databases following the deactivation was not lawful. BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections. Further, BLI objects to the

defined term "Account Closure" to the extent it characterizes Defendant AppFolio, Inc.'s unilateral deactivation of BLI's ability to service authorized user accounts as a neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "AppFolio customer databases" to the extent that term is prejudicial and inaccurate given that the referenced databases contain data owned by BLI's customers, as AppFolio itself acknowledges in Section 1.4 of its Terms of Service, and were serviced through accounts provisioned by BLI's customers. Additionally, BLI objects to the extent this Interrogatory seeks detailed technical information that constitutes confidential and proprietary business information. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, and subject to designation under the entered Stipulated Protective Order (Dkt. 93), BLI responds pursuant to Rule 33(d) that it will produce responsive, non-privileged documents from which the answer to this Interrogatory may be derived.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 16:**

Identify by Bates number all sales scripts, talk tracks, talking points, or other guidance for sales and marketing that address establishing user accounts in AppFolio databases since the Account Closure.

**RESPONSE TO INTERROGATORY NO. 16:**

BLI objects to the defined term "Account Closure" to the extent it characterizes Defendant AppFolio, Inc.'s unilateral deactivation of BLI's ability to service customers through authorized user accounts as a neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "AppFolio databases" to the extent that term is prejudicial and inaccurate given that the referenced

databases contain data owned by BLI's customers, as AppFolio itself acknowledges in Section 1.4 of its Terms of Service, and were serviced through accounts provisioned by BLI's customers. BLI will construe the undefined terms "sales scripts, talk tracks, talking points, or other guidance for sales and marketing" to mean forms of written guidance or training provided to BLI's sales or marketing representatives for use when speaking with customers or prospective customers about establishing user accounts in AppFolio. Additionally, BLI objects to the extent this Interrogatory seeks confidential and proprietary business information.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, and subject to designation under the entered Stipulated Protective Order (Dkt. 93), BLI responds pursuant to Rule 33(d) that it will produce responsive, non-privileged documents from which the answer to this Interrogatory may be derived. To the extent BLI's diligent search and reasonable inquiry identify no such responsive documents, BLI will so state.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 17:**

Identify all AppFolio customers to whose AppFolio databases you have had user access since the Account Closure.

**RESPONSE TO INTERROGATORY NO. 17:**

BLI objects to this Interrogatory to the extent the phrase "had user access" assumes that any interaction by BLI with customer accounts following the deactivation was unlawful, unauthorized, or improper. BLI further objects to the term "user access" on grounds it is vague and ambiguous and because it is not defined. For the purposes of this Interrogatory, BLI will construe the term "user access" to mean logging into a customer's AppFolio account through a customer-provisioned user account. BLI objects to the defined term "Account Closure" to the extent it characterizes Defendant AppFolio, Inc.'s unilateral deactivation of BLI's ability to service customers through authorized user accounts as a

neutral, permissible, or lawful act, and specifically to the extent it prejudges disputed factual and legal issues. BLI objects to the term "access" to the extent it states or assumes a legal conclusion and for the reasons stated in its General Objections.

BLI further objects to the extent this Interrogatory seeks identification of AppFolio customers by name, the disclosure of which implicates the privacy and confidentiality interests of those third parties and the competitive interests of BLI. BLI objects to the defined term "You" to the extent it purports to encompass or seek information from other named parties to whom separate Interrogatories have been or could be served.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterizations described above, and subject to designation under the entered Stipulated Protective Order (Dkt. 93), BLI responds as follows: Since the December 2025 deactivation, BLI has continued to service certain of its customers pursuant to those customers' express authorization and direction, using methods of service that the customers themselves control and provision as the rightful owners of the data at issue. Pursuant to Federal Rule of Civil Procedure 33(d), BLI will produce documents from which the answer to this Interrogatory may be derived or ascertained. BLI does not concede that any such servicing in AppFolio customer databases was or is unlawful, and this response is provided without prejudice to BLI's contention that its customers, as the owners of the data at issue, are entitled to authorize BLI to service their accounts.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

**INTERROGATORY NO. 18:**

Identify all Customer Domain Accounts.

**RESPONSE TO INTERROGATORY NO. 18:**

BLI objects to the defined term "Customer Domain Accounts" to the extent it assumes or implies that email accounts using an AppFolio customer's domain were used for any unauthorized or improper purpose, which is a disputed legal question in this

litigation. BLI does not concede that the use of any such account was unauthorized or improper, and this response is provided without prejudice to BLI's contention that its customers were entitled to provision and authorize such accounts.

BLI further objects to the extent this Interrogatory seeks identification of AppFolio customers by name, the disclosure of which implicates the privacy and confidentiality interests of those third parties and the competitive interests of BLI.

Subject to and without waiving the foregoing objections and its General Objections, and without adopting the objectionable characterization embedded in the term "Customer Domain Accounts," and subject to designation under the entered Stipulated Protective Order (Dkt. 93), BLI responds as follows: To the extent this Interrogatory seeks identification of email accounts that use an AppFolio customer's own email domain and that Beagle used to service that customer's account, BLI will produce, pursuant to Federal Rule of Civil Procedure 33(d), documents from which the answer to this Interrogatory may be derived or ascertained.

BLI's investigation and discovery are ongoing, and BLI reserves the right to amend or supplement this response.

DATED: August 12, 2026 **GREENBERG TRAURIG, LLP**

By: /s/ David S. Bloch

David S. Bloch (SBN 184530)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Blochd@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (pro hac vice)
Jordana R. Sternberg (pro hac vice)
Terminus 200, 3333 Piedmont Rd NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

# VERIFICATION

I declare that I am a representative of Beagle Labs, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing **PLAINTIFF BLI'S AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**, and the factual statements therein are true and correct to the best of my personal knowledge and based on the information available to me.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed DATE: 08/11/2026, at CITY, STATE: Dallas, Texas.

Signed by:
Anthony D'Angelo
EEAFBC18D1A242C...

Anthony D'Angelo