Brian Procel (Cal. Bar No. 218657)
Brian@ProcelLevine.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@ProcelLevine.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant and Counter-Claimant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs and Counter-Defendants,

v.

APPFOLIO, INC., a California corporation,

Defendant and Counter-Claimant.

Case No. 25-cv-12248-JFW-SSC

Hon. John F. Walter

**DEFENDANT AND COUNTER-CLAIMANT APPFOLIO, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date: November 2, 2026
Time: 1:30 P.M.

Pretrial Conference: Not Set
Trial: September 28, 2027

# TABLE OF CONTENTS

I. INTRODUCTION ---------- 1
II. ARGUMENT ---------- 2
A. Beagle Is Wrong About the Type of Injunction AppFolio Seeks ---------- 2
1. The Injunction Is Prohibitory, Not Mandatory ---------- 2
2. The Injunction Does Not Alter the Status Quo ---------- 2
B. AppFolio Is Likely to Succeed on Every Claim ---------- 2
1. Tortious Interference with Contract ---------- 2
2. CFAA ---------- 3
a) Beagle Admits Circumventing AppFolio's Gates to Access ---------- 3
b) AppFolio Has a Generally Applicable Rule, Which Beagle Continues to Violate ---------- 4
c) Beagle's Reliance on Customer Authorization Is Misplaced ---------- 5
d) *Perplexity* Does Not Help Beagle ---------- 5
e) AppFolio's Loss Under the CFAA Is Indistinguishable from the Loss in *Power Ventures* ---------- 5
3. Penal Code Section 502 ---------- 6
C. AppFolio Will Suffer Irreparable Harm Without an Injunction ---------- 7
1. Beagle Does Not Dispute That Unauthorized Access Itself Constitutes Irreparable Harm ---------- 7
2. Beagle Does Not Dispute Numerous Forms of Harm ---------- 7
3. Beagle Is Wrong About the Harms It Does Dispute ---------- 7
a) Beagle Creates the Conflict with AppFolio's Customers ---------- 7
b) Beagle's Take on the Security Risk Is Wrong ---------- 8
4. Beagle's "Delay" Argument Is Groundless ---------- 8

5. The Clarity of Beagle's Violations Reduces AppFolio's Burden ---------- 9
D. The Balance of Equities Swings Sharply in AppFolio's Favor ---------- 10
1. Beagle Is the Author of Its Own Hardship ---------- 10
2. Beagle Has Admitted It Wouldn't Be Harmed by an Injunction ---------- 10
3. Whether Beagle Competes with AppFolio Is Irrelevant ---------- 10
E. The Public Interest Favors an Injunction ---------- 11
1. Beagle Ignores the Public's Interest in Platform Security ---------- 11
2. The Interest in Competition Does Not Favor Unauthorized Access ---------- 11
F. The Proposed Order Is Clear, Narrow, and Complies with Rule 65(d) ---------- 11
III. CONCLUSION ---------- 12

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ---------------- 10

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026) ---------------------------------------------------------------------------- 5, 11

*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019) --------------------- 6

*Arc of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014) --------------------------- 9

*Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028 (C.D. Cal. 2007) ----------- 3

*Chegg, Inc. v. Doe*, 2023 WL 7392290 (N.D. Cal. Nov. 7, 2023) --------------------- 7

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003) ---------------------------------------------------------------------------- 12

*Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957 (C.D. Cal. 2016) ------- 8

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ------ 7, 10

*Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) --------------------------------- 7, 11

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) -------- 4, 5, 6

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ---------------------------------- 9

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ------------------ 2

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ------------------ 3, 4

*Kettle Range Conservation Grp. v. U.S. Forest Serv.*, 971 F. Supp. 480 (D. Or. 1997) ---------------------------------------------------------------------------- 9

*Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) -------------- 9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009) ---------------------------------------------------------------------------- 2

*Meta Platforms, Inc. v. Qibaa*, 2025 WL 2496129 (N.D. Cal. Aug. 1, 2025) ------- 7

*Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978) ----------------- 11

*Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985) -------- 9

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) --------------- 3

*Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288 (N.D. Cal. Sept. 27, 2019)---- 11
*Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir. 1963) ------------- 12
*Unite Eurotherapy, Inc. v. Walgreen Co.*, 2017 WL 513008 (S.D. Cal. Feb. 7, 2017) -------------------------------------------------------------------------------- 3
*United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016)-------------------------------- 4
*Van Buren v. United States*, 593 U.S. 374 (2021) -------------------------------------- 6
*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ------------------------------------------------------------------------ 11, 12
*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2025 WL 2961368 (N.D. Cal. Oct. 17, 2025)---------------------------------------------------------------------------- 7

## STATUTES

18 U.S.C. § 1030 (Computer Fraud and Abuse Act) ---------------------------- passim
Cal. Penal Code § 502 ---------------------------------------------------------------- 6, 7

## RULES

Fed. R. Civ. P. 65(d) -------------------------------------------------------------- 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Beagle admits the relevant facts and doesn't contest the relevant law.

**Facts**: (1) Beagle knows it does not have AppFolio's consent to access its platform (Mot. 12-14); (2) Beagle nevertheless induces AppFolio customers to provide it with user credentials to AppFolio's platform (*id.* 3-6); (3) Beagle uses the credentials to access AppFolio's platform (*id.*); (4) Beagle uses its illicit access to get information from and make changes in AppFolio's platform, such as disabling AppFolio's insurance offerings, enrolling customers in Beagle's offerings, and billing residents for its offerings (*id.*); and (5) AppFolio works to block Beagle's access, but Beagle develops new ways to disguise its access (*id.*).

**Law: (1)** Unauthorized system access is irreparable harm, particularly where it is likely to continue (Mot. 20); **(2)** harm to customer relationships is irreparable (*id.* 23); **(3)** the denial of an injunction would "encourage an increase in the complained activity" (*id.*); **(4)** a "defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights" (*id.* 24); and **(5)** "the public has an interest in ensuring that computers are not accessed without authorization." (*Id.* 25.)

Beagle responds that it has a right to do what it's doing: hijack AppFolio's platform for its own advantage. But AppFolio's platform is not an open marketplace. It is a password-protected, subscription-based tool available only to paying customers, their employees, and approved third parties. It is black letter law that a closed system is not required to grant access to all comers.

AppFolio has no obligation to interoperate with Beagle. It interoperates anyway. Under the proposed injunction, AppFolio customers can *still* use Beagle through Database API and Scheduled Reports. *Customers* can turn off AppFolio's

insurance offerings and turn on Beagle's. What Beagle is fighting for is the ability to log in to AppFolio *itself*, because Beagle believes that is a convenient way to build its business. The law does not give Beagle that privilege. And the Court found that Database API and Scheduled Reports are sufficient. (Dkt. 39 at 6.)

AppFolio has told Beagle its access is unauthorized. AppFolio has taken measures to block Beagle's access. Beagle continues to access the database and find new ways to hide there. Beagle will not stop based on anything short of a court order. An injunction is warranted here.

## II. ARGUMENT

### A. Beagle Is Wrong About the Type of Injunction AppFolio Seeks

#### 1. The Injunction Is Prohibitory, Not Mandatory

As Beagle's own case explains, a "mandatory injunction orders a responsible party to take action[,]" while a "prohibitory injunction prohibits a party from taking action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). The injunction here prohibits Beagle from accessing AppFolio's platform without consent. It is prohibitory.

#### 2. The Injunction Does Not Alter the Status Quo

The status quo ante litem refers to the "last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (rejecting argument that order to stop using disputed logo would change status quo because logo was already in use, as that would lead to a situation "in which plaintiffs could never bring suit once infringing conduct had begun"). Similarly, the status quo here is before Beagle's unauthorized access.

### B. AppFolio Is Likely to Succeed on Every Claim

#### 1. Tortious Interference with Contract

Beagle does not dispute the contracts or its knowledge of them. Its only argument is that AppFolio cannot show "actual breach." This argument is farcical.

Beagle first claims actual breach can't be shown because AppFolio doesn't identify specific customers that breached their contracts. (Opp. 12-13.) Beagle's sole cite for this point (*Bear Stearns*) says no such thing; and no such requirement exists. *See Unite Eurotherapy, Inc. v. Walgreen Co.*, 2017 WL 513008, at *3 (S.D. Cal. Feb. 7, 2017) (a plaintiff need only plead "enough facts from which the Court can determine what contractual rights it possessed"); *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D. Cal. 2007) (adequate to identify customers by means other than pleadings). AppFolio's standard Terms of Service (ToS) have been in the record for months. Beagle knows which customers breached the ToS because Beagle is the one who logged in to those customers' AppFolio databases.

