Brian Procel (Cal. Bar No. 218657)
Brian@ProcelLevine.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@ProcelLevine.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant and Counter-Claimant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs and Counter-Defendants,

v.

APPFOLIO, INC., a California corporation,

Defendant and Counter-Claimant.

Case No. 25-cv-12248-JFW-SSC

Hon. John F. Walter

**DEFENDANT AND COUNTER-CLAIMANT APPFOLIO, INC.'S OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Motion for Preliminary Injunction: under submission

Courtroom: 7A

Pre-Trial Conference: September 3, 2027
Trial: September 28, 2027

# TABLE OF CONTENTS


I. INTRODUCTION ---------- 1

II. FACTS ---------- 3

A. Beagle Filed This Case And Then Waited More Than Six Months To Propound Discovery ---------- 3

B. Beagle Agreed Not to Seek to Delay the Hearing on the Preliminary Injunction if AppFolio Immediately Provided Certain Discovery, Which AppFolio Did ---------- 3

C. Beagle Has Twice Made The Argument It Now Wants To Make For The Third Time ---------- 5

D. AppFolio Produced the FAQ in the Regular Course of Discovery ---------- 5

E. Beagle Now Seeks to Delay a Ruling on the Preliminary Injunction Motion ---------- 6

III. ARGUMENT ---------- 6

A. Legal Standard ---------- 6

B. Beagle's Application Should Be Denied Because The "Crisis" Is of Beagle's Own Making ---------- 6

C. Beagle's Application Should Be Denied Because Beagle Shows No Irreparable Prejudice From Denial ---------- 7

1. Beagle Has Already Made Its Point ---------- 7

2. Beagle's Argument Is Wrong, So Losing the Chance to Repeat It A Third Time Is Not Prejudice ---------- 8

3. Beagle Waived Its Prejudice Argument When It Agreed Not To Delay The Hearing ---------- 9

D. Beagle's Application Should Be Denied Because Beagle Has Not Demonstrated Good Cause ---------- 10

E. Beagle's Application Should Be Denied Because Delay Prejudices AppFolio By Allowing Beagle to Continue Opening New Illicit Accounts ---- 11

F. Alternatively, Any Supplemental Briefing Should Be Strictly Limited ---- 12

IV. CONCLUSION ---- 13

# TABLE OF AUTHORITIES

## CASES

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ---------- 1, 6, 7, 9

*In re Intermagnetics Am., Inc.*, 101 B.R. 191 (C.D. Cal. 1989) ---------- 7

*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023 (S.D. Cal. 2011) ---------- 6, 7

*In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ---------- 11

*Thomasson v. GC Servs. Ltd. P'ship*, 2007 WL 628052 (S.D. Cal. Feb. 21, 2007) ---------- 11

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ---------- 8

*United States v. Scott*, 290 F. Supp. 2d 1201 (S.D. Cal. 2003) ---------- 11

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ---------- 2, 8, 9

*Victorino v. FCA US LLC*, 322 F.R.D. 403 (S.D. Cal. 2017) ---------- 7

## RULES

C.D. Cal. L.R. 7-10 ---------- 6

C.D. Cal. L.R. 79-5.2.2 ---------- 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Beagle's application should be denied. Beagle is asking the Court for a *third* bite at the apple. Beagle has already submitted an opposition brief and a proposed statement of decision. And in both documents, Beagle made the same argument it wants to make yet again: that the reason AppFolio wants Beagle to stop getting user access to AppFolio is that Beagle is a competitor.[1] Making that argument for a third time is not an emergency.

Beagle does not cite a single case in which a court granted an *ex parte* application to file a supplemental brief. Its only *ex parte* authority, *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995), denied an *ex parte* application because the moving party showed neither irreparable prejudice nor that it was without fault in creating the "crisis." *Id.* at 492-93.

That is true here too: the supposed emergency is Beagle's fault. Beagle started this case with a complaint and *ex parte* application for a temporary restraining order in December 2025. Beagle then waited more than six months to even propound discovery. The parties then agreed that AppFolio would begin a rolling production on September 14, which AppFolio did. Given Beagle's delay and agreement to a production schedule beginning in September, it is Beagle's fault that it did not have every supposedly helpful document less than a month later, when its opposition to the preliminary injunction was due.