Beagle claims there is no ToS breach because AppFolio sometimes allows others database access. (Opp. 4, 13.) Beagle again cites no authority. And the fact that AppFolio granted consent to *others* does not mean it granted it to *Beagle*.

Beagle also claims without legal authority that there is no breach because it acts at customers' direction. (Opp. 13.) So what? A customer that provides Beagle with user access breaches the ToS regardless of whose idea it was. Beagle also claims there is no breach because customers own their data. (*Id.*) But it is still a breach of § 5.2 to give Beagle access without AppFolio's consent. The argument also ignores that Beagle does more than follow directions: it directs new customers to "Create Beagle user in Appfolio" (Dkt. 77-3 ¶ 13 & Ex. A at 6; Mot. § II.C).

**2. CFAA**

Beagle does not dispute that it intentionally accesses AppFolio's platform, obtains information, or that the platform is a protected computer. It contends only that its access was not "without authorization" and that AppFolio suffered no loss.

**a) Beagle Admits Circumventing AppFolio's Gates to Access**

AppFolio databases are password protected. (Dkt. 104-1 ¶ 8.) Passwords are the archetypal access gate. *See, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022). When Beagle gets a password from an AppFolio

customer, AppFolio closes the Beagle account. Beagle argues that closing accounts doesn't qualify as a gate because it is "post-hoc." (Opp. 10.) Beagle offers no legal authority for this. And it is factually wrong: a blocked account prevents Beagle from accessing the platform via that account. That Beagle can slip past the gate with an unauthorized account does not mean the gate does not exist. *United States v. Nosal*, 844 F.3d 1024, 1028–30 (9th Cir. 2016) (*Nosal II*) (former employee whose access was revoked was liable for using a current employee's password); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) (*Power Ventures*) (a friend's key does not readmit someone the bank has banned). Beagle cites no authority to the contrary.

**b) AppFolio Has a Generally Applicable Rule, Which Beagle Continues to Violate**

Beagle argues its access is not without authorization because AppFolio, it claims, does not have a "generally applicable rule[] regarding access permissions." (Opp. 1.) Beagle cites *hiQ* for the proposition that a "generally applicable rule" regarding access is required for unconsented access to be "unauthorized." (Opp. 10.) But the case says no such thing. *hiQ* discusses "generally applicable rules regarding access permissions, such as username and password requirements" as a *type* of gate—not a *requirement* of uniform access.

Regardless, AppFolio *does* have a generally applicable rule: "Third parties are not permitted to access or use the Services . . . without our prior consent." (Dkt. 33-3 ¶ 19 & Ex. C.) In fact, every third party Beagle identifies (itself, Second Nature, and Foxen) either accesses with consent or has faced enforcement measures regarding its access. (Saxena Decl. ¶¶ 3-4.)

Beagle further contends, without citation, that AppFolio's right to "pick and choose amongst these third-party accounts" negates CFAA applicability. (Opp. 10.) But the very point of the CFAA is to protect the right to choose who can access a computer. In *Power Ventures*, the Ninth Circuit stated that "a defendant can run afoul of the CFAA when he or she has no permission to access a computer

or when such permission has been revoked explicitly." 844 F.3d at 1067. *Withholding or revoking permission is "picking and choosing."* According to Beagle's reasoning, AppFolio can only use a technical barrier to protect its platform if it simultaneously makes the platform available to all comers—defeating the purpose of a technical barrier. That is not the law.

**c) Beagle's Reliance on Customer Authorization Is Misplaced**

Beagle clings to customer authorization as a defense despite *Power Ventures'* rejection of it. Beagle argues *Power Ventures* does not apply because the defendant there used the same log-in credentials as the customer, while Beagle uses unique credentials. The distinction is irrelevant. A customer cannot convey rights they do not have. *Power Ventures*, 844 F.3d at 1068.