Beagle also cannot show prejudice. First, Beagle is not prejudiced by making an argument twice instead of three times. The FAQ adds nothing new. AppFolio has never disputed that it cut off Beagle's user access (Dkt. 104-2 ¶ 18), and Beagle's competitor argument already rests on AppFolio's discovery responses

---

[1] Beagle is currently allowed to interact with AppFolio through scheduled reports and Database API. Even under the proposed preliminary injunction, Beagle would retain such access. (Dkt. 39 at 5-6; Dkt. 104-15.)

(Dkt. 106 at 13). Second, Beagle is not prejudiced because the argument it wants to make is a losing one anyway. Beagle argues that AppFolio is targeting it because the companies are competitors. That is false, and the Supreme Court has made clear that a business has no general duty to deal with rivals. (Dkt. 104-2 ¶¶ 7-8; *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).) What's more, Beagle *can* still interoperate with AppFolio through scheduled reports and Database API.

Beagle also bargained away its prejudice argument. After AppFolio moved for a preliminary injunction, Beagle listed the discovery it said it needed to oppose the Motion: this included the account and access records behind AppFolio's declarations, the call and customer described in the Velasquez declaration, the declarants' underlying documents, and the declarants' depositions. Internal communications were not on that list. AppFolio produced an agreed-upon set of documents and offered declarants for deposition, and Beagle promised in writing that it would "not seek to postpone the PI hearing based on failure to timely produce relevant documents," and that it would "not . . . argue in opposition to the preliminary injunction motion that it does not have adequate discovery." That is almost exactly what Beagle's instant application does. Since the Court took the hearing off calendar, Beagle is seeking to delay the Court's order instead of delaying the hearing. Since Beagle identified the discovery it said it needed, it should not be allowed to hold up the Court to get discovery it did not identify.

That is enough to defeat Beagle's application. But it is also noteworthy that AppFolio would be prejudiced by the relief Beagle seeks. AppFolio moved for an injunction swiftly because Beagle's unauthorized access spiked just as AppFolio got the documents in discovery that it needed for the preliminary injunction motion. Beagle is now seeking to delay the relief that AppFolio needs. Beagle has used at least 1,145 user accounts without permission, including roughly 174 created after AppFolio filed its counterclaims. (Dkt. 104-2 ¶ 18.) Beagle has used

every pause in this case to open new accounts. Deferring a decision on a fully submitted motion so Beagle can repeat an argument it has already made twice is not a remedy for prejudice. It is the delay Beagle wants.

## II. FACTS

### A. Beagle Filed This Case And Then Waited More Than Six Months To Propound Discovery

Beagle filed this action on December 15, 2025, together with an *ex parte* application for a temporary restraining order, asserting that it faced an "existential threat" requiring immediate relief. (Dkt. 4 at 11.)[2] Beagle did not serve its First Requests for Production until June 29, 2026, more than six months after it filed suit. (Levine Decl. ¶ 2.) Discovery was open long before then; the parties filed their Joint Rule 26(f) Report on February 6, 2026. (Dkt. 61.)

Once Beagle did serve discovery requests, the parties agreed that AppFolio would begin a rolling production of documents on September 14, 2026. (Levine Decl. ¶ 3.) AppFolio did, and the production continues. (*Id.* ¶¶ 3, 9.)

### B. Beagle Agreed Not to Seek to Delay the Hearing on the Preliminary Injunction if AppFolio Immediately Provided Certain Discovery, Which AppFolio Did

AppFolio filed its Motion for Preliminary Injunction on September 25, 2026. (Dkt. 104.) Beagle then demanded that AppFolio immediately produce certain discovery that Beagle claimed was necessary to oppose AppFolio's motion. (Levine Decl. ¶ 5.) This included documents and depositions. AppFolio agreed to immediately provide certain documents and witnesses. (*Id.*) In exchange, Beagle agreed: "if you can deliver the documents we discussed we will not seek to postpone the PI hearing based on failure to timely produce relevant documents."

---

[2] This Court denied the application on January 7, 2026 (Dkt. 39), denied reconsideration on March 12, 2026, and Beagle's appeal is pending (9th Cir. No. 26-769).

(*Id.* ¶ 6 & Ex. A at 6.) Beagle further agreed "not to seek expedited discovery in connection with AppFolio's motion for a preliminary injunction; . . . not to seek to delay the hearing on the motion for a preliminary injunction; and not to argue in opposition to the preliminary injunction motion that it does not have adequate discovery." (*Id.* ¶ 6 & Ex. A at 3.) Beagle does not contend that AppFolio breached that agreement.