**d) *Perplexity* Does Not Help Beagle**

Beagle cites *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026) to assert that "a platform may not enforce its contract terms through the CFAA." (Opp. 11.) *Perplexity* held no such thing. *Perplexity* turned on whether there was "access" in the first place, not whether that access was "authorized." *Perplexity*, 184 F.4th at 1092, 1091 n.4 ("Our holding here is limited to 'access' . . . . We do not address the remainder of the CFAA factors"); *id.* at 1090 (distinguishing *Power Ventures* as "[t]he bulk of the analysis was devoted to authorization, not access.").

The concern in *Perplexity* about criminal liability for users is absent here. There, customers directed AI to access the computers. *Id.* at 1091. Perplexity *itself* took no action, so the court was concerned that the customer's shopping activity abetted Perplexity's illegal access. *See id.* at 1092. Not here. Beagle admits that its "personnel perform [their] work manually." (Dkt. 106-1 ¶ 12.) So imposing liability on Beagle would not impose liability on customers.

**e) AppFolio's Loss Under the CFAA Is Indistinguishable from the Loss in *Power Ventures***

In *Power Ventures*, the Ninth Circuit held that "Facebook suffered a loss under the CFAA" because "Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." 844 F.3d at 1066. Pretending this doesn't exist, Beagle cites *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019) and *Van Buren v. United States*, 593 U.S. 374 (2021) to argue the CFAA embodies "a narrow conception of loss" that does not include costs to analyze, investigate, and respond to its actions. But *Andrews* simply held that "loss" did not cover lost revenue from unlawfully obtained "hot leads." And *Van Buren* held that "loss" did not extend to damage from the misappropriation of legally accessed material. Neither case addresses the type of loss at issue here. *Power Ventures* does.

**3. Penal Code Section 502**

As with the CFAA, Beagle concedes it knowingly accesses AppFolio's platform, uses data and computer services, and adds charges. It contests only that it acted "without permission" and that AppFolio suffered "damage or loss."

First, Beagle falsely claims "every subdivision of § 502 AppFolio invokes concerns data the customer owns and authorized Beagle to use." (Opp. 12.) But two of the four sections AppFolio relies upon, §§ 502(c)(3) and (c)(7), concern using computer services and accessing a computer system—irrespective of "data." And Section 502(e) provides a right of action for "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c)." The statute does not limit its remedies to those who own data.

Second, Beagle claims that AppFolio suffered no loss because its "platform was not impaired, its data was not damaged, and its service was not interrupted" (Opp. 12). But Section 502(e)(1) says loss "shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system . . . or data was or was not altered, damaged, or deleted by the

access." (§ 502(e)(1).) The $33,000 worth of time that Mr. Delage spent investigating and responding to Beagle's access (Dkt. 104-2 ¶¶ 4–5) alone suffices.

### C. <u>AppFolio Will Suffer Irreparable Harm Without an Injunction</u>

#### 1. Beagle Does Not Dispute That Unauthorized Access Itself Constitutes Irreparable Harm

Beagle's Opposition ignores the first two pages of AppFolio's irreparable harm argument. Beagle does not address the holdings in *Chegg*, *Meta Platforms, WhatsApp*, or *Facebook* that unauthorized access to a computer system constitutes irreparable harm—particularly where there is reason to believe it will continue unless enjoined.[1] And Beagle does not dispute that its unauthorized access will continue unless enjoined. Beagle thus concedes the central point.

#### 2. Beagle Does Not Dispute Numerous Forms of Harm

Beagle does not dispute that: (1) AppFolio has lost control of its own platform; (2) its proprietary content has been taken and used against it; (3) its multimillion-dollar investment has been used to build a competing business; and (4) charges are being run through its billing system by an unauthorized party.

#### 3. Beagle Is Wrong About the Harms It Does Dispute

##### a) Beagle Creates the Conflict with AppFolio's Customers

Beagle concedes that harm to goodwill is irreparable. It says only that AppFolio's conflict with customers is "of AppFolio's making" (Opp. 8). If AppFolio would just ignore the breach of its ToS and let Beagle have free rein over

---

[1] Beagle's "no presumption of irreparable harm" argument (Opp. 7) does not apply to these cases. That argument addresses only the harm arising from the *right to exclude* others from a computer system, discussed in *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000). Beagle's "no presumption" argument ignores *Chegg*, *Meta Platforms, WhatsApp*, and *Facebook*, which concern the distinct harm from *unauthorized access* to a computer. And regardless of whether irreparable harm is *presumed*, its likelihood has been *established* here. Evidence of harm is *stronger* than a presumption of it.

its platform, there wouldn't be a conflict. That is backwards. Beagle cites no authority holding a company must tolerate breaches to avoid conflict.