AppFolio produced the agreed-upon documents immediately so that Beagle could use them in opposing the preliminary injunction motion. (Levine Decl. ¶ 7.) Those documents identified, for each Beagle account, who invited it, its designation, the monthly charges it created, the records it created, and the date it last logged in. They also included the recording of the call described in the Velasquez declaration and the identity of the customer on that call. (*Id.* Ex. A at 3.) AppFolio also offered its declarants for deposition. Beagle deferred the depositions of Mr. Saxena and Mr. Delage and then withdrew its request to depose Ms. Velasquez, AppFolio's Senior Manager of Customer Care. (*Id.* ¶ 7 & Ex. A at 2; Dkt. 104-3 ¶ 2.) The document that Beagle now wants to put before the Court, an internal frequently-asked-questions guide for AppFolio's customer-facing personnel, Bates-numbered AppFolio0003992-4001 (the "FAQ"), was not a document that AppFolio agreed to produce in connection with the motion. (*Id.* ¶ *8.*) The FAQ was produced in the regular course of discovery. (Levine Decl. ¶ 9.)

Beagle did not ask the Court to continue the hearing or the opposition deadline. It did not move to compel discovery. It did not tell the Court in its opposition that it needed internal AppFolio documents to respond. Beagle took no action to avoid what it now claims is an "emergency." Instead, Beagle filed a full opposition on October 9, 2026. (Dkt. 106.)

### C. Beagle Has Twice Made The Argument It Now Wants To Make For The Third Time

Beagle seeks supplemental briefing to address why AppFolio prohibits Beagle from user access. (Dkt. 124 at 3.) Beagle's opposition already addressed that: Beagle argued "AppFolio's own admissions supply the motive. It considers Beagle a 'direct competitor.'" (Dkt. 106 at 13.) Beagle argued the same in its proposed statement of decision. Beagle asserted that AppFolio was wrongly engaged in "selective enforcement," and that it regards Beagle as a competitor. (Dkt. 121-1 at 10, 13.) Beagle based these assertions on AppFolio's statements made in responses to requests for admission. (Dkt. 106 at 13 (citing Barros Decl. Ex. 1, RFAs 5, 13, 34-35, 58); Dkt. 121-1 at 9-10, 13 (citing RFAs 5, 10, 34, 58, 69-71).) Beagle also used AppFolio's recorded customer-service calls, and its own declarant's account of what AppFolio representatives told customers, to argue that AppFolio steered customers to AppFolio's own products. (Dkt. 106 at 14-15; Dkt. 106-1 ¶ 20.) AppFolio answered the competition argument in its reply. (Dkt. 114 at 10.) And AppFolio has never disputed that it cut off Beagle's user access. (Dkt. 104-2 ¶ 18.)

### D. AppFolio Produced the FAQ in the Regular Course of Discovery

On October 29, 2026, in response to a discovery demand letter from Beagle, AppFolio produced three documents, including the FAQ, designated CONFIDENTIAL under the Protective Order (Dkt. 93). (Levine Decl. ¶ 9.) The FAQ is an internal reference for AppFolio's customer-facing personnel addressing questions customers may ask about Beagle. Beagle's assertion that AppFolio "withheld the FAQ until after its reply" (Dkt. 124 at 4-5) falsely insinuates that the document was intentionally withheld, and it is argument, unsupported by any evidence that AppFolio timed its production to the Motion.

**E. <u>Beagle Now Seeks to Delay a Ruling on the Preliminary Injunction Motion</u>**

Beagle agreed not to seek to delay the hearing. (*See supra* Facts § B.) Instead, Beagle waited until the Court took the hearing off calendar. That same day, Beagle gave notice of its intention to file the instant *ex parte* to delay the Court's decision on the preliminary injunction motion. (Levine Decl. ¶ 11.)

## III. <u>ARGUMENT</u>

**A. <u>Legal Standard</u>**

*Ex parte* applications are "rarely justified." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). *Ex parte* relief is appropriate only where the moving party shows that (1) its cause "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and (2) it "is without fault in creating the crisis that requires *ex parte* relief." *Id.* at 492.