Beagle's attack on the sufficiency of the evidence is disingenuous. Beagle says AppFolio can identify no customer lost or harmed because of Beagle, citing RFA 93. (Opp. 1.) But RFA 93 admitted only that AppFolio has not identified a contract "terminated as a direct result of Beagle's servicing." Goodwill is far more than the number of terminated customers. An AppFolio employee testified to an erosion of customer confidence. (Dkt. 104-3 ¶¶ 8-9.) This is sufficient. *See Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 975 (C.D. Cal. 2016). And it is sufficient precisely because negative outcomes are hard to trace—otherwise, they would be compensable, not irreparable. Tellingly, Beagle claims irreparable harm from *AppFolio's* actions because Beagle cannot "know in advance which [customers] or how many" will leave. (Dkt. 106-1 ¶ 21.)

**b) Beagle's Take on the Security Risk Is Wrong**

Beagle calls the security risk "speculative." (Opp. 9.) Wrong. Another third-party had an unauthorized user account in a customer's AppFolio database. (Delage Decl. ¶ 7.) Last month, a hacker obtained that party's AppFolio user access credentials and used them to export approximately 228,000 work orders containing tenants' personally identifiable information. (*Id.* ¶ 8.) Beagle cannot openly evade AppFolio's security methods and claim it is not a threat.

**4. Beagle's "Delay" Argument Is Groundless**

Delay in seeking an injunction "is not particularly probative in the context of ongoing, worsening injuries." *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). Even if delay mattered here, AppFolio's timing is well within reason. The Court granted leave for AppFolio to bring its counterclaims on June 15, 2026—three months before this filing. (Dkt. 85.) Once AppFolio brought its counterclaims, Beagle's user access spiked. Between July and August it increased 41%. (Delage Decl. ¶ 3.) AppFolio brought this motion weeks later.

Beagle's cases are inapposite, and their negative citation history shows that AppFolio's "delay" is well within an acceptable range. Beagle cites *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984), where the moving party waited "five years," and *Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985), where the wait was "several years." Both cases have been explicitly distinguished numerous times, with courts routinely granting preliminary injunctions on timing similar to this case. *See, e.g., Arc of California*, 757 F.3d at 990 (distinguishing *Lydo* and *Oakland Trib.* and reversing denial of preliminary injunction where moving party waited two years from when some conduct started and several months after other conduct); *Kettle Range Conservation Grp. v. U.S. Forest Serv.*, 971 F. Supp. 480, 484 (D. Or. 1997) (distinguishing *Lydo* and granting preliminary injunction because "[o]bviously, a delay of a few months is categorically distinct from a five-year delay"). Beagle also cites *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015). But the problem there was not delay; it was that the timing showed improper motivation.

Beagle argues that AppFolio has been sitting on this motion since the state court litigation began last December. Even if that were true, the timing would still be proper under *Arc of California*. But it is not true. As this Court found, AppFolio did not know of the conduct that required AppFolio to bring this suit when the state suit started. (Dkt. 85 at 2) ("Beagle's alleged new methods of improperly accessing AppFolio's platform were not discovered by AppFolio until February 2026.") And Beagle's assertion that AppFolio has known of Beagle's user access for two years (Opp. 2) is disingenuous and unsupported by Beagle's citation. When Beagle asserts delay, it is starting the clock at the wrong time.

**5. The Clarity of Beagle's Violations Reduces AppFolio's Burden**

Preliminary injunctions are evaluated on a sliding scale: "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). AppFolio is highly likely to

succeed on its claims, especially since Beagle admits to ongoing unauthorized access. With such a clear violation, the showing of harm needed shrinks. In any event, AppFolio has shown irreparable harm even without a lightened burden.

### D. The Balance of Equities Swings Sharply in AppFolio's Favor

#### 1. Beagle Is the Author of Its Own Hardship

AppFolio told Beagle at least six times that its access was unauthorized. (Mot. 14-15.) Beagle admits it kept servicing customers after AppFolio deactivated its accounts (Dkt. 104-6 ¶ 9 & Ex. H at 9) and created roughly 174 new accounts after AppFolio filed its counterclaims (Dkt. 104-2 ¶ 18). "[A] defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000). Every hardship Beagle cites flows from that choice. (Opp. 15; Dkt. 106-1 ¶¶ 3, 19–21.)