The Court's Standing Order provides that "[n]o supplemental briefs shall be filed without leave of Court." (Dkt. 32 ¶ 5(a).) Local Rule 7-10 likewise bars further briefing absent a court order. A party seeking to file a supplemental brief must show good cause. *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023, 1027 n.1 (S.D. Cal. 2011). Beagle seeks leave to file a supplemental brief by *ex parte* application, so it must also satisfy the *ex parte* standard and show good cause.

**B. <u>Beagle's Application Should Be Denied Because The "Crisis" Is of Beagle's Own Making</u>**

Courts deny *ex parte* applications to depart from the standard briefing schedule where the moving party is at fault for the supposed "crisis." *Mission Power Eng'g Co.*, 883 F. Supp. at 492-93 (denying *ex parte* application to shorten time to hear a motion where the moving party showed neither irreparable prejudice

nor lack of fault). Where discovery is at issue, the moving party must show that it used the "entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id. Ex parte* applications "are not intended to save the day for parties who have failed to present requests when they should have." *Id.* (quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989)).

Beagle fails *Mission Power* because Beagle did not use the "entire discovery period efficiently." Beagle filed the instant case and then waited *six months* to propound discovery. (Levine Decl. ¶ 2.) Discovery was open by February 6, 2026, when the parties filed their Joint Rule 26(f) Report, yet Beagle did not serve document requests until June 29. (Dkt. 61; Levine Decl. ¶ 2.) That alone places Beagle at fault for not having documents by the time its October 9 opposition to the PI was due. What's more, after waiting more than six months into the case to propound discovery, Beagle agreed that AppFolio would start a rolling production on September 14, 2026. (Levine Decl. ¶ 3.) AppFolio did. (*Id.*) Beagle cannot agree to a rolling production and then complain when it is not immediately complete.

### C. <u>Beagle's Application Should Be Denied Because Beagle Shows No Irreparable Prejudice From Denial</u>

#### 1. Beagle Has Already Made Its Point

Courts deny *ex parte* motions for supplemental briefing where the moving party has already been heard. *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023, 1027 n.1 (S.D. Cal. 2011) (denying motion because moving party had "three bites at the opposition apple"); *Victorino v. FCA US LLC*, 322 F.R.D. 403, 404 n.1 (S.D. Cal. 2017) (denying *ex parte* application for sur-reply because issues already briefed).

Beagle is now demanding an emergency third bite at the apple. In Beagle's opposition to the preliminary injunction motion, Beagle argued that AppFolio

enforced its terms of service to stop Beagle's user access because AppFolio considers Beagle a "competitor." (Dkt. 106 at 13.) Beagle then argued the same thing in its proposed statement of decision: Beagle asserted that AppFolio was wrongly engaged in "selective enforcement," and that it regards Beagle as a competitor. (Dkt. 121-1 at 10, 13.) Beagle will not be prejudiced if it only gets to make this argument twice instead of three times.

Beagle might argue that its third argument will be different because it now has what it claims is an internal AppFolio communication addressing AppFolio's motivation toward Beagle. But when Beagle made its argument the first time, it cited AppFolio's responses to requests for admission. (Dkt. 106 at 13.) That is, Beagle already relied on AppFolio's discovery responses. So Beagle cannot claim that one more AppFolio document creates an emergency.

**2. Beagle's Argument Is Wrong, So Losing the Chance to Repeat It A Third Time Is Not Prejudice**

AppFolio does not have to let Beagle interact with its platform. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (the Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal" (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919))). But AppFolio lets Beagle interact with the platform anyway. Namely, AppFolio lets Beagle interact with the platform through scheduled reports and Database API. (Dkt. 39 at 5-6; Dkt. 104-6 ¶ 2 & Ex. A; Dkt. 114 at 10.) This whole case is about Beagle fighting for another form of access that AppFolio prohibits: user access.

Beagle is crying "emergency," demanding to tell the Court, again, *why* AppFolio does not want Beagle to have user access. The real answer to "why" is that Beagle poses security and other risks to AppFolio's customers. (Dkt. 104-2 ¶¶ 7-8; Dkt. 114 at 8.) But the "why" does not matter, because the Supreme Court in

*Verizon* made clear that AppFolio does not have to interact with Beagle at all. So Beagle fighting over motivation is not an emergency. And if the underlying request "is meritless, failure to hear it cannot be prejudicial." *Mission Power*, 883 F. Supp. at 492.

**3. Beagle Waived Its Prejudice Argument When It Agreed Not To Delay The Hearing**

After AppFolio filed the Motion, Beagle identified the discovery it said it needed to oppose it, and demanded that AppFolio provide it immediately. (Levine Decl. ¶ 5.) AppFolio agreed. (*Id.*) In exchange, Beagle promised: "if you can deliver the documents we discussed we will not seek to postpone the PI hearing based on failure to timely produce relevant documents." (*Id.* ¶ 6 & Ex. A at 6.) AppFolio delivered the documents. (*Id.* ¶ 7.) Beagle does not contend otherwise.

Now, Beagle is not asking the Court to delay the hearing. Instead, Beagle waited until the Court took the hearing off calendar, and asks to delay the Court's order. (Dkt. 124 at 2.) That is functionally the same thing. Beagle should not be allowed to evade its agreement by waiting until the hearing was vacated and then asking to delay the ruling instead.

The agreement also shows that Beagle is not prejudiced. Beagle, not AppFolio, defined the universe of documents it needed to oppose the Motion. The FAQ was not in it. (Levine Decl. ¶ 8.) Beagle asked for the account and access records behind AppFolio's declarations, the call and customer described in the Velasquez declaration, the declarants' underlying documents, and the declarants' depositions. (*Id.* ¶ 5 & Ex. B § 1.) It listed internal communications separately, among its other discovery complaints. (*Id.* Ex. B § 2.) If guidance to AppFolio's customer-facing personnel was so important that Beagle would be "irreparably prejudiced" without it (Dkt. 124 at 4), Beagle would have asked for it when it was listing the documents it needed, and it would not have agreed to proceed without it. Beagle did neither. A party that negotiates for specific documents and receives

them cannot claim emergency about a document it agreed to proceed without. Nor does the FAQ add anything. By Beagle's own description, it goes to why AppFolio cut Beagle off (Dkt. 124 at 3), and the record on that subject is already complete. (*See supra* Facts § C.)

Beagle might point to its later statement that "If relevant information relating to the PI motion still is being withheld after today's production, we reserve the right to comment on the fact in Friday's opposition brief." (Levine Decl. Ex. A at 2.) But *Beagle* dictated what discovery it needed for the PI motion, and AppFolio provided it. Beagle agreed to a rolling production. Beagle cannot be entitled to reopen briefing on the preliminary injunction motion every time the production continues rolling. Beagle reserved only the right to "comment" in its opposition brief if it believed documents were still being withheld. (*Id.*) It did not reserve a right to supplemental briefing, and its opposition made no such comment. Nor does Beagle's reservation of "all rights" as to documents AppFolio was "not now agreeing to produce" (*id.* at 7) help it. A reservation of the right to pursue discovery is not a reservation of the right to delay the Motion. Beagle gave that up, in exchange for an expedited production, and it also agreed "not to argue in opposition to the preliminary injunction motion that it does not have adequate discovery." (*Id.* at 4.) An application that asks the Court to wait while Beagle briefs a document it says it lacked is that argument by another name.

### D. <u>Beagle's Application Should Be Denied Because Beagle Has Not Demonstrated Good Cause</u>

Courts reject requests to file additional briefs where the party cannot demonstrate good cause. *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *1 n.1 (N.D. Cal. Oct. 9, 2001); *see also United States v. Scott*, 290 F. Supp. 2d 1201, 1209 (S.D. Cal. 2003) (rejecting application to file brief outside briefing schedule). That includes requests to add evidence obtained in discovery after a motion is taken under submission. *Thomasson v. GC Servs. Ltd. P'ship*, 2007 WL

628052, at *2 (S.D. Cal. Feb. 21, 2007) (denying *ex parte* application and deciding the motion on "the extensive submissions as they existed when the matter was taken under submission"). Otherwise, a party could return each time a rolling production continues, as the plaintiffs there proposed to do. *Id.* at *1.

All the foregoing reasons demonstrate that Beagle has not demonstrated good cause for its motion. But there is more. Beagle focuses on arguing that the FAQ shows AppFolio's "own account of why it cut Beagle off" (Dkt. 124 at 3), which is the argument Beagle already made. Later in its brief, Beagle says the FAQ matters because it "bears directly on AppFolio's stated reasons, its claimed harm, and the declarations it submitted." (*Id.* at 5.) It is not clear what that means. At best, it is a conclusion, not a showing of good cause. Beagle never explains what is in the FAQ that contradicts or changes any of the evidence already before the Court.

### E. <u>Beagle's Application Should Be Denied Because Delay Prejudices AppFolio By Allowing Beagle to Continue Opening New Illicit Accounts</u>

Beagle says AppFolio "will suffer no prejudice" because supplemental briefing can be completed "within days." (Dkt. 124 at 5.) But Beagle asks the Court to defer decision on the Motion until supplemental briefing is complete, and that briefing must first run through the Local Rule 79-5.2.2 sealing process for a document AppFolio designated CONFIDENTIAL. (Dkt. 124 at 2.) Every day of that delay is a day on which Beagle, by its own account, continues to access AppFolio's customers' databases. (Dkt. 106-1 ¶¶ 11-13.)

AppFolio has moved as quickly as the case allowed. The Court granted AppFolio leave to assert its counterclaims on June 15, 2026. (Dkt. 85.) In August, Beagle produced the documents on which AppFolio's Motion relies. (Levine Decl. ¶ 4.) In the same period, Beagle's unauthorized access spiked: its user access increased 41% between July and August, and Beagle created roughly 174 new

accounts after AppFolio filed its counterclaims. (Dkt. 114-3 ¶ 3; Dkt. 104-2 ¶ 18; Dkt. 114 at 8, 10.) AppFolio filed the Motion weeks later, on September 25. (Dkt. 104.) The Motion was fully briefed by October 19 and under submission by October 29. (Dkts. 114, 123.) Beagle's application, filed three days later, is the first thing that has slowed the Motion down.

That is not an accident. Beagle has used every pause in this case to expand the access AppFolio seeks to stop. In December 2025, when AppFolio agreed before Judge Martinez-Olguin to hold off disabling Beagle's accounts while the transfer motion was decided, Beagle used the standstill to rename its accounts from the identifiable reports@beagleforpm.com to at least seven generic domains such as support@portfoliopm.cc, hiding at least 60 accounts from AppFolio before the standstill expired. (Dkt. 33 at 7, 16-17; Delage Decl. (Dkt. 33-8) ¶¶ 15-16.) When AppFolio filed its counterclaims, Beagle's access went up, not down. (Dkt. 114-3 ¶ 3; Dkt. 104-2 ¶ 18.) AppFolio has told Beagle at least six times that its access is unauthorized, and Beagle has answered each time by finding a new way in. (Dkt. 114 at 10; Mot. 14-15.)

A party with that record is in no position to assert that delay is costless. Beagle's observation that trial is not until September 2027 (Dkt. 124 at 5) makes AppFolio's point: a preliminary injunction exists because the movant cannot wait for trial, and a party that admits it still uses customer user accounts to make changes in AppFolio's platform (Dkt. 106-1 ¶¶ 11-13, 17) should not be handed time to open accounts.

**F. <u>Alternatively, Any Supplemental Briefing Should Be Strictly Limited</u>**

If the Court is inclined to permit supplemental briefing, AppFolio requests that the order (1) limit Beagle's submission to the FAQ itself and argument addressed to it, with no new declarations, exhibits, or argument on other subjects; (2) permit AppFolio an equal response of the same length, due five court days after Beagle's filing, to account for the time required to comply with the Court's

Standing Order for a document AppFolio designated CONFIDENTIAL; and (3) not defer decision on the Motion, so that the Court may rule at any time on the record as supplemented.

## IV. CONCLUSION

For the foregoing reasons, the application should be denied.

Dated: November 2, 2026

Respectfully Submitted,
PROCEL LEVINE LLP

By: */s/*
Brian Procel
Jeremiah Levine
*Attorneys for AppFolio, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant and Counter-Claimant AppFolio, Inc., certifies that this brief contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1.

/s/ Jeremiah Levine
Jeremiah Levine

## CERTIFICATION REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to the Court's Order Re: Artificial Intelligence, counsel certifies that generative artificial intelligence was used in the preparation of this filing. Counsel has personally reviewed and verified the accuracy of all legal citations, quotations, factual statements, and legal analysis contained herein.

/s/ Jeremiah Levine
Jeremiah Levine