#### 2. Beagle Has Admitted It Wouldn't Be Harmed by an Injunction

This Court denied Beagle's TRO because the data Beagle said it needed was available through Scheduled Reports. (Dkt. 39 at 5–6.) Beagle itself told a customer that Scheduled Reports are "sufficient to administer the program without full system access." (Dkt. 104-6 ¶ 2 & Ex. A.) If the injunction is granted, Scheduled Reports will still be available to Beagle, as for other vendors.

#### 3. Whether Beagle Competes with AppFolio Is Irrelevant

Beagle dedicates pages to speculating on AppFolio's motives for blocking Beagle, including competition from Smart Ensure. (Opp. 13-14.) But a business has no general duty to deal with rivals. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). Beagle cites no authority to the contrary, even though that is the central premise of its case. Beagle's citation-free belief that AppFolio's refusal is unlawful is not a license for self-help.

### E. <u>The Public Interest Favors an Injunction</u>

#### 1. Beagle Ignores the Public's Interest in Platform Security

Beagle does not contest that "[t]he public has an interest in ensuring that computers are not accessed without authorization." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 785 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). Instead, Beagle asserts that the injunction "would create no additional security." (Opp. 15.) This is true *only if Beagle disregards the injunction*.

#### 2. The Interest in Competition Does Not Favor Unauthorized Access

Beagle invokes the public's "strong interest in competition" (Opp. 15), but fails to address the case holding that a company's "ability to decisively police the integrity of its platforms is without question a pressing public interest." (Mot. 25 (citing *Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019)).) Beagle's own cases are inapt. *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978), merely struck down a ban on competitive bidding and says nothing about a rival's right to a competitor's platform. And *Perplexity*'s concern for consumer choice was conditional: it applied to an injunction "against conduct that likely does not violate the CFAA." 184 F.4th at 1094. Where, as here, a CFAA violation is likely, this premise fails.

### F. <u>The Proposed Order Is Clear, Narrow, and Complies with Rule 65(d)</u>

Beagle says Paragraph 1 is vague (it bars "causing any third party to access" AppFolio's platform) and circular (it reaches only access "without AppFolio's authorization"). (Opp. 16.) It is neither. A customer using its own account has AppFolio's authorization, so the order does not touch it. The order reaches Beagle, and anyone Beagle enlists to do its work. "Without AppFolio's authorization" is a limit, not a loophole: third parties may not access the platform without AppFolio's consent. Beagle plainly understands what is barred; its CEO describes the effect in detail. (Dkt. 106-1 ¶ 17.)

Paragraph 2 does not bar "the ordinary work of every user in every AppFolio database." (Opp. 16.) It bars *Beagle* from altering, disabling, or modifying data, settings, or features on AppFolio's platform. Beagle may still serve its customers through Scheduled Reports.

If the Court sees any ambiguity, it may enter the following narrower order, which accomplishes the same result: "(1) Beagle shall not access AppFolio's platform or any customer database without AppFolio's authorization, including through any user account, whoever created it; (2) Beagle shall not request, induce, or accept the creation of a user account for Beagle's use in any AppFolio customer database; and (3) Through any access barred above, Beagle shall not alter, disable, or otherwise modify any data, settings, or features within AppFolio's platform."

Beagle's remaining objections fail. The order does not grant final relief; it lasts only until trial, and it leaves AppFolio's damages claims unresolved. *Cf. Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). Beagle says the Database API cannot replace user access (Opp. 16-17) but AppFolio owes Beagle no write access to its platform. *Trinko*, 540 U.S. at 408, and API is available anyway. And Beagle's demand for a "substantial" bond (Opp. 15) offers no dollar figure; its own CEO swears its losses "cannot be calculated." (Dkt. 106-1 ¶ 21.) AppFolio will post any bond the Court sets. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882–83 (9th Cir. 2003).

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in the moving papers, the Court should grant AppFolio's motion for a preliminary injunction.

Dated: October 19, 2026

Respectfully Submitted,
PROCEL LEVINE LLP

By: */s/*

Brian Procel
Jeremiah Levine
*Attorneys for AppFolio, Inc.